JUN 2 2 2007

CLERK, US DISTRICT C___
ALEXANDRIA, VIRGI___

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **BUFFALO WINGS FACTORY, INC.**<br>2034 Shaw Rd.<br>Sterling, VA 20164<br><br>Plaintiff,<br><br>v.<br><br>**SALEEM MOHD**<br>1324 April Way<br>Herndon, VA  20170<br><br>And<br><br>**NAEEM MOHD**<br>1324 April Way<br>Herndon, VA  20170<br><br>And<br><br>**CHARBROIL GRILL OF WORLDGATE, INC.**<br>d/b/a **BUFFALO WINGS HOUSE**<br>13005 Worldgate Drive<br>Herndon, VA  20170<br><br><br>**SERVE Registered Agent:**<br>Sudha Chopra<br>13005 Worldgate Drive<br>Herndon, VA  20170<br>Defendants. | Civ. Action No. 1:07cv612<br>GBL/BRP |

## COMPLAINT

COMES NOW, Plaintiff, Buffalo Wings Factory, Inc. (hereinafter "Factory"), by

counsel, and files this its complaint for permanent injunctive relief and damages against the

defendants, Saleem Mohd (hereinafter "Saleem"), Naeem Mohd (hereinafter "Naeem"), and Charbroil Grill Of Worldgate, Inc. d/b/a Buffalo Wing House and d/b/a Buffalo Wings House (hereinafter "Charbroil") (collectively the "Defendants") and states as follows:

## PARTIES

1.     Factory is a Virginia corporation operating four specialty restaurants since 1990 in Sterling, Ashburn, Chantilly and Reston, Virginia.

2.     Saleem is a resident of Herndon, Virginia.  Saleem has acted as an employee, owner, or operator of a restaurant in Herndon, Virginia, owned by Charbroil d/b/a Buffalo Wing House.

3.     Naeem is a resident of Herndon, Virginia.  Naeem has acted an employee, owner, or operator of a restaurant in Herndon, Virginia, owned by Charbroil d/b/a Buffalo Wing House.

4.     Charbroil is a Virginia corporation. The president of Charbroil is Sudha Chopra, who is the sister-in-law to Saleem and Naeem.  Saleem is the secretary of Charbroil.

5.     Upon information and belief Charbroil was founded by Saleem and Naeem, with Sudha Chopra as a president.

## JURISDICTION AND VENUE

6.     This Court has federal question jurisdiction over the subject matter of Factory's federal Lanham Act claim pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

7.     This Court has subject matter jurisdiction over Factory's state-law claims pursuant to 28 U.S.C. § 1338(b) because they are claims of unfair competition joined with substantial and related claims under the United States trademark laws.

8.     This Court has subject matter jurisdiction over Factory's state-law claims under the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because they are part of

the same case or controversy and arise from the same nucleus of operative fact as Factory's state-law claims.

9.      Venue over Factory's claims is proper in this district and division pursuant to 28 U.S.C. §§ 1391 and 1400 because the Defendants reside here, are found here, transacts business here, and here committed a substantial part of the acts and occurrences giving rise to Factory's claims.

## FACTS COMMON TO ALL COUNTS

10.     Factory is a Virginia corporation operating four specialty restaurants since 1990.

11.     Plaintiff is engaged in the specialty restaurant business, specifically involving the sale and marketing of the specialty food "buffalo wings."

12.     Factory has a valid and existing Virginia trademark registration for the mark "Buffalo Wing Factory" (the "Factory Mark") in connection with food and restaurant services, (Certificate No. 4834) with a registration date of January 30, 2001.

13.     Through consistent, long-standing use, critical acclaim, and the popularity of Factory's related goods and services among the consuming public, the Factory Mark has garnered substantial recognition and goodwill among the consuming public and have become associated in the minds of the relevant consumers with the Plaintiff and its related goods and services, gaining further distinctiveness and secondary meaning the minds of the relevant consumers, especially in the "Dulles Corridor" area of Northern Virginia, spanning Sterling, Reston, Herndon and Chantilly, Virginia.

14.     Saleem started working for Factory in 1996.

15.     Saleem worked for Factory without interruption until on or about June 15, 2004.

3

16.     Naeem started working for Factory in approximately1996.

17.     Naeem worked for Factory sporadically during the same period as Saleem.

18.     Saleem and Naeem both had access to sales information, methods and various trade secrets including the recipe for the signature Buffalo Wing Factory Sauces.

19.     Upon information and belief, Saleem and Naeem opened Charbroil on or about September 1, 2005

20.     Upon information and belief, Saleem and Naeem planned Charbroil while working for Factory and/or with proprietary information from Factory.

21.     Factory's general manager of the Sterling restaurant, Matt Mosher, was hired away by Defendants as a general manager for Charbroil.

22.     Mosher was a key employee of Factory who knew and who had access to proprietary information as to the recipes for the sauces and how to operate profitably this type of restaurant.

23.     Defendants have since hired and attempted to hire a number of other Factory employees.

24.     Defendants' intent in hiring Factory employees is to take the success and confidential information of Factory and misappropriate it as their own and/or to confuse customers about Charbroil being the same as Factory.

25.     Defendants have made false statements to a number of Factory employees, third party vendors, and Factory customers that Charbroil is the same restaurant as Factory, and that Charbroil's products are the same as Factory's products.

26.     Charbroil's first menu is substantially identical to the Factory menu such that it invites confusion by members of the public insofar as it has a similar layout, the same list of sauces in virtually the same order and the same specials, just on different days of the week.

27.     Charbroil lists 30 sauces on its menu, of which 20 are non-generic sauces, the creation and ingredients of which are considered the trade secrets of Factory (hereinafter the "Secret Sauces").

28.     The Secret Sauces, and especially their recipes and ingredients, are confidential and proprietary business information and trade secrets of Factory.

29.     Factory made it known to Saleem and Naeem that such sauces were trade secrets at the time of their respective employments by Factory.

30.     Factory also made it known that the sauces were proprietary and not to be used except in connection with Factory's operations.

31.     Defendants' actions in using the same sauces and in opening and operating Charbroil are unauthorized.

32.     Defendants' actions have caused a number of customers to confuse Factory and Charbroil, thinking they are one and the same restaurant.

33.     Charbroil has made statements to a number of Factory employees, third party vendors, and Factory customers that Charbroil's "Buffalo Wing House" is the same restaurant as Factory.

34.     Defendants are currently infringing the Factory Marks in a manner that is likely to mislead, confuse and deceive the relevant consuming public.

35.     As a result of Defendants' misconduct asserted herein Factory has suffered more than $500,000 in annual revenue losses to date.

36.    As a result of Defendants' misconduct, Charbroil, Saleem and Naeem have been unjustly enriched by their wrongful actions as described herein.

## COUNT I
## FALSE ADVERTISING AND FALSE DESIGNATION
## OF ORIGIN IN VIOLATION OF THE LANHAM ACT

37.    Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 36 to this Complaint as though expressly set forth herein.

38.    Defendants have engaged in false advertising, false claims of sponsorship and affiliation, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by unlawfully using their infringing and confusingly similar "Buffalo Wing House" Mark (the "Infringing Mark") in and affecting interstate commerce, on and in connection with competitive and closely related products, services and facilities, in a manner which is likely to confuse, mislead and deceive customers and consumers as to the origin, sponsorship and affiliation of Defendants' products, services and facilities.

39.    In addition to infringing the Factory Mark, Defendants have falsely stated to customers, vendors and other third parties, in commercial advertising and promotion, in and affecting interstate commerce, that their restaurant and products are the same as Factory's restaurants and products.   Moreover, Defendants' menu and product offerings are close imitations of, and are confusingly similar to, Plaintiff's menu and product offerings.

40.    Defendants' false advertising, false claims of sponsorship and affiliation, and false designations of origin, in commercial advertising and promotion, are likely to confuse and mislead, have actually confused and misled, and were intended to confuse and mislead, customers and consumers as to the origin, sponsorship and affiliation of Defendants' products, services and facilities.

6

41.   Defendants' false advertising, false claims of sponsorship and affiliation, and false designation of origin have proximately caused Factory irreparable harm and injury and, unless enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.   Therefore, Factory is entitled to a permanent injunction against Defendants' false advertising, false claims of sponsorship and affiliation,  and false designation of origin pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116.

42.   Defendants' false advertising, false claims of sponsorship and affiliation, and false designation of origin have proximately caused Factory to lose sales, revenues and profits, and have caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

43.   Defendants' false advertising and false designation of origin are and have been willful and intentional, as evidenced in part by the fact that Defendants had actual knowledge of Factory and the Factory Mark but nevertheless adopted, used and has continued to use their Infringing Mark on and in connection with Defendants' competitive and closely related products, services and facilities.  Defendants' willful and intentional misconduct is further demonstrated by their intentionally and knowingly false statements that their restaurant and business is the same restaurant and business as Plaintiff's restaurants and business.   Therefore, Factory is entitled to recover three times its damages or three times Defendants' wrongful profits, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

44.   Defendants' willful and intentional false advertising, false claims of sponsorship and affiliation, and false designation of origin make this an exceptional case.  Therefore, Factory is entitled to recover its costs, expenses and attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT II
## TRADEMARK INFRINGEMENT
## UNDER VA. CODE § 59.1-92.1 et seq.

45.     Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 44 to this Complaint as though expressly set forth herein.

46.     Plaintiff has been engaged in the specialty restaurant business, specifically involving the sale and marketing of the specialty food "buffalo wings," and related products, services and facilities in Virginia since 1990.

47.     By the year 2000, the name "Buffalo Wing Factory" had acquired secondary meaning and acquired distinctiveness in the minds of the consuming public, designating Plaintiff as a provider of spicy chicken wings with unique taste due to the Secret Sauces, and related services and facilities, and had engendered recognition and goodwill in the marketplace inuring to Plaintiff's benefit.

48.     The Factory Mark is the subject of a valid and existing Virginia trademark registration, Certificate No. 4834.

49.     Charbroil, Saleem, and Naeem have used, reproduced, counterfeited, copied, and/or imitated the registered Factory Mark in connection with the marketing and sale of buffalo wings and related services and facilities within the Virginia marketplace.

50.     They have done so by using the confusingly similar and infringing mark "Buffalo Wing House" whereas Plaintiff's registered Factory Mark is "Buffalo Wing Factory." (emphasis supplied).

51.     Defendants' use, reproduction, counterfeiting, and/or imitation of Factory's registered Factory Mark was done with the intention and effect of causing confusion, mistake and/or deception in the market for buffalo wings and related products, services and facilities.

52.     The confusion, mistake and deception in the marketplace for buffalo wings, and related products, services and facilities, resulting from Defendants' infringement has damaged Factory and will continue to damage Factory.  Among other things, Factory has suffered irreparable harm from actual customer confusion and from the loss of control over the quality of products, services and facilities associated with its registered Virginia trademark.

53.     Defendants' trademark infringement has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' trademark infringement, pursuant to Va. Code § 59.1-92.13.

54.     Defendants' trademark infringement has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants, pursuant to Va. Code § 59.1-92.13.

55.     Defendants' trademark infringement has been willful and intentional, as evidenced in part by the fact that Defendants had actual knowledge of Factory and the Factory Mark but adopted, used and continued to use the confusingly similar Infringing Mark on competitive and closely related products, services and facilities, as part of an overall plot and conspiracy to imitate and copy Plaintiff's business. Defendants' have infringed Plaintiff's Factory Mark willfully and intentionally, and with a reckless disregard for Plaintiff's rights. Therefore, Factory is entitled to recover its attorneys' fees and litigation expenses, pursuant to Va. Code § 59.1-92.13, and to recover punitive damages from each Defendant in the amount of $350,000.00.

9

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

56.     Factory incorporates by reference the averments and allegations stated in
Paragraphs 1 through 55 to this Complaint as though expressly set forth herein.

57.     Factory is a Virginia corporation operating four specialty restaurants in Virginia
since 1990.

58.     Factory has a proprietary right in the recipes and formulas for the Secret Sauces as
used by Factory, which differ from the sauces generally available to the public.

59.     Saleem started working for Factory in 1996 and worked for Factory without
interruption until on or about June 15, 2004.

60.     Naeem started working for Factory in approximately1996 and worked for Factory
sporadically during the same period as Saleem.

61.     Saleem and Naeem both had access to confidential sales information, sales and
marketing methods and various trade secrets including the confidential recipes for and
ingredients of the signature Buffalo Wing Factory Sauces.

62.     On or about September 1, 2005 Saleem and Naeem opened Charbroil.

63.     Defendants opened Charbroil with the intent of misappropriating Factory's trade
secrets and confidential and proprietary information and of exploiting them for Defendants' own
benefit without Factory's authorization.

64.     Factory's general manager of the Sterling restaurant was hired away by Charbroil
as a general manager to further misappropriate and exploit Factory's trade secrets and
confidential and proprietary business information.

65.     Charbroil has since hired and attempted to hire a number of other Factory employees to further misappropriate and exploit Factory's trade secrets and confidential and proprietary business information..

66.     Charbroil lists 30 sauces on its menu, of which 20 are unique, proprietary, non-generic sauces, the creation and ingredients of which constitute trade secrets and confidential and proprietary business information of Factory (hereinafter the "Secret Sauces").

67.     The recipes and ingredients for the Secret Sauces in their specific form, as used by Factory, and as stolen by Saleem, Naeem and Charbroil, are not generally known to the public, nor are they readily ascertainable by proper methods.

68.     The ingredients and methods for the creation of such Secret Sauces became known to Saleem and Naeem while in the employ of Factory, at which time they knew or had reason to know that their knowledge of Factory's trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

69.     The ingredients to and recipes for Factory's Secret Sauces were made known to Saleem and Naeem while they were in the employ of Factory, at which time they knew, or had reason to know, that their knowledge of Factory's trade secrets was derived from or through a person who owed a duty to Factory to maintain their secrecy and limit their use.

70.     Alternatively, the ingredients of and recipes for Secret Sauces became known to Saleem and Naeem while they were employed by Factory, at which time they knew, or had reason to know, that their knowledge of Factory's trade secrets was acquired by accident or mistake.

71.     Factory used reasonable efforts to maintain the confidentiality of its trade secrets and confidential and propriety information, including without limitation its recipes for and

ingredients to the Secret Sauces.   Factory made it known to Saleem and Naeem that such sauces were trade secrets at the time of their respective employment by Factory.

72.     The recipes for and ingredients to the Secret Sauces are proprietary trade secrets of Factory which give Factory a competitive advantage over competing businesses which do not know and use them.

73.     The Secret Sauces provide the unique flavor to Factory's buffalo wings and have contributed substantially Factory's commercial success.

74.     The Secret Sauces make Factory's wings unique in the market and generate additional sales and consumer demand for them.

75.     Saleem and Naeem were informed and knew that the Secret Sauces contributed substantially to Factory's success.

76.     Defendant Charbroil knowingly permitted, authorized, ratified, and conspired in Saleem's and Naeem's tortious breaches of their fiduciary duties to Factory.

77.     Defendants Saleem, Naeem and Charbroil jointly and severally have willfully and maliciously misappropriated the Factory's Secret Sauces, and their ingredients and recipes, in violation of the Uniform Trade Secrets Act, VA. CODE § 59.1-336 et. seq. (2005).

78.     Misappropriation of the Secret Sauces was committed by the Defendants Saleem, Naeem and Charbroil without the express or implied consent of Factory, the owner of the trade secrets.

79.     Plaintiff has suffered financial loss as a result of Defendants' misappropriation of Factory's trade secrets and confidential and proprietary business information.

80.     As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

12

81.     Factory has suffered irreparable harm from the use and disclosure of its trade secrets and confidential and proprietary business information by competitors who do not appropriately limits their use and disclosure.

82.     Defendants' misappropriation of Factory's trade secrets has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law. Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' misappropriation of Factory's trade secrets, pursuant to Va. Code § 59.1-337.

83.     Defendants' misappropriation of Factory's trade secrets has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants, pursuant to Va. Code § 59.1-338.  In any event, Factory is entitled to recover at least a reasonable royalty for Defendants' misappropriation and unauthorized use of Factory's trade secrets.

84.     Defendants' misappropriation of Factory's trade secrets has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to misappropriate, imitate and copy Plaintiff's business. Defendants have misappropriated Factory's trade secrets willfully and intentionally, and with a reckless disregard for Plaintiff's rights.  Therefore, Factory is entitled to recover its attorneys' fees and litigation expenses, pursuant to Va. Code § 59.1-338.1, and to recover punitive damages from each Defendant in the amount of $350,000.00, pursuant to Va. Code § 59.1-338.

## COUNT IV
## TORTIOUS BREACH OF FIDUCIARY DUTY

85.     Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 84 to this Complaint as though expressly set forth herein.

13

86.     Factory has a proprietary right in the confidential recipes and formulas for the Secret Sauces as used by Factory, which differ from the sauces generally available to the public.

87.     The recipes for and ingredients to Factory's Secret Sauces became known to Saleem and Naeem while they were employed by Factory, at which time they knew or had reason to know that their knowledge of Factory's confidential and proprietary business information was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.

88.     During and after the term of their prior employment with Factory, Saleem and Naeem owed Plaintiff fiduciary duties not to use Factory's confidential and proprietary business information in competition with Factory.

89.     Saleem and Naeem both had access to confidential sales information, sales and marketing methods, and other  confidential and proprietary information of Factory,  including the confidential recipes for and ingredients of the signature Buffalo Wing Factory Secret Sauces.

90.     During and after the terms of their employment with Factory, Saleem and Naeem planned and intended to misappropriate Factory's confidential and proprietary business information in competition with Factory.

91.     Defendant Charbroil knowingly permitted, authorized, ratified, and conspired in Saleem's and Naeem's tortious breaches of their fiduciary duties to Factory.

92.     Defendants opened Charbroil with the intent to misappropriate Factory's confidential and proprietary information and to exploit it for Defendants' own benefit in competition with Factory.

93.     Factory's general manager of the Sterling restaurant was hired away by Charbroil as a general manager to further misappropriate and exploit Factory's confidential and proprietary business information.

94.     Charbroil has since hired and attempted to hire a number of other Factory employees to further misappropriate and exploit Factory's confidential and proprietary business information.

95.     Factory used reasonable efforts to maintain the confidentiality of its confidential and propriety business information, including without limitation its recipes for and ingredients to the Secret Sauces.  Factory made it known to Saleem and Naeem that this information was confidential at the time of their respective employment by Factory.

96.     Saleem and Naeem were informed and knew that the Secret Sauces were confidential and proprietary business information of Factory which contributed substantially to Factory's success.

97.     Defendants Saleem, Naeem and Charbroil jointly and severally have willfully and maliciously misappropriated the Factory's Secret Sauces, and their ingredients and recipes, in tortious breach of Saleem's and Naeem's fiduciary duties to Factory.

98.     Misappropriation of the Secret Sauces was committed by the Defendants without the express or implied consent of Factory.

99.     Plaintiff has suffered financial loss as a result of Defendants' misappropriation of Factory's confidential and proprietary business information.

100.     As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

101.   Factory has suffered irreparable harm from the use and disclosure of its confidential and proprietary business information by competitors who do not appropriately limit its use and disclosure.

102.   Defendants' misappropriation of Factory's confidential and proprietary business information has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' tortious breaches of their fiduciary duties to Factory.

103.   Defendants' tortious breaches of their fiduciary duties to Factory has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

104.   Defendants' tortious breaches of their fiduciary duties to Factory have been willful and intentional, and were committed by Defendants as part of their overall plot and conspiracy to imitate and copy Plaintiff's business.  Defendants have misappropriated Factory's confidential and proprietary business information willfully and intentionally, and with a reckless disregard for Plaintiff's rights.   Therefore, Factory is entitled to recover punitive damages from each Defendant in the amount of $350,000.00.

## COUNT V
## UNFAIR COMPETITION

105.   Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 104 to this Complaint as though expressly set forth herein.

106.   Charbroil has made statements to a number of Factory employees, third party vendors, and Factory customers that Charbroil is the same restaurant as Factory.

107.    Defendants have knowingly, willfully and intentionally attempted to pass off Charbroil and its products, services and facilities and Factory and its products, services and facilities.

108.    Defendants' passing off has had the purpose and effect of confusing and deceiving customers and third parties into believing that Charbroil and its products, services and facilities are the same as, or are affiliated with, Factory and its products, services and facilities.

109.    Defendants have unfairly competed against Factory and have willfully and maliciously deceived consumers by claiming its product "buffalo wings" sold at "Buffalo Wing House" are the same as those sold by Factory, and by using a substantially similar menu and trade name, and through use of the Secret Sauces as a marketing tool to obtain business.

110.    Defendants have unfairly competed against Factory by soliciting, raiding and hiring Factory employees for the purpose of obtaining Factory's trade secrets and confidential and proprietary business information, and for the purpose of making Charbroil appear to be the same business as, or to be sponsored by or affiliated with, Factory.

111.    Charbroil's unfair competition and passing off has caused confusion, mistake, or deception which has damaged the Plaintiff and – unless it is enjoined -- will continue to damage the Plaintiff in the future.

112.    Plaintiff has suffered financial loss as a result of Defendants' unfair competition.

113.    As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

114.    Factory has suffered irreparable harm from the loss of control over its own name, trademarks and reputation due to Defendants' passing off, and from the use and disclosure of

Factory's confidential and proprietary business information by competitors who do not appropriately limit its disclosure and use.

115.   Defendants' unfair competition has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.   Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' unfair competition against Factory.

116.   Defendants' unfair competition has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

117.   Defendants' unfair competition has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to misappropriate, imitate and copy Plaintiff's business and to pass themselves off as Plaintiff.   Defendants have unfairly competed against Factory willfully and intentionally, and with a reckless disregard for Plaintiff's rights.   Therefore, Factory is entitled to recover punitive damages from each Defendant in the amount of $350,000.00.

## COUNT VI
## VIOLATION OF BUSINESS CONSPIRACY ACT: VA. CODE 18.2-500 et seq.

118.   Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 117 to this Complaint as though expressly set forth herein.

119.   Since before Charbroil was formed and before Saleem stopped working for Factory, Defendants knowingly and intentionally have conspired among themselves to pass themselves off as Factory, to infringe Factory's trademarks, to misappropriate Factory's trade

18

secrets and confidential business information, to breach their fiduciary duties to Factory, and to recruit and solicit Factory's employees for those purposes.

120.    Defendants have made statements to Factory employees, third party vendors, and Factory customers that Charbroil is the same restaurant as Factory.

121.    Defendants have acted in concert, agreed, associated, mutually undertook and/or combined together, and with other former Factory employees, to injure Factory's business by misappropriating its trade secrets and proprietary business information, infringing Factory's trademarks, passing themselves off as Factory, and damaging the goodwill cultivated by Factory in the marketplace.

122.    Conspirators Saleem and Naeem further specifically conspired with one another, while in the employ of Factory, prior to the formation of Charbroil, and/or before their subsequent employment at Charbroil, to injure Factory's business by misappropriating Factory's trade secrets and proprietary business information, infringing Factory's trademarks, passing themselves off as Factory, and making unauthorized use of Factory's trade name, by opening a competing restaurant using virtually the same name as Factory, as well as by using the same Secret Sauces and a virtually identical menu to intentionally cause confusion in the market.

123.    Defendants conspired to injure Factory's business intentionally, purposefully, willfully, maliciously, and without lawful justification, in violation of Va. Code §§ 18.2-499 and 18.2-500.

124.    Defendants' unlawful business conspiracy has caused confusion, mistake, or deception which has damaged the Plaintiff and – unless it is enjoined -- will continue to damage the Plaintiff in the future.

125.   Plaintiff has suffered financial loss as a result of Defendants' unlawful business conspiracy.

126.   As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

127.   Factory has suffered irreparable harm for which there is no adequate remedy at law from the loss of control over its own name, trademarks and reputation due to Defendants' passing off, and from the use and disclosure of Factory's confidential and proprietary business information by competitors who do not appropriately limit its disclosure and use.

128.   Defendants' unlawful business conspiracy has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' unlawful business conspiracy against Factory.

129.   Defendants' unlawful business conspiracy has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

130.   Defendants' unlawful business conspiracy has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to misappropriate, imitate and copy Plaintiff's business and to pass themselves off as Plaintiff.  Defendants have unlawfully conspired against Factory willfully and intentionally, and with a reckless disregard for Plaintiff's rights.   Therefore, Factory is entitled to recover from each Defendant, jointly and severally, treble damages, attorneys' fees, and litigation costs and expenses.

## COUNT VII
## TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE
## CONTRACTS AND BUSINESS RELATIONSHIPS

131.    Factory incorporates by reference the averments and allegations stated in

Paragraphs 1 through 130 to this Complaint as though expressly set forth herein.

132.    With prior knowledge of Saleem's and Naeem's employment contracts and

relationships with Factory, and of the fiduciary duties which they owed to Factory, Defendants

knowingly and intentionally have conspired among themselves to pass themselves off as Factory,

to infringe Factory's trademarks, to misappropriate Factory's trade secrets and confidential

business information, to breach their fiduciary duties to Factory, and to recruit and solicit

Factory's employees for those purposes.

133.    Defendants wrongfully and improperly induced Saleem and Naeem to breach and

terminate their employment relationships and contracts with Factory, and to breach their

fiduciary duties to Factory, for the foregoing improper purposes, resulting in substantial damages

to Plaintiff.

134.    With prior knowledge of other employees' employment contracts and

relationships with Factory, and of the fiduciary duties which they owed to Factory, Defendants

knowingly and intentionally have conspired among themselves to pass themselves off as Factory,

to infringe Factory's trademarks, to misappropriate Factory's trade secrets and confidential

business information, to breach their fiduciary duties to Factory, and to recruit and solicit

Factory's employees for those purposes.

135.    Defendants wrongfully and improperly induced other former Factory employees

to breach and terminate their employment relationships and contracts with Factory, and to breach

their fiduciary duties to Factory, for the foregoing improper purposes, resulting in substantial damages to Plaintiff.

136.   With prior knowledge of Factory's actual and prospective relationships with buffalo wing aficionados and particular consumers in the Dulles Corridor, Defendants knowingly and intentionally have conspired among themselves and with other former Factory employees to pass themselves off as Factory, to infringe Factory's trademarks, to misappropriate Factory's trade secrets and confidential business information, to breach their fiduciary duties to Factory, and to recruit and solicit Factory's employees, all for the purpose of capturing and interfering with Factory's actual and prospective business relationships with its customers.

137.   Defendants wrongfully and improperly induced those customers to patronize Charbroil rather than Factory, causing significant injury to Factory and diminishing its sales.

138.   Defendants established Charbroil with the purpose and effect of improperly taking unfair advantage of Factory's relationships with its customers by causing intentional confusion among the consuming public.

139.   Defendants have consciously made false statements to Factory customers that "Buffalo Wing House" is the same business or restaurant as Factory with the purpose and effect of improperly interfering with Factory's business relations with customers, thereby damaging the Plaintiff in its business.

140.   But for Defendants' wrongful and tortious interference, there is a reasonable probability that Factory would have maintained beneficial business and employment relationships with the relevant employees and actual and prospective customers.   This is demonstrated in part by Charbroil's successful sales of the food products and services in the

Northern Virginia that were copied from, and which are similar to, Factory's products and services.

141.    Defendants tortiously interfered with Plaintiff's actual and prospective business relationships through means which are both unethical and independently tortious and unlawful, as described in the foregoing Counts I through VI.

142.    Defendants intended to interfere with Factory's actual and prospective business relationships in order to secure the profits of those relationships for themselves.

143.    It is reasonably certain that Factory would have realized and continued to benefit from these actual and prospective business relationships, and that they would have continued, in the absence of Defendants' unlawful and improper interference.

144.    Defendants' interference was not justified, privileged or proper. They engaged in unfair competition and unethical conduct.

145.    Defendants' tortious interference has caused confusion, mistake, or deception which has damaged the Plaintiff and—unless it is enjoined—will continue to damage the Plaintiff in the future.

146.    Plaintiff has suffered financial loss as a result of Defendants' tortious interference.

147.    As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

148.    Factory has suffered irreparable harm from the loss of control over its own name, trademarks and reputation due to Defendants' passing off, and from the use and disclosure of Factory's confidential and proprietary business information by competitors who do not appropriately limit its disclosure and use.

149.   Defendants' tortious interference has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' tortious interference.

150.   Defendants' tortious interference has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

151.   Defendants' tortious interference has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to imitate and copy Plaintiff's business and to pass themselves off as Plaintiff.  Defendants have committed tortious interference against Factory willfully and intentionally, and with a reckless disregard for Plaintiff's rights.  Therefore, Factory is entitled to recover from each Defendant, jointly and severally, punitive damages up to $350,000.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants Saleem, Naeem and Charbroil, jointly and severally for:  actual compensatory damages, recovery of Defendants' wrongful profits, treble damages, punitive and exemplary damages, and attorneys' fees and litigation costs and expenses.

Plaintiff further seeks injunctive relief against Defendants' unlawful trademark infringement, passing off, false advertising, false claims of sponsorship and affiliation, false designation of origin, unfair competition, misappropriation of Plaintiff's trade secrets and confidential and proprietary business information, and tortious interference with customer and employee contracts and relationships.    Plaintiff also seeks an order requiring all Defendants to

destroy all materials bearing the infringing and confusingly similar mark "Buffalo Wings House" and all confusingly similar menus and sauces.

Plaintiff further seeks recovery of its attorneys' fees and litigation costs and expenses, and such additional or alternative relief as the interests of justice may require or which the Court deems just and proper.

Respectfully Submitted,

BUFFALO WINGS FACTORY, INC.
By Counsel

Thomas M. Dunlap (VSB #44016)
Eugene W. Policastri (VSB #65837)
DUNLAP, GRUBB & WEAVER, P.C.
199 Liberty Street, SW
Leesburg, Virginia 20175
703-777-7319
703-777-3656 (fax)
tdunlap@dglegal.com
Counsel for the Plaintiff