**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

| | |
|---|---|
| **BUFFALO WINGS FACTORY, INC.** | ) |
| | ) |
|    **Plaintiff,** | ) |
| | ) |
| **v.** | ) **Civ. Action No. 1:07-cv00612** |
| | ) |
| **SALEEM MOHD, et al.** | ) **JURY TRIAL DEMANDED** |
| | ) |
|    **Defendants.** | ) |
|                           | ) |

**FIRST AMENDED COMPLAINT**

**COMES NOW**, Plaintiff, Buffalo Wings Factory, Inc. (hereinafter "Factory"), by

counsel, and files this its First Amended Complaint for permanent injunctive relief and damages

against the defendants, Saleem Mohd (hereinafter "Saleem"), Naeem Mohd (hereinafter

"Naeem"), and Charbroil Grill Of Worldgate, Inc. d/b/a Buffalo Wing House and d/b/a Buffalo

Wings House (hereinafter "Charbroil") (collectively the "Defendants") and states as follows:

**PARTIES**

1.     Factory is a Virginia corporation operating four specialty restaurants since 1990

in Sterling, Ashburn, Chantilly and Reston, Virginia.

2.     Saleem is a resident of Herndon, Virginia.  Saleem has acted as an employee,

owner, or operator of a restaurant in Herndon, Virginia, owned by Charbroil d/b/a Buffalo Wing

House.

3.     Naeem is a resident of Herndon, Virginia.  Naeem has acted an employee, owner,

or operator of a restaurant in Herndon, Virginia, owned by Charbroil d/b/a Buffalo Wing House.

4.    Charbroil is a Virginia corporation. The president of Charbroil is Sudha Chopra, who is the sister-in-law to Saleem and Naeem.  Saleem is the secretary of Charbroil.

5.    Upon information and belief Charbroil was founded by Saleem and Naeem, with Sudha Chopra as a president.

## JURISDICTION AND VENUE

6.    This Court has federal question jurisdiction over the subject matter of Factory's federal Lanham Act claim pursuant to 28 U.S.C. §§ 1331 and 1338 and 15 U.S.C. § 1121.

7.    This Court has subject matter jurisdiction over Factory's state-law claims pursuant to  28 U.S.C. § 1338(b) because they are claims of  unfair competition joined with substantial and related claims under the United States trademark laws.

8.    This Court has subject matter jurisdiction over Factory's state-law claims under the doctrine of supplemental jurisdiction pursuant to 28 U.S.C. § 1367 because they are part of the same case or controversy and arise from the same nucleus of operative fact as Factory's state-law claims.

9.    Venue over Factory's claims is proper in this district and division pursuant to 28 U.S.C. §§ 1391 and 1400 because the Defendants reside here, are found here, transacts business here, and here committed a substantial part of the acts and occurrences giving rise to Factory's claims.

## FACTS COMMON TO ALL COUNTS

10.   Factory is a Virginia corporation operating four specialty restaurants since 1990.

11.   Plaintiff is engaged in the specialty restaurant business, specifically involving the sale and marketing of the specialty food "buffalo wings."

12.    Factory has a valid and existing Virginia trademark registration for the mark "Buffalo Wing Factory" (the "Factory Mark") in connection with food and restaurant services, (Certificate No. 4834) with a registration date of January 30, 2001.

13.    Saleem started working for Factory in 1996.

14.    Saleem worked for Factory without interruption until on or about June 15, 2004.

15.    Naeem started working for Factory in approximately1996.

16.    Naeem worked for Factory sporadically during the same period as Saleem.

## LIKELIHOOD OF CONFUSION FACTORS

17.    **Strength and Distinctiveness of the Factory Mark.**    Through consistent, long-standing use, critical acclaim, and the popularity of  Factory's related goods and services among the consuming public, the Factory Mark has garnered substantial recognition and goodwill among the consuming public and have become associated in the minds of the relevant consumers with the Plaintiff and its related goods and services, gaining further distinctiveness and secondary meaning the minds of the relevant consumers, especially in the "Dulles Corridor" area of Northern Virginia, spanning Sterling, Reston, Herndon and Chantilly, Virginia.

18.    Factory and the Factory Mark have achieved critical acclaim and popularity in part by being featured in local newspaper articles, radio programs, and radio promotions, including articles, advertising and positive reviews in the Washington Post, the Herndon Observer, and other local newspapers, and promotions run in connection with local rock radio station DC 101. Factory has spent approximately $80,000 per year advertising Factory and the Factory Mark since 2000, having been in business in the Dulles Corridor under the same name and mark since 1990.  Many customers drive to Factory's restaurants from West Virginia and Maryland due the

popularity of the Factory Mark and the products and services offered under them.  Factory's overall sales revenues have exceeded $5-6 million per year since 2000.

19.    **Similarity of the Parties' Competing Marks.**    The Defendants' infringing mark, "Buffalo Wings House" (the "Infringing Mark") is confusingly similar to "Buffalo Wing Factory" (the "Factory Mark").   Factory's specialty hottest wing product is called the "Flatliner."   Starting many years before Defendants opened their restaurant in 2005, Factory has advertised itself in local newspapers, print advertising, and on its menus as "Buffalo Wing Factory – Home of the Flatliner."   Defendants copied this feature and this tag line in a confusingly similar manner by offering a specialty wing product named the that is very hot named the "Inferno" and advertising there restaurant in the same types of newspaper and print advertising as:   "Buffalo Wings House – Home of the Inferno."

20.    **Similarity of the Parties' Goods and Services.**    Plaintiff and Defendants both operate specialty restaurants serving buffalo wings and beer.   Defendants' first menu was substantially identical to Plaintiff's menu at the time in the Defendants' menu had a similar layout, the same list of sauces in virtually the same order and the same specials, just on different days of the week.  Twenty of Defendants' buffalo wing sauces are unique, non-generic sauces, the creation and ingredients of which are considered trade secrets of Factory, which Defendants Saleem and Naeem Mohd learned of through their employment by Factory, and which Defendants copied from Factory.

21.    **Similarity of the Parties' Facilities**.    The Defendants' facility is very similar in terms of design, restaurant types and locations to the Plaintiff's facilities.    They both are in the Dulles Corridor.  They both are located in strip malls.    They both are casual dining restaurants with sports themes, bar stools, bars, and sit-down dining areas with booths and table seating.

They both have wood grain furniture and paneling with a maroon color scheme.    They both prominently feature large televisions for watching sporting events.    They both offer games for entertaining customers.    Matt Mosher, who now works for Defendants' restuarant but formerly worked for Factory, appeared on the DC 101 local rock radio station and stated that Defendants' restaurant and food is the same as the Plaintiff's.    The parties each have neon or fluorescent signs outside their stores advertising their marks:  "Buffalo Wing Factory" for the Plaintiff and "Buffalo Wings House" for the Defendants.

22.    **Similarity of The Parties' Advertising**.    Like Factory, Defendants advertise their Infringing Mark in local newspapers like the Washington Post and the Herndon Observer.  Like Factory, Defendants have advertised their Infringing Mark through advertisements and promotions on local rock radio station DC 101.  Thus, the parties use very similar advertising channels used by the parties to advertise and promote their competing marks, and their related goods and services.

23.    Defendants intentionally have enhanced the confusing similarity between the Factory Mark and the Infringing Mark by using, in the same local newspaper and print advertising, and on their menus, not only the Infringing Mark, but also a confusingly similar slogan or tag line.    For example, Factory's specialty hottest wing product is called the "Flatliner."    Starting many years before Defendants opened their restaurant in 2005, Factory has advertised itself in local newspapers, print advertising, and on its menus as "Buffalo Wing Factory – Home of the Flatliner."    Defendants copied this feature and this tag line in a confusingly similar manner by offering a specialty wing product named the that is very hot named the "Inferno" and advertising there restaurant in the same types of newspaper and print advertising as:   "Buffalo Wings House – Home of the Inferno."

5

24.   **Defendants' Wrongful Intent**.   Defendants' have manifested their intent to copy and infringe the Factory Mark and to confuse customers into believing that Defendants' restaurant is sponsored by or affiliated with Factory by copying Factory's trademark, menu, product offerings, restaurant format, and slogan or tag line, as described in more detail above. Defendants copied twenty of Plaintiff's special non-generic sauces.  As a further example, Factory offered an "Alley Cat" deli sandwich for years before Saleem and Naeem departed.   It consisted of a turkey sandwich with Swiss cheese and Russian dressing on a rye sub roll. Defendants copied this product exactly, calling their sandwich the "Stray Cat."

25.   Defendants copied Factory's unique daily specials like:  (1) All you can wings and chicken fingers, including a drink, with no doggie bags, (2) 25 wings, prepared five different ways, and (3) the ten wings and five fingers combo.   Defendants copied these specials almost exactly, and offered them at the same or similar prices, just running them on different days.

26.   As a further example, Defendants' wrongful intent was manifested in their misappropriation and copying of Factory's trademark, slogan and tag line on Defendants' menus and in its local print and newspaper advertising, where Defendants have copied Factory's "Buffalo Wing Factory – Home of the Flatliner" advertisements with Defendants' confusing similar advertisements touting their restaurant as "Buffalo Wings House – Home of the Inferno."

27.   Defendants' trademark infringement has been willful and intentional, as evidenced in part by the fact that Defendants had actual knowledge of Factory and the Factory Mark based on their employment with Factory but adopted, used and continued to use the confusingly similar Infringing Mark on competitive and closely related products, services and facilities, as part of an overall plot and conspiracy to imitate and copy Plaintiff's business.  Defendants' have infringed

Plaintiff's Factory Mark willfully and intentionally, and with a reckless disregard for Plaintiff's rights.

28.    Link Smith is a salesman from Sysco who sells food and supplies to all restaurants involved.   He has stated that he was told by Defendants that their customers always confuse the two restaurants and that Naeem has told many people they are the same as Factory.    However, Defendants still continue to operate under the same confusingly similar name and format.

29.    **Actual Confusion**.    Due to Defendants' trademark infringement and passing off their facilities, products and services as those of Factory, customers and vendors have actually been deceived into believing that Defendants' restaurant, products and services were those of Factory, or were sponsored by or affiliated with Factory.  This actual customer confusion has been substantial and continuous.

30.    For example, shortly after Defendants' restaurant opened in Herndon in 2005, Dan Tufts, who is Factory's district manager, heard customers complain that Factory should have kept its Herndon or WorldGate restaurant smoke-free like its other restaurants.   In fact, these customers were confusing Defendants' restaurant, which permitted smoking and was located in Herndon in the WorldGate shopping center, with Factory's restaurants, which did not permit smoking and were not located in Herndon or WorldGate.

31.    Shortly after Defendants' restaurant opened in 2005, Factory's customers on several occasions stated to Factory personnel:  "I see you have a new restaurant in Herndon," or in WorldGate.   These customers were actually deceived and confused into believing that Defendants' restaurant, products and services were those of Factory, or were sponsored by or affiliated with Factory.

32.    Since Defendants' restaurant opened in 2005, Factory's customers have periodically stated to Factory personnel, including store managers and Dan Tufts, that they ate at Factory's Herndon or WorldGate restaurant, being actually deceived and confused into believing that Defendants' restaurant, products and services were those of Factory, or were sponsored by of affiliated with Factory.

33.    Since Defendants' restaurant opened in 2005, Factory's  Reston restaurant has periodically received phone call from actual or potential customers asking for the phone number of Factory's Herndon restaurant, and those customers had actually been deceived and confused into believing that Defendants' restaurant, products and services were those of Factory, or were sponsored by of affiliated with Factory.

34.    Since Defendants' restaurant opened in 2005, Factory's Chantilly restaurant has periodically received calls from actual or potential customers asking questions about promotions (like beer pong or wet T-shirt contests) that were being run by Defendants' restaurant.    It also has periodically experienced customers trying to order food from Factory off of  the menu for Defendants' restaurant.

35.    Since Defendants' restaurant opened in 2005, Factory's customers have periodically attempted to use Defendants' coupons at Factory's restaurants, including Factory's Reston restaurant managed by Chris Nichols and its Chantilly restaurant managed by Josh Gazes.

36.    Since Defendants' restaurant opened in 2005, Defendants' produce vendor (USA produce) has, on at least three different occasions, delivered to Factory stores produce orders placed by Defendants' restaurant.

37. Since Defendants' restaurant opened in 2005, one of Defendants' paper goods and supplies vendors (Sysco) has, on several different occasions, sent to Factory's Chantilly store invoices for orders placed by Defendants' restaurant.

38. Since Defendants' restaurant opened in 2005, on several different occasions the wholesale Miller beer distributor for Fairfax County has asked Factory employees whether they wanted to place the same beer order as Factory's Herndon store, erroneously believing that believing that Defendants' restaurant, products and services were those of Factory, or were sponsored by of affiliated with Factory.

39. In June of 2006, Factory received an invoice for food service supplies from Kahn Paper Company at its Ashburn address, directed to Defendant, wherein the Kahn had actually and directly confused Factory with the Defendants' restaurant.

40. Witnesses to the foregoing instances of actual confusion and deception include Dan Tufts, Factory's district manager; Chris Nichols, the manager of Factory's Reston restaurant; and, Josh Gazes, the manager of Factory's Chantilly restaurant.

**OTHER FACTS SHOWING DEFENDANTS' PATTERN
OF MISAPPROPRIATION AND COPYING**

41. Saleem and Naeem both had access to sales information, methods and various trade secrets including the recipe for the signature Buffalo Wing Factory Sauces.

42. Upon information and belief, Saleem and Naeem opened Charbroil on or about September 1, 2005

43. Upon information and belief, Saleem and Naeem planned Charbroil while working for Factory and/or with proprietary information from Factory.

44. Factory's general manager of the Sterling restaurant, Matt Mosher, was hired away by Defendants as a general manager for Charbroil.

9

45.    Mosher was a key employee of Factory who knew and who had access to proprietary information as to the recipes for the sauces and how to operate profitably this type of restaurant.

46.    Defendants have since hired and attempted to hire a number of other Factory employees.

47.    Defendants' intent in hiring Factory employees is to take the success and confidential information of Factory and misappropriate it as their own and/or to confuse customers about Charbroil being the same as Factory.

48.    Defendants have made false statements to a number of Factory employees, third party vendors, and Factory customers that Charbroil is the same restaurant as Factory, and that Charbroil's products are the same as Factory's products.

49.    Charbroil's first menu was substantially identical to the Factory menu such that it invites confusion by members of the public insofar as it has a similar layout, the same list of sauces in virtually the same order and the same specials, just on different days of the week.

50.    Charbroil lists 30 sauces on its menu, of which 20 are non-generic sauces, the creation and ingredients of which are considered the trade secrets of Factory (hereinafter the "Secret Sauces").

51.    The Secret Sauces, and especially their recipes and ingredients, are confidential and proprietary business information and trade secrets of Factory.

52.    Factory made it known to Saleem and Naeem that such sauces were trade secrets at the time of their respective employments by Factory.

53.    Factory also made it known that the sauces were proprietary and not to be used except in connection with Factory's operations.

10

54. Defendants' actions in using the same sauces and in opening and operating Charbroil are unauthorized.

55. Defendants' actions have caused a number of customers to confuse Factory and Charbroil, thinking they are one and the same restaurant.

56. Charbroil has made statements to a number of Factory employees, third party vendors, and Factory customers that Charbroil's "Buffalo Wings House" is the same restaurant as Factory.

57. Defendants are currently infringing the Factory Mark in a manner that is likely to mislead, confuse and deceive the relevant consuming public.

58. As a result of Defendants' misconduct asserted herein Factory has suffered more than $500,000 in annual revenue losses to date.

59. As a result of Defendants' misconduct, Charbroil, Saleem and Naeem have been unjustly enriched by their wrongful actions as described herein.

**COUNT I**
**FALSE ADVERTISING AND FALSE DESIGNATION**
**OF ORIGIN IN VIOLATION OF THE LANHAM ACT**

60. Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 59 to this Complaint as though expressly set forth herein.

61. Defendants have engaged in false advertising, false claims of sponsorship and affiliation, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), by unlawfully using their infringing and confusingly similar "Buffalo Wings House" Mark (the "Infringing Mark") in and affecting interstate commerce, on and in connection with competitive and closely related products, services and facilities, in a manner which is likely

11

to confuse, mislead and deceive customers and consumers as to the origin, sponsorship and affiliation of Defendants' products, services and facilities.

62.   In addition to infringing the Factory Mark, Defendants have falsely stated to customers, vendors and other third parties, in commercial advertising and promotion, in and affecting interstate commerce, that their restaurant and products are the same as Factory's restaurants and products.   Moreover, Defendants' menu and product offerings are close imitations of, are confusingly similar to, and have names which are confusingly similar to, Plaintiff's menu and product offerings.

63.   Defendants' false advertising, false claims of sponsorship and affiliation, and false designations of origin, in commercial advertising and promotion, are likely to confuse and mislead, have actually confused and misled, and were intended to confuse and mislead, customers and consumers as to the origin, sponsorship and affiliation of Defendants' products, services and facilities.

64.   Defendants' false advertising, false claims of sponsorship and affiliation, and false designation of origin have proximately caused Factory irreparable harm and injury and, unless enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.   Therefore, Factory is entitled to a permanent injunction against Defendants' false advertising, false claims of sponsorship and affiliation,  and false designation of origin pursuant to Section 34 of the Lanham Act, 15 U.S.C. § 1116.

65.   Defendants' false advertising, false claims of sponsorship and affiliation, and false designation of origin have proximately caused Factory to lose sales, revenues and profits, and have caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

66.   Defendants' false advertising and false designation of origin are and have been willful and intentional, as evidenced in part by the fact that Defendants had actual knowledge of Factory and the Factory Mark but nevertheless adopted, used and has continued to use their Infringing Mark on and in connection with Defendants' competitive and closely related products, services and facilities.  Defendants' willful and intentional misconduct is further demonstrated by their intentionally and knowingly false statements that their restaurant and business is the same restaurant and business as Plaintiff's restaurants and business.  Therefore, Factory is entitled to recover three times its damages or three times Defendants' wrongful profits, pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

67.   Defendants' willful and intentional false advertising, false claims of sponsorship and affiliation, and false designation of origin make this an exceptional case.  Therefore, Factory is entitled to recover its costs, expenses and attorneys' fees pursuant to Section 35 of the Lanham Act, 15 U.S.C. § 1117.

## COUNT II
## TRADEMARK INFRINGEMENT
## UNDER VA. CODE § 59.1-92.1 et seq.

68.   Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 67 to this Complaint as though expressly set forth herein.

69.   Plaintiff has been engaged in the specialty restaurant business, specifically involving the sale and marketing of the specialty food "buffalo wings," and related products, services and facilities in Virginia since 1990.

70.   By the year 2000, the name "Buffalo Wing Factory" had acquired secondary meaning and acquired distinctiveness in the minds of the consuming public, designating Plaintiff as a provider of spicy chicken wings with unique taste due to the Secret Sauces, and related

13

services and facilities, and had engendered recognition and goodwill in the marketplace inuring to Plaintiff's benefit.

71.    The Factory Mark is the subject of a valid and existing Virginia trademark registration, Certificate No. 4834.

72.    Charbroil, Saleem, and Naeem have used, reproduced, counterfeited, copied, and/or imitated the registered Factory Mark in connection with the marketing and sale of buffalo wings and related services and facilities within the Virginia marketplace.

73.    They have done so by using the confusingly similar and infringing mark "Buffalo Wings House" whereas Plaintiff's registered Factory Mark is "Buffalo Wing Factory." (emphasis supplied).

74.    Defendants' use, reproduction, counterfeiting, and/or imitation of Factory's registered Factory Mark was done with the intention and effect of causing confusion, mistake and/or deception in the market for buffalo wings and related products, services and facilities.

75.    The confusion, mistake and deception in the marketplace for buffalo wings, and related products, services and facilities, resulting from Defendants' infringement has damaged Factory and will continue to damage Factory.  Among other things, Factory has suffered irreparable harm from actual customer confusion and from the loss of control over the quality of products, services and facilities associated with its registered Virginia trademark.

76.    Defendants' trademark infringement has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' trademark infringement, pursuant to Va. Code § 59.1-92.13.

14

77.    Defendants' trademark infringement has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants, pursuant to Va. Code § 59.1-92.13.

78.    Defendants' trademark infringement has been willful and intentional, as evidenced in part by the fact that Defendants had actual knowledge of Factory and the Factory Mark but adopted, used and continued to use the confusingly similar Infringing Mark on competitive and closely related products, services and facilities, as part of an overall plot and conspiracy to imitate and copy Plaintiff's business. Defendants' have infringed Plaintiff's Factory Mark willfully and intentionally, and with a reckless disregard for Plaintiff's rights.    Therefore, Factory is entitled to recover its attorneys' fees and litigation expenses, pursuant to Va. Code § 59.1-92.13, and to recover punitive damages from each Defendant in the amount of $350,000.00.

## COUNT IV
## MISAPPROPRIATION OF TRADE SECRETS

79.    Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 78 to this Complaint as though expressly set forth herein.

80.    Factory is a Virginia corporation operating four specialty restaurants in Virginia since 1990.

81.    Factory has a proprietary right in the recipes and formulas for the Secret Sauces as used by Factory, which differ from the sauces generally available to the public.

82.    Saleem started working for Factory in 1996 and worked for Factory without interruption until on or about June 15, 2004.

83.    Naeem started working for Factory in approximately1996 and worked for Factory sporadically during the same period as Saleem.

84. Saleem and Naeem both had access to confidential sales information, sales and marketing methods and various trade secrets including the confidential recipes for and ingredients of the signature Buffalo Wing Factory Sauces.

85. On or about September 1, 2005 Saleem and Naeem opened Charbroil.

86. Defendants opened Charbroil with the intent of misappropriating Factory's trade secrets and confidential and proprietary information and of exploiting them for Defendants' own benefit without Factory's authorization.

87. Factory's general manager of the Sterling restaurant was hired away by Charbroil as a general manager to further misappropriate and exploit Factory's trade secrets and confidential and proprietary business information.

88. Charbroil has since hired and attempted to hire a number of other Factory employees to further misappropriate and exploit Factory's trade secrets and confidential and proprietary business information..

89. Charbroil lists 30 sauces on its menu, of which 20 are unique, proprietary, non-generic sauces, the creation and ingredients of which constitute trade secrets and confidential and proprietary business information of Factory (hereinafter the "Secret Sauces").

90. The recipes and ingredients for the Secret Sauces in their specific form, as used by Factory, and as stolen by Saleem, Naeem and Charbroil, are not generally known to the public, nor are they readily ascertainable by proper methods.

91. The ingredients and methods for the creation of such Secret Sauces became known to Saleem and Naeem while in the employ of Factory, at which time they knew or had reason to know that their knowledge of Factory's trade secrets was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

92. The ingredients to and recipes for Factory's Secret Sauces were made known to Saleem and Naeem while they were in the employ of Factory, at which time they knew, or had reason to know, that their knowledge of Factory's trade secrets was derived from or through a person who owed a duty to Factory to maintain their secrecy and limit their use.

93. Alternatively, the ingredients of and recipes for Secret Sauces became known to Saleem and Naeem while they were employed by Factory, at which time they knew, or had reason to know, that their knowledge of Factory's trade secrets was acquired by accident or mistake.

94. Factory used reasonable efforts to maintain the confidentiality of its trade secrets and confidential and propriety information, including without limitation its recipes for and ingredients to the Secret Sauces. Factory made it known to Saleem and Naeem that such sauces were trade secrets at the time of their respective employment by Factory.

95. The recipes for and ingredients to the Secret Sauces are proprietary trade secrets of Factory which give Factory a competitive advantage over competing businesses which do not know and use them.

96. The Secret Sauces provide the unique flavor to Factory's buffalo wings and have contributed substantially Factory's commercial success.

97. The Secret Sauces make Factory's wings unique in the market and generate additional sales and consumer demand for them.

98. Saleem and Naeem were informed and knew that the Secret Sauces contributed substantially to Factory's success.

99. Defendant Charbroil knowingly permitted, authorized, ratified, and conspired in Saleem's and Naeem's tortious breaches of their fiduciary duties to Factory.

100.  Defendants Saleem, Naeem and Charbroil jointly and severally have willfully and maliciously misappropriated the Factory's Secret Sauces, and their ingredients and recipes, in violation of the Uniform Trade Secrets Act, VA. CODE § 59.1-336 et. seq. (2005).

101.  Misappropriation of the Secret Sauces was committed by the Defendants Saleem, Naeem and Charbroil without the express or implied consent of Factory, the owner of the trade secrets.

102.  Plaintiff has suffered financial loss as a result of Defendants' misappropriation of Factory's trade secrets and confidential and proprietary business information.

103.  As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

104.  Factory has suffered irreparable harm from the use and disclosure of its trade secrets and confidential and proprietary business information by competitors who do not appropriately limits their use and disclosure.

105. Defendants' misappropriation of Factory's trade secrets has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law. Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' misappropriation of Factory's trade secrets, pursuant to Va. Code § 59.1-337.

106. Defendants' misappropriation of Factory's trade secrets has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants, pursuant to Va. Code § 59.1-338.  In any event, Factory is entitled to recover at least a reasonable royalty for Defendants' misappropriation and unauthorized use of Factory's trade secrets.

107.  Defendants' misappropriation of Factory's trade secrets has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to misappropriate, imitate and copy Plaintiff's business. Defendants have misappropriated Factory's trade secrets willfully and intentionally, and with a reckless disregard for Plaintiff's rights.   Therefore, Factory is entitled to recover its attorneys' fees and litigation expenses, pursuant to Va. Code § 59.1-338.1, and to recover punitive damages from each Defendant in the amount of $350,000.00, pursuant to Va. Code § 59.1-338.

## COUNT IV
## TORTIOUS BREACH OF FIDUCIARY DUTY

108.  Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 107 to this Complaint as though expressly set forth herein.

109.  Factory has a proprietary right in the confidential recipes and formulas for the Secret Sauces as used by Factory, which differ from the sauces generally available to the public.

110.  The recipes for and ingredients to Factory's Secret Sauces became known to Saleem and Naeem while they were employed by Factory, at which time they knew or had reason to know that their knowledge of Factory's confidential and proprietary business information was acquired under circumstances giving rise to a duty to maintain its secrecy and limit its use.

111.  During and after the term of their prior employment with Factory, Saleem and Naeem owed Plaintiff fiduciary duties not to use Factory's confidential and proprietary business information in competition with Factory.

112.  Saleem and Naeem both had access to confidential sales information, sales and marketing methods, and other  confidential and proprietary information of Factory,  including the confidential recipes for and ingredients of the signature Buffalo Wing Factory Secret Sauces.

19

113.  During and after the terms of their employment with Factory, Saleem and Naeem planned and intended to misappropriate Factory's confidential and proprietary business information in competition with Factory.

114.  Defendant Charbroil knowingly permitted, authorized, ratified, and conspired in Saleem's and Naeem's tortious breaches of their fiduciary duties to Factory.

115.  Defendants opened Charbroil with the intent to misappropriate Factory's confidential and proprietary information and to exploit it for Defendants' own benefit in competition with Factory.

116.  Factory's general manager of the Sterling restaurant was hired away by Charbroil as a general manager to further misappropriate and exploit Factory's confidential and proprietary business information.

117.  Charbroil has since hired and attempted to hire a number of other Factory employees to further misappropriate and exploit Factory's confidential and proprietary business information.

118.  Factory used reasonable efforts to maintain the confidentiality of its confidential and propriety business information, including without limitation its recipes for and ingredients to the Secret Sauces.  Factory made it known to Saleem and Naeem that this information was confidential at the time of their respective employment by Factory.

119.  Saleem and Naeem were informed and knew that the Secret Sauces were confidential and proprietary business information of Factory which contributed substantially to Factory's success.

120.  Defendants Saleem, Naeem and Charbroil jointly and severally have willfully and maliciously misappropriated the Factory's Secret Sauces, and their ingredients and recipes, in tortious breach of Saleem's and Naeem's fiduciary duties to Factory.

121.  Misappropriation of the Secret Sauces was committed by the Defendants without the express or implied consent of Factory.

122.  Plaintiff has suffered financial loss as a result of Defendants' misappropriation of Factory's confidential and proprietary business information.

123.  As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

124.  Factory has suffered irreparable harm from the use and disclosure of its confidential and proprietary business information by competitors who do not appropriately limit its use and disclosure.

125.  Defendants' misappropriation of Factory's confidential and proprietary business information has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' tortious breaches of their fiduciary duties to Factory.

126.  Defendants' tortious breaches of their fiduciary duties to Factory has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

127.  Defendants' tortious breaches of their fiduciary duties to Factory have been willful and intentional, and were committed by Defendants as part of their overall plot and conspiracy to imitate and copy Plaintiff's business.  Defendants have misappropriated Factory's confidential

21

and proprietary business information willfully and intentionally, and with a reckless disregard for Plaintiff's rights.    Therefore, Factory is entitled to recover punitive damages from each Defendant in the amount of $350,000.00.

**COUNT V**
**UNFAIR COMPETITION**

128.  Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 127 to this Complaint as though expressly set forth herein.

129.  Charbroil has made statements to a number of Factory employees, third party vendors, and Factory customers that Charbroil is the same restaurant as Factory.

130.  Defendants have knowingly, willfully and intentionally attempted to pass off Charbroil and its products, services and facilities and Factory and its products, services and facilities.

131.  Defendants' passing off has had the purpose and effect of confusing and deceiving customers and third parties into believing that Charbroil and its products, services and facilities are the same as, or are affiliated with, Factory and its products, services and facilities.

132.  Defendants have unfairly competed against Factory and have willfully and maliciously deceived consumers by claiming its product "buffalo wings" sold at "Buffalo Wing House" are the same as those sold by Factory, and by using a substantially similar menu and trade name, and through use of the Secret Sauces as a marketing tool to obtain business.

133.  Defendants have unfairly competed against Factory by soliciting, raiding and hiring Factory employees for the purpose of obtaining Factory's trade secrets and confidential and proprietary business information, and for the purpose of making Charbroil appear to be the same business as, or to be sponsored by or affiliated with, Factory.

22

134.  Charbroil's unfair competition and passing off has caused confusion, mistake, or deception which has damaged the Plaintiff and – unless it is enjoined -- will continue to damage the Plaintiff in the future.

135.  Plaintiff has suffered financial loss as a result of Defendants' unfair competition.

136.  As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

137.  Factory has suffered irreparable harm from the loss of control over its own name, trademarks and reputation due to Defendants' passing off, and from the use and disclosure of Factory's confidential and proprietary business information by competitors who do not appropriately limit its disclosure and use.

138.  Defendants' unfair competition has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' unfair competition against Factory.

139.  Defendants' unfair competition has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

140.  Defendants' unfair competition has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to misappropriate, imitate and copy Plaintiff's business and to pass themselves off as Plaintiff.  Defendants have unfairly competed against Factory willfully and intentionally, and with a reckless disregard for Plaintiff's rights.

Therefore, Factory is entitled to recover punitive damages from each Defendant in the amount of $350,000.00.

## COUNT VI
## VIOLATION OF BUSINESS CONSPIRACY ACT: VA. CODE 18.2-500 et seq.

141.  Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 140 to this Complaint as though expressly set forth herein.

142.  Since before Charbroil was formed and before Saleem stopped working for Factory, Defendants knowingly and intentionally have conspired among themselves to pass themselves off as Factory, to infringe Factory's trademarks, to misappropriate Factory's trade secrets and confidential business information, to breach their fiduciary duties to Factory, and to recruit and solicit Factory's employees for those purposes.

143.  Defendants have made statements to Factory employees, third party vendors, and Factory customers that Charbroil is the same restaurant as Factory.

144.  Defendants have acted in concert, agreed, associated, mutually undertook and/or combined together, and with other former Factory employees, to injure Factory's business by misappropriating its trade secrets and proprietary business information, infringing Factory's trademarks, passing themselves off as Factory, and damaging the goodwill cultivated by Factory in the marketplace.

145.  Conspirators Saleem and Naeem further specifically conspired with one another, while in the employ of Factory, prior to the formation of Charbroil, and/or before their subsequent employment at Charbroil, to injure Factory's business by misappropriating Factory's trade secrets and proprietary business information, infringing Factory's trademarks, passing themselves off as Factory, and making unauthorized use of Factory's trade name, by opening a

24

competing restaurant using virtually the same name as Factory, as well as by using the same Secret Sauces and a virtually identical menu to intentionally cause confusion in the market.

146.  Defendants conspired to injure Factory's business intentionally, purposefully, willfully, maliciously, and without lawful justification, in violation of Va. Code §§ 18.2-499 and 18.2-500.

147.   Defendants' unlawful business conspiracy has caused confusion, mistake, or deception which has damaged the Plaintiff and – unless it is enjoined -- will continue to damage the Plaintiff in the future.

148.  Plaintiff has suffered financial loss as a result of Defendants' unlawful business conspiracy.

149.  As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

150.  Factory has suffered irreparable harm for which there is no adequate remedy at law from the loss of control over its own name, trademarks and reputation due to Defendants' passing off, and from the use and disclosure of Factory's confidential and proprietary business information by competitors who do not appropriately limit its disclosure and use.

151. Defendants' unlawful business conspiracy has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' unlawful business conspiracy against Factory.

25

152. Defendants' unlawful business conspiracy has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

153. Defendants' unlawful business conspiracy has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to misappropriate, imitate and copy Plaintiff's business and to pass themselves off as Plaintiff. Defendants have unlawfully conspired against Factory willfully and intentionally, and with a reckless disregard for Plaintiff's rights. Therefore, Factory is entitled to recover from each Defendant, jointly and severally, treble damages, attorneys' fees, and litigation costs and expenses.

### COUNT VII
### TORTIOUS INTERFERENCE WITH ACTUAL AND PROSPECTIVE CONTRACTS AND BUSINESS RELATIONSHIPS

154. Factory incorporates by reference the averments and allegations stated in Paragraphs 1 through 153 to this Complaint as though expressly set forth herein.

155. With prior knowledge of Saleem's and Naeem's employment contracts and relationships with Factory, and of the fiduciary duties which they owed to Factory, Defendants knowingly and intentionally have conspired among themselves to pass themselves off as Factory, to infringe Factory's trademarks, to misappropriate Factory's trade secrets and confidential business information, to breach their fiduciary duties to Factory, and to recruit and solicit Factory's employees for those purposes.

156. Defendants wrongfully and improperly induced Saleem and Naeem to breach and terminate their employment relationships and contracts with Factory, and to breach their

26

fiduciary duties to Factory, for the foregoing improper purposes, resulting in substantial damages to Plaintiff.

157.  With prior knowledge of other employees' employment contracts and relationships with Factory, and of the fiduciary duties which they owed to Factory, Defendants knowingly and intentionally have conspired among themselves to pass themselves off as Factory, to infringe Factory's trademarks, to misappropriate Factory's trade secrets and confidential business information, to breach their fiduciary duties to Factory, and to recruit and solicit Factory's employees for those purposes.

158.  Defendants wrongfully and improperly induced other former Factory employees to breach and terminate their employment relationships and contracts with Factory, and to breach their fiduciary duties to Factory, for the foregoing improper purposes, resulting in substantial damages to Plaintiff.

159.  With prior knowledge of Factory's actual and prospective relationships with buffalo wing aficionados and particular consumers in the Dulles Corridor, Defendants knowingly and intentionally have conspired among themselves and with other former Factory employees to pass themselves off as Factory, to infringe Factory's trademarks, to misappropriate Factory's trade secrets and confidential business information, to breach their fiduciary duties to Factory, and to recruit and solicit Factory's employees, all for the purpose of capturing and interfering with Factory's actual and prospective business relationships with its customers.

160.  Defendants wrongfully and improperly induced those customers to patronize Charbroil rather than Factory, causing significant injury to Factory and diminishing its sales.

161. Defendants established Charbroil with the purpose and effect of improperly taking unfair advantage of Factory's relationships with its customers by causing intentional confusion among the consuming public.

162. Defendants have consciously made false statements to Factory customers that "Buffalo Wings House" is the same business or restaurant as Factory with the purpose and effect of improperly interfering with Factory's business relations with customers, thereby damaging the Plaintiff in its business.

163. But for Defendants' wrongful and tortious interference, there is a reasonable probability that Factory would have maintained beneficial business and employment relationships with the relevant employees and actual and prospective customers. This is demonstrated in part by Charbroil's successful sales of the food products and services in the Northern Virginia that were copied from, and which are similar to, Factory's products and services.

164. Defendants tortiously interfered with Plaintiff's actual and prospective business relationships through means which are both unethical and independently tortious and unlawful, as described in the foregoing Counts I through VI.

165. Defendants intended to interfere with Factory's actual and prospective business relationships in order to secure the profits of those relationships for themselves.

166. It is reasonably certain that Factory would have realized and continued to benefit from these actual and prospective business relationships, and that they would have continued, in the absence of Defendants' unlawful and improper interference.

167. Defendants' interference was not justified, privileged or proper. They engaged in unfair competition and unethical conduct.

28

168.  Defendants' tortious interference has caused confusion, mistake, or deception which has damaged the Plaintiff and—unless it is enjoined—will continue to damage the Plaintiff in the future.

169.  Plaintiff has suffered financial loss as a result of Defendants' tortious interference.

170.  As a result of Defendants' wrongful actions complained of herein, Factory has suffered more than $500,000 in annual revenue losses to date.

171.  Factory has suffered irreparable harm from the loss of control over its own name, trademarks and reputation due to Defendants' passing off, and from the use and disclosure of Factory's confidential and proprietary business information by competitors who do not appropriately limit its disclosure and use.

172.  Defendants' tortious interference has proximately caused Factory irreparable harm and injury and, unless it is enjoined by this Court, will continue to cause Factory irreparable harm and injury, for which there is no adequate remedy at law.  Therefore, Factory is entitled to preliminary and permanent injunctive relief against Defendants' tortious interference.

173.  Defendants' tortious interference has proximately caused Factory to lose sales, revenues and profits, and has caused Defendants to gain wrongful sales, revenues and profits, all of which Factory is entitled to recover from Defendants.

174.  Defendants' tortious interference has been willful and intentional, and was committed by Defendants as part of their overall plot and conspiracy to imitate and copy Plaintiff's business and to pass themselves off as Plaintiff.  Defendants have committed tortious interference against Factory willfully and intentionally, and with a reckless disregard for Plaintiff's rights.  Therefore, Factory is entitled to recover from each Defendant, jointly and severally, punitive damages up to $350,000.

29

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff demands judgment against Defendants Saleem, Naeem and Charbroil, jointly and severally for:  actual compensatory damages, recovery of Defendants' wrongful profits, treble damages, punitive and exemplary damages, and attorneys' fees and litigation costs and expenses.

Plaintiff further seeks injunctive relief against Defendants' unlawful trademark infringement, passing off, false advertising, false claims of sponsorship and affiliation, false designation of origin, unfair competition, misappropriation of Plaintiff's trade secrets and confidential and proprietary business information, and tortious interference with customer and employee contracts and relationships.  Plaintiff also seeks an order requiring all Defendants to destroy all materials bearing the infringing and confusingly similar mark "Buffalo Wings House" and all confusingly similar menus and sauces.

Plaintiff further seeks recovery of its attorneys' fees and litigation costs and expenses, and such additional or alternative relief as the interests of justice may require or which the Court deems just and proper.

Dated This 15th Day of October, 2007        Respectfully Submitted,

BUFFALO WINGS FACTORY, INC.
By Counsel

/s/ Thomas M. Dunlap
Thomas M. Dunlap (VSB #44016)
Michael C. Whitticar (VSB# 32968)
Eugene W. Policastri (VSB #65837)
DUNLAP, GRUBB & WEAVER, P.C.
199 Liberty Street, SW
Leesburg, Virginia 20175
(703) 777-7319
(703) 777-3656 (fax)
tdunlap@dglegal.com
Counsel for the Plaintiff

30

## CERTIFICATE OF SERVICE

I hereby certify that on this 15th Day of October, 2007, a true and correct copy of the

foregoing Amended Complaint was filed and served through the Clerk of Court pursuant to the

Court's electronic filing procedures using the Court's CM/ECF system, which will then send a

notice of electronic filing (NEF) to the following counsel of record for the defendants:

Martin Mooradian, Esq.
7700 Little River Turnpike
Annandale, Virginia 22003
(703) 256-6200
(703) 256-4851 (fax)
mmooradian@cox.net
Counsel For Defendants

/s/        Thomas M. Dunlap
Thomas M. Dunlap (VSB #44016)
Michael C. Whitticar (VSB# 32968)
Eugene W. Policastri (VSB #65837)
DUNLAP, GRUBB & WEAVER, P.C.
199 Liberty Street, SW
Leesburg, Virginia 20175
703-777-7319
703-777-3656 (fax)
tdunlap@dglegal.com
Counsel for the Plaintiff

31