IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
BUFFALO WINGS FACTORY, INC.,   )
                               )
      Plaintiff,               )
                               )
          v.                   )     1:07cv612 (JCC)
                               )
SALEEM MOHD, et al.,           )
                               )
      Defendants.              )
```

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants Saleem Mohd, Naeem Mohd, and Charbroil Grill of Worldgate, Inc.'s 12(b)(6) Motion to Dismiss Plaintiff Buffalo Wings Factory, Inc.'s First Amended Complaint and Plaintiff's Motion to Strike Defendants' Memorandum in Support of [Their] Rule 12(b)(6) Motion to Dismiss. For the following reasons, the Court will deny Defendants' Motion and deny Plaintiff's Motion.

**I. Background**

The facts as alleged in the First Amended Complaint are as follows. Since 1990, Buffalo Wings Factory, Inc. ("Plaintiff"), a Virginia corporation, has operated four restaurants in Sterling, Ashburn, Chantilly, and Reston, Virginia, that specialize in the sale and marketing of "buffalo wings." Plaintiff obtained a valid and existing trademark

1

registration for the mark "Buffalo Wings Factory"[1] (the "Factory Mark") with a valid registration date of January 30, 2001. Plaintiff has spent approximately $80,000 per year since 2000 advertising their restaurants and the Factory Mark in local newspapers, print advertising, and on local radio stations, which has helped the restaurants and the Factory Mark achieve critical acclaim and popularity.  This advertising and critical acclaim has helped Plaintiff generate a customer base that extends into West Virginia and Maryland and sales revenues equaling $5-6 million per year.

Defendant Saleem Mohd ("Saleem"), a Virginia resident, began working for Plaintiff in 1996, and worked there continuously until about June 15, 2004.  Defendant Naeem Mohd ("Naeem"), also a Virginia resident, began working for Plaintiff around 1996, and worked there sporadically during the same period as Saleem.  On or about September 1, 2005, Saleem and Naeem opened a restaurant in Herndon, Virginia that does business under the name "Buffalo Wing House."  Since its opening, Saleem and Naeem have acted as employees, owners, and operators of this restaurant.  Defendant Charbroil Grill of Worldgate, Inc.

---

[1] According to the Virginia State Corporation Commission Division of Securities & Retail Franchising's website, Plaintiff's valid and existing trademark is actually "Buffalo Wings Factory" rather than "Buffalo Wing Factory" as Plaintiff claims in its First Amended Complaint.  Defendants attach to their Motion to Dismiss a printout of this information from the State Corporation Commission's website.  *See* Ex. A to Defs.' Mot. to Dismiss.

("Charbroil") also co-owns the restaurant, with Sudha Chopra ("Chopra") serving as its president and Saleem as its secretary.

In addition to the similarities between the names "Buffalo Wing House" and "Buffalo Wings Factory," Saleem, Naeem and Charbroil (collectively, "Defendants") have also used similar slogans and advertising channels as Plaintiff.  Plaintiff has used the slogan "Buffalo Wing Factory - Home of the Flatliner" in its newspaper and print advertising and on its menus, while Defendants have used "Buffalo Wings House – House of the Inferno"[2] in the same types of newspaper and print advertising and on its menus.  Defendants' first menu was substantially similar to Plaintiff's with respect to layout, daily specials, and sauces.  In regards to these sauces, the creation and ingredients of twenty of Defendants' thirty sauces are Plaintiff's trade secrets that were unlawfully taken from Plaintiff and copied by Saleem and Naeem for use in Defendants' restaurant.  Furthermore, Plaintiff's and Defendants' facilities share numerous similarities: both are in the Dulles Corridor, both are located in strip malls, both are casual dining restaurants with sports themes, large televisions, bars and sit-

---

[2] While Plaintiff states that Defendants' slogan is "Buffalo Wings House - Home of the Inferno," a copy of Defendants' menu, attached as Exhibit C to Defendants' Memorandum in support of their motion to dismiss, indicates that the proper name is "Buffalo Wings House – House of the Inferno."  *See* Ex. C to Defs.' Mot. to Dismiss.

down dining areas, and both have similar furniture, color-schemes, and neon signs.

Plaintiff alleges that these numerous similarities – adopted wilfully and intentionally by Defendants – have caused substantial and continuous customer confusion.  Plaintiffs cite several examples to support this claim, including: (1) customer statements to Plaintiff's employees regarding Plaintiff's Herndon restaurant – even though it is Defendants, not Plaintiff, who have a restaurant in Herndon; (2) questions from customers to Plaintiff's restaurants regarding promotions being run by Defendants' restaurant; (3) attempts by customers to use Defendants' coupons at Plaintiff's restaurants; and (4) confusion between Defendants' restaurant and Plaintiff's restaurants on the part of Defendants' produce vendors and paper goods and supplies vendors, as well as the Miller beer distributor for Fairfax County.  Plaintiff also argues that Defendants themselves have intentionally furthered this confusion by telling Plaintiff's customers, third party vendors, and Plaintiff's employees that Defendants' restaurant is the same as Plaintiff's.

Defendants have hired several of Plaintiff's former employees, including Matt Mosher ("Mosher"), the former general manager of one of Plaintiff's restaurants, to work at Defendants' restaurant.  According to Plaintiff, Defendants hired these individuals with the intent to take Plaintiff's confidential

4

information and misappropriate it as their own and to confuse customers.

On June 22, 2007, Plaintiff filed a Complaint against Defendants, alleging: (1) false advertising and false designation of origin in violation of the Lanham Act; (2) trademark infringement under Va. Code § 59.1-92.1; (3) misappropriation of trade secrets; (4) tortious breach of fiduciary duty; (5) unfair competition; (6) violation of Business Conspiracy Act under Va. Code §§ 18.2-500 *et seq.*; and (7) tortious interference with actual and prospective contracts and business relationships. Defendants moved to dismiss the Complaint on July 20, 2007. Plaintiff responded with a Motion to Strike Defendants' Motion to Dismiss, filed on August 21, 2007, and two supplemental Motions for Sanctions, filed on August 30, 2007 and September 5, 2007. On October 1, 2007, Judge Gerald Bruce Lee of this Court denied Plaintiff's Motions and granted Defendants' Motion to Dismiss as to Count I, Plaintiff's Lanham Act claim, on the ground that Plaintiff did not plead a set of facts supporting its allegation that Defendants' use of the "Buffalo Wing House" mark was likely to confuse consumers.  Judge Lee then granted Plaintiff leave to amend their Complaint.

On October 15, 2007, Plaintiff filed the First Amended Complaint, alleging the same claims as the original Complaint, but with additional factual allegations.  Defendants filed their

5

12(b)(6) Motion to Dismiss the First Amended Complaint on October
25, 2007.  Plaintiff responded on November 8, 2007 with their
Motion to Strike Defendants' Memorandum in Support of [Their]
Rule 12(b)(6) Motion to Dismiss.  These matters are currently
before the Court.

## II.  Standard of Review

A Rule 12(b)(6) motion to dismiss tests the legal
sufficiency of the complaint, *see Randall v. United States*, 30
F.3d 518, 522 (4th Cir. 1994), and should be denied unless "it
appears beyond doubt that the plaintiff can prove no set of facts
in support of his claim which would entitle him to relief."  *De
Sole v. United States*, 947 F.2d 1169, 1177 (4th Cir. 1991)
(citations omitted); *see also Conley v. Gibson*, 355 U.S. 41, 45-
46 (1957).

In passing on a motion to dismiss, "the material
allegations of the complaint are taken as admitted."  *Jenkins v.
McKeithen*, 395 U.S. 411, 421 (1969) (citations omitted).
Moreover, "the complaint is to be liberally construed in favor of
plaintiff."  *Id.*  In addition, a motion to dismiss must be
assessed in light of Rule 8's liberal pleading standards, which
require only "a short and plain statement of the claim showing
that the pleader is entitled to relief."  Fed. R. Civ. P. 8.
However, while Rule 8 does not require "detailed factual
allegations," a plaintiff must still provide "more than labels

6

and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S. Ct. 1955, 1964-65 (2007) (citation omitted).

### III. Analysis

Defendants argue that Counts I, II, VI, and VII of Plaintiff's First Amended Complaint should be dismissed under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief may be granted.  Defendants further argue that, because Count I is the only count that raises a federal question, and because the parties are not diverse, if Count I is dismissed then the Court should decline to retain jurisdiction over the remaining state claims and dismiss the First Amended Complaint in its entirety.  Plaintiff argues that Defendants' Memorandum in support of their motion to dismiss should be struck because Defendants have improperly interjected into their brief allegations that have not been pled in either the original Complaint or the First Amended Complaint.  The Court will address Plaintiff's motion before turning to Defendants' motion.

### A. Plaintiff's Motion to Strike

Plaintiff contends that pages 1 through 2 of Defendants' Memorandum in support of their motion to dismiss contain "extraneous allegations of fact that have not been pled and which are disputed and inaccurate."  Pl.'s Mot. to Strike at 2.  Specifically, Plaintiff points to Defendants' reference to

loans and prior collection litigation between the parties as irrelevant, immaterial, and going beyond the scope of both the Complaint and the First Amended Complaint. *Id.* at 2.  Plaintiff also alleges that Defendants' recitation of the facts with respect to the prior state court litigation between the parties is factually incorrect. *Id.* at 3.

The Court finds that the remedy of striking Defendants' Memorandum for including allegedly improper and incorrect factual allegations is not appropriate.  Instead, to the extent that Defendants have alleged facts that go beyond the scope of those pled in the Complaint or the First Amended Complaint, the Court will not consider them in adjudicating Defendants' Motion to Dismiss.  Thus, the Court will deny Plaintiff's Motion to Strike.

## B. Defendants' Motion to Dismiss

Defendants move to dismiss Counts I, II, VI, and VII for failure to state a claim, and the remainder of the counts for lack of jurisdiction.  The Court will address each count in turn.

### 1) Count I: Violation of the Lanham Act

In Count I, Plaintiff alleges that Defendants have engaged in false advertising, false claims of sponsorship and affiliation, and false designation of origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).  Pl.'s First Am. Compl. at ¶ 61.  Defendants argue that Count I should be dismissed on the grounds that (1) Plaintiff has not pled facts that support its allegation that Defendants' use of the "Buffalo

Wing House" mark is likely to confuse consumers because Plaintiff does business under the mark "Buffalo Wing Factory & Pub – Home of the Flatliner," not the Factory Mark, and thus consumers could not possibly confuse the Factory Mark with Defendants' mark, and (2) the Factory Mark is generic and thus is not protected under the Lanham Act.  Defs.' Mot. to Dismiss at 3-7.[3]

Section 43(a) of the Lanham Act establishes civil liability for:

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which – (A) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities.

15 U.S.C. § 1125(a).  Broadly speaking, the Lanham Act's dual purpose is to protect consumers "from being misled by the use of infringing marks" and to protect producers "from unfair practices

---

[3] It should be mentioned that, according to their Memorandum in support of their motion to dismiss, Defendants appear to construe Plaintiff's Lanham Act claim more narrowly than it is actually pled.  Defendants state that the allegations that Saleem and Naeem acted in violation of 15 U.S.C. § 1125(a) "arise out of [the] alleged use of a confusingly similar mark to Plaintiff's mark."  Defs.' Mot. to Dismiss at 3.  Plaintiff's claim, however, is not limited to the similarities in the parties' marks.  Rather, it extends to Defendants' alleged misconduct in copying Plaintiff's slogan, advertising, menu, and product offerings, and in misrepresenting to others that Defendants' restaurant is the same as Plaintiff's restaurants.  See Pl.'s First Am. Compl. at ¶¶ 60-67.

by an imitating competitor." *Moseley v. V Secret Catalogue, Inc.*, 537 U.S. 418, 428 (2003)(internal quotations omitted).  In addition, the Act has been construed to protect against trademark infringement even if the mark is not federally registered. *Perini Corp. v. Perini Const., Inc.*, 915 F.2d 121, 124 (4th Cir. 1990).

To recover under the Act, a plaintiff must first show that a particular mark is eligible for protection.  Eligibility "depends upon the market's association between the particular mark and the goods or the business, which in turn depends upon the degree of the mark's peculiarity." *Perini*, 915 F.2d at 124. A mark may be either (1) generic, (2) descriptive, (3) suggestive, or (4) arbitrary or fanciful. *Ale House Management, Inc. v. Raleigh Ale House, Inc.*, 205 F.3d 137, 140 (4th Cir. 2000).  If a mark is generic – it refers to the "genus or class of which a particular product is a member" – it is ineligible for trademark protection.  *Id.*  If a mark is merely descriptive – it describes a characteristic of the product – then it is eligible for protection only if it has acquired a "secondary meaning" in the marketplace. *Ashley Furniture Industries, Inc. v. SanGiacomo N.A. Ltd.*, 187 F.3d 363, 369 (4th Cir. 1999).  For a mark to have a secondary meaning, consumers must have an "understanding that the mark, when used in context, refers not to what the descriptive word ordinarily describes, but to the particular business that the mark is meant to identify." *Perini*, 915 F.2d

10

at 124-25.  In contrast to generic or descriptive marks, suggestive, arbitrary, or fanciful marks, whose "intrinsic nature[s] . . . serve[] to identify a particular source of a product," are "inherently distinctive" and thus eligible for protection.  *Ashley Furniture*, 187 F.3d at 369.

If a particular mark is eligible for protection under the Lanham Act, the ultimate question is whether there is a "likelihood of confusion" among consumers as to the source of the goods, services, or commercial activities in question.  *Sara Lee Corp. v. Kayser-Roth Corp.*, 81 F.3d 455, 463 (4th Cir. 1996); *Perini*, 915 F.2d at 124.  To determine whether there is a likelihood of confusion, courts generally consider a number of factors, including: (1) the distinctiveness of the senior mark; (2) the similarity of the two marks; (3) the similarity of the goods/services the marks identify; (4) the similarity of the facilities the two parties use in their businesses; (5) the similarity of the advertising used by the two parties; (6) the defendant's intent; and (7) actual confusion.  *Pizzeria Uno Corp. v. Temple*, 747 F.2d 1522, 1527 (4th Cir. 1984).  Not all of these factors must be proven, however, in order to show likelihood of confusion.  *Sara Lee*, 81 F.3d at 455.

Considering Defendants' second ground for dismissal first, the question of whether the Factory Mark is generic and thus ineligible for protection under the Lanham Act must be answered by applying the anti-dissection rule, which states that

11

a mark must be evaluated "as a whole" and in its "commercial context." *Worsham Sprinkler Co., Inc. v. Wes Worsham Fire Protection, LLC*, 419 F. Supp. 2d 861, 877 (E.D. Va. 2006). Defendants argue that Plaintiff has simply combined the generic term "Buffalo Wings" with the generic term "Factory," and thus cannot receive trademark protection.  Defs.' Mot. to Dismiss at 6-7 (citing *Ale House*, 205 F.3d at 141).  While "Buffalo Wings" may refer to a generic food item, Defendants make no argument demonstrating that "Buffalo Wings Factory," as a whole, is either generic or descriptive.  By contrast, in *Ale House* the Court noted that the defendant provided "extensive evidence, including citations to newspapers, dictionaries, books, and other publications" demonstrating that the term "ale house" was a generic term.  205 F.3d at 141.

Plaintiff contends that "Buffalo Wings Factory" is not generic because the word "factory" connotes warehouses, industrial parks, and heavy machinery, and that, as a result, the use of the word "factory" as applied to a restaurant is distinctive.  Pl.'s Opp'n at 13 n.5.  The Court finds that Plaintiff has pled sufficient facts to show that "Buffalo Wings Factory" is not, as a whole and in its commercial context, a generic term.  As to whether it is suggestive rather than descriptive, the distinction between the two categories is difficult to draw.  Generally, "if the mark imparts information directly, it is descriptive.  If it stands for an idea which

12

requires some operation of the imagination to connect it with the goods, it is suggestive." *Pizzeria Uno*, 747 F.2d at 1528 (quoting *Union Carbide Corp. v. Ever-Ready, Inc.*, 531 F.2d 366, 379 (7th Cir. 1976)).  To the extent that the Factory Mark can be considered merely descriptive, however, the Court finds that Plaintiff has pled sufficient facts to show that the Factory Mark has developed sufficient secondary meaning to be eligible for trademark protection.  Specifically, the fact that the similarities between the Factory Mark and Defendants' mark have caused numerous customers to mistake Plaintiff's restaurants for Defendants' restaurant indicates that "Buffalo Wings Factory" evokes the idea of a particular restaurant: Plaintiff's.  *See* Pl.'s First Am. Compl. at ¶¶ 29-40.

Defendants also claim that because Plaintiff has been operating as "Buffalo Wing Factory & Pub – Home of the Flatliner," rather than under the Factory Mark, Defendants' use of "Buffalo Wing House" does not create any likelihood of confusion.  In response, Plaintiff notes that while it uses the "Buffalo Wing Factory & Pub – Home of the Flatliner" slogan on a menu and some of its advertising, it also uses "Buffalo Wings Factory" alone on signs and in other advertising and promotional materials.  Pl.'s Opp'n at 4 n.1; *see also* Pls.' First Am. Compl. at ¶¶ 17-19, 22-23.  Thus, Defendants' assertion that the public could not be confused by any similarity between the Factory Mark

13

and "Buffalo Wing House" because the public could not even identify Plaintiff with the Factory Mark is meritless.

Moreover, the Court finds that Plaintiff has sufficiently pled facts to state a claim for likelihood of confusion under the multi-factor test delineated in *Pizzeria Uno*. *See* Pl.'s First Am. Compl. at ¶¶ 17-40.  Most significantly, Plaintiff has pled substantial evidence of actual confusion which, while not necessary, is "patently the best evidence of a likelihood of confusion."  *X-IT Products, L.L.C. v. Walter Kidde Portable Equipment, Inc.*, 155 F. Supp. 2d 577, 623 (E.D. Va. 2001)(citing *Black & Decker v. Pro-Tech Power Inc.*, 26 F. Supp. 2d 834, 852 (E.D. Va. 1998)).  Even if Plaintiff had not sufficiently pled likelihood of confusion, literally false statements are actionable as false advertising under Section 43(a)(1) of the Lanham Act.  *Scotts Co. v. United Industries Corp.*, 315 F.3d 264, 273 (4th Cir. 2002)("Where the advertisement is literally false, a violation may be established without evidence of consumer deception."); *C.B. Fleet Co., Inc. v. SmithKline Beecham Consumer Healthcare, L.P.*, 131 F.3d 430, 434 (4th Cir. 1997)("If the advertising claim is literally false, the court may enjoin the use of the claim without reference to the advertisement's impact on the buying public.").  Plaintiff's First Amended Complaint makes several allegations that Defendants have been deliberately informing Plaintiff's customers and employees, as well as third party vendors, that Buffalo Wings

14

House is the same restaurant as Plaintiff's.  *See* Pl.'s First Am.
Compl. at ¶¶ 28, 48, 56, 62.

Defendants make the additional argument that all of the
allegations in Plaintiff's First Amended Complaint are
attributable to Charbroil, not to Saleem and Naeem as individual
Defendants, and that Count I therefore should be dismissed
against them.  Defs.' Mot. to Dismiss at 7.  As a general matter,
"[a] corporate official may be held personally liable for
tortious conduct committed by him, though committed primarily for
the benefit of the corporation."  *Polo Fashions, Inc. v. Craftex,
Inc.*, 816 F.2d 145, 149 (4th Cir. 1987).  Applied here, Plaintiff
has alleged that Saleem and Naeem were former employees of
Plaintiff who personally participated in, and conspired to,
establish Charbroil for the purposes of copying Plaintiff's
business and luring away Plaintiff's employees, and who
deliberately misled customers regarding the relationship between
Defendants' restaurant and Plaintiff's restaurants.  *See* Pl.'s
First Am. Compl. at ¶¶ 13-16, 27-28, 43-48, 56, 62.  Thus,
because Plaintiff has sufficiently pled that Saleem and Naeem
personally committed tortious conduct, the Court finds that the
Lanham Act claim may be brought against Saleem and Naeem as
individual Defendants.

In conclusion, the Court finds that because Plaintiff
has sufficiently pled a viable claim against Defendants under
Section 43(a) of the Lanham Act, Defendants' Motion to Dismiss

Count I will be denied.  Additionally, because Count I states a federal question, the Court retains jurisdiction over the remaining state claims and will not dismiss those counts for lack of jurisdiction.

> 2) Count II: Trademark Infringement Under Va. Code § 59.1-92.1

In Count II, Plaintiff alleges that Defendants have infringed the Factory Mark, for which Plaintiff has a valid and existing trademark registration in Virginia.  *See* Pl.'s Am. Compl. at ¶¶ 68-78.  Defendants argue that Count II should be dismissed on the ground that Plaintiff's trademark is not registerable because it is generic and merely descriptive. Defs.' Mot. to Dismiss at 8.  As the Court held in Section III.B.1. of this Opinion, however, Plaintiff has pled sufficient facts demonstrating that the Factory Mark is not generic and, even if descriptive, has a secondary meaning.  Moreover, the fact that Plaintiff has a valid and existing registered trademark creates a presumption that the trademark is valid.  *See Commonwealth ex rel. State Water Control Bd. v. Appalachian Power Co.*, 386 S.E.2d 633, 635 (Va. 1989), *aff'd en banc,* 402 S.E.2d 703 (Va. 1991).  Thus, the Court finds that Plaintiff has sufficiently pled a trademark infringement claim under Virginia law, and will deny Defendants' Motion to Dismiss Count II.

16

       <u>3) Count VI: Violation of Business Conspiracy Act: Va.</u>

       <u>Code §§ 18.2-500, *et seq.*</u>

       In Count VI Plaintiff alleges that Defendants intentionally, maliciously, and unlawfully conspired to injure Plaintiff's business in violation of Va. Code §§ 18.2-499 and 18.2-500.  Pl.'s First Am. Compl. at ¶ 146.  Defendants move to dismiss this Count on the ground that no conspiracy exists because Saleem and Naheem are employees of Charbroil and, under the intra-corporate immunity defense, employees of a company cannot conspire with that company.  Defs.' Mot. to Dismiss at 8-9.

       Va. Code § 18.2-499 makes it a Class 1 misdemeanor to conspire to "willfully and maliciously injur[e] another in his reputation, trade, business or profession by any means whatever," and Va. Code § 18.2-500 provides civil relief for parties who fall victim to such conduct.  Va. Code §§ 18.2-499 and -500.  Because it takes two to form a conspiracy, and a corporation can act only through its agents, officers, and employees, a "'conspiracy' between a corporation and agents of the corporation acting within the scope of their employment is a legal impossibility."  *Griffin v. Electrolux Corp.*, 454 F. Supp. 29, 32 (E.D. Va. 1979); *see also Bull v. Logetronics, Inc.*, 323 F. Supp. 115, 131 (E.D. Va. 1971)(noting that a corporation cannot conspire with its employees, officers, or agents where those individuals "are acting only for the corporation and not for any

17

personal purpose of their own.")(citations omitted).  This
doctrine, known as the "intra-corporate immunity" doctrine, has
an exception: if an employee, officer, or agent has an
"independent personal stake" in the conspiracy, a conspiracy with
the corporation may be found.  *Detrick v. Panaplina*, 108 F.3d
529, 544 (4th Cir. 1997).  Moreover, where an agent of a
corporation engages in activity that is not authorized by the
corporation, i.e., activity beyond the scope of their employment,
a conspiracy with the corporation may be found.  *Buschi v.
Kirven*, 775 F.2d 1240, 1253 (4th Cir. 1985).

        In this case, Plaintiff alleges that Saleem and Naeem,
prior to forming Charbroil, and while still employed by
Plaintiff, conspired to misappropriate and copy Plaintiff's trade
secrets and proprietary information, lure away Plaintiff's
employees, copy Plaintiff's business format, and imitate and
infringe Plaintiff's trademarks.  *See* Pl.'s First Am. Compl. at
¶¶ 142-45.  The First Amended Complaint also states that Saleem
and Naeem conspired with third parties, including Mosher, the
former general manager of Plaintiff's Sterling restaurant, to
achieve these unlawful aims.  *Id*. at ¶¶ 44-47, 144.  Because
Saleem and Naeem acted prior to forming Charbroil, and because
they acted in concert with third parties after Charbroil's
formation, the intra-corporate immunity doctrine is inapplicable,
and Plaintiff has sufficiently pled a conspiracy under Va. Code

18

§§ 18.2-499 and 18.2-500.[4]  The Court will therefore deny Defendants' Motion to Dismiss Count VI.

### 4) Count VII: Tortious Interference with Actual and Prospective Contracts and Business Relationships

In Count VII, Plaintiff alleges that Defendants wrongfully and improperly induced Plaintiff's employees to breach their employment contracts with Plaintiff and the fiduciary duties they owed Plaintiff, and wrongfully and improperly induced Plaintiff's customers to patronize Defendants' restaurant rather than Plaintiff's.  *See* Pl.'s First Am. Compl. at ¶¶ 155-64. Defendants argue that Count VII should be dismissed with respect to Plaintiff's customers because Plaintiff has not shown that a contract or expectancy exists, which is required to prove a tortious interference claim under Virginia law.  Defendants further argue that Count VII should be dismissed with respect to Plaintiff's employees because Plaintiff's employees had at-will contracts with Plaintiff and Plaintiff has not shown that Defendants used wrongful means to interfere with those contracts. *See* Defs.' Mot. to Dismiss at 9-11.

To prove a claim of tortious interference with actual and prospective contracts and business relationships, a plaintiff must show that: (1) there was a business relationship or

---

[4] Having found that Plaintiff has pled a conspiracy on other grounds, the Court will not now decide the question of whether the individual Defendants either had an "independent personal stake" in the conspiracy or acted in a manner beyond the scope of their employment with Charbroil.

expectancy, with a probability of future economic benefit to plaintiff; (2) the defendant had knowledge of that relationship or expectancy; (3) there is a reasonable certainty that absent the defendant's intentional misconduct, the plaintiff would have continued in the relationship or realized the expectancy; and (4) damage to the plaintiff.  *Commercial Business Systems, Inc. v. Halifax Corp.*, 484 S.E.2d 892, 896 (Va. 1997).  If the plaintiff alleges interference with an at-will contract, the plaintiff must also show that the defendant employed (5) improper methods, which include illegal or independently tortious conduct.  *Perk v. Vector Resources Group*, 485 S.E.2d 140, 143 (Va. 1997).

Plaintiff claims that Defendants have induced Plaintiff's customers to patronize Defendants' restaurants by intentionally creating confusion as to whether Defendants' restaurant and Plaintiff's restaurants are part of the same entity.  *See* Pl.'s First Am. Compl. at ¶¶ 159-63.  Defendants contend that no business expectancy exists because Plaintiff has alleged "only a unilateral offer to the public" and no "legally recognizable obligation on the part of the general public" to frequent Plaintiff's restaurant.  Defs.' Mot. to Dismiss at 10.  According to the Restatement (Second) of Torts, tortious interference includes "interference with a continuing business or other customary relationship not amounting to a formal contract," and this manifestation of the tort is "closely analogous" to contracts terminable at will.  Restatement (Second) of Torts §

20

766(b) cmt. c (1979).  Though Defendants make a strong argument for dismissal, the Court finds that Plaintiff has sufficiently pled facts alleging that at least some portion of Plaintiff's loyal and repeat customer base has been lured away by Defendants' conduct.  Therefore, the Court will deny Defendants' Motion to Dismiss Count VII with respect to Plaintiff's customers.

Defendants move to dismiss Plaintiff's claim of tortious interference with Plaintiff's contractual relationship with its at-will employees on the ground that Defendants did not employ wrongful means.  Defs.' Mot. to Dismiss at 10-11.  First, Plaintiff alleges that Defendants induced Plaintiff's employees to breach their fiduciary duties to Plaintiff, a claim that does not require a showing of improper means because it involves the breach of actual contractual obligations.  While liability for the breach of a fiduciary duty typically flows from actions taken prior to the termination of employment, "even after termination of an agency or employment relationship the agent 'has a duty to the principal not to use or to disclose to third persons . . . trade secrets . . . or other similar confidential matters given to him only for the principal's use.'"  *Wells Fargo Home Mortg. v. Devereaux*, 2006 U.S. Dist. LEXIS 92718, at *7 (E.D. Va. 2006)(citing *Int'l Paper Co. v. Gilliam*, 63 Va. Cir. 485, 491 (Va. Cir. Ct. 2003)).  The Court finds that Plaintiff has sufficiently pled facts alleging that Defendants induced Plaintiff's employees to breach their fiduciary duties to

Plaintiff by disclosing trade secrets and confidential business information.  *See* Pl.'s First Am. Compl. at ¶¶ 155, 157-58.

Second, the Court finds that Plaintiff has also sufficiently pled allegations of improper methods, and thus has stated a claim for tortious interference with Plaintiff's at-will contractual relationships with its employees.  The Virginia Supreme Court has found that improper methods include those that "are not themselves tortious or illegal, such as unfair competition or unethical conduct," *Maximus, Inc. v. Lockheed Information Management Systems Co., Inc.*, 493 S.E.2d 375, 379 (Va. 1997), as well as "misuse of insider or confidential information, or breach of a fiduciary relationship." *Duggin v. Adams*, 360 S.E.2d 832, 836 (Va. 1987).  Plaintiff alleges that Defendants have interfered with these at-will contracts by breaching their own fiduciary duties to Plaintiff, engaging in unethical conduct and unfair competitive practices, and inducing Plaintiff's employees to reveal trade secrets.  *See* Pl.'s First Am. Compl. at ¶¶ 51-54, 155, 157-58, 164, 167, 174.  Moreover, Plaintiff claims that Defendants have committed this inducement for unethical and improper purposes: injuring Plaintiff's business, stealing its trade secrets and confidential business information, and confusing its customers.  At the very least, "when the inducement is made for the purpose of having the employees commit wrongs, such as disclosing their former employer's trade secrets or enticing away his customers, the

injured employer is entitled to protection." *CGB Occupational Therapy, Inc. v. RHA Health Services, Inc.*, 357 F.3d 375, 388 (3d Cir. 2004).  Because Plaintiff has sufficiently pled that Defendants induced Plaintiff's employees to breach their fiduciary duties to Plaintiff and that Defendants employed improper methods, the Court will deny Defendants' Motion to Dismiss Count VII with respect to Plaintiff's employees.

## IV.  Conclusion

For these reasons, the Court will deny Defendants' 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint and deny Plaintiff's Motion to Strike Defendants' Memorandum in Support of [Their] Rule 12(b)(6) Motion to Dismiss.

An appropriate Order will issue.


December 12, 2007                  _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE