IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| BUFFALO WINGS FACTORY, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | 1:07cv612 (JCC) |
| ) | |
| SALEEM MOHD, et al., ) | |
| ) | |
| Defendants. ) | |

# **M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Defendants' Motion for Relief from Judgment. For the following reasons, the Court will deny Defendants' Motion.

## I. Background

Since 1990, Buffalo Wings Factory, Inc. ("Plaintiff"), a Virginia corporation, has operated four restaurants in Sterling, Ashburn, Chantilly, and Reston, Virginia that specialize in the sale and marketing of "buffalo wings." Plaintiff has a valid and existing trademark registration for the mark "Buffalo Wings Factory" (the "Factory Mark") and has spent approximately $80,000 per year since 2000 advertising its restaurants and the Factory Mark in local newspapers and print advertising, and on local radio stations. Plaintiff's restaurants and the Factory Mark have achieved critical acclaim and popularity, helping Plaintiff generate a customer base that

extends into West Virginia and Maryland and sales revenues equaling $5-6 million per year.

Defendants Saleem Mohd ("Saleem") and Naeem Mohd ("Naeem") worked for Plaintiff between 1996 and 2004. On or about September 1, 2005, Saleem and Naeem opened a restaurant in Herndon, Virginia that does business under the name "Buffalo Wing House." Since its opening, Saleem and Naeem have acted as employees, owners, and operators of this restaurant. Defendant Charbroil Grill of Worldgate, Inc. ("Charbroil Grill") also co-owns the restaurant, with Sudha Chopra ("Chopra") serving as its president and Saleem as its secretary.

According to Plaintiff, Saleem, Naeem, and Charbroil Grill (collectively, "Defendants") selected "Buffalo Wing House" as the name for their restaurant because it was substantially similar to the name of Plaintiff's restaurants and would cause customer confusion. Plaintiff further alleges that Defendants have used similar slogans and advertising channels as Plaintiff for the same purpose. For example, Plaintiff has used the slogan "Buffalo Wing Factory – Home of the Flatliner" in its newspaper and print advertising and on its menus, while Defendants have used "Buffalo Wings House – House of the Inferno" in the same types of newspaper and print advertising and on their menus.

The alleged similarities and deliberate attempts to cause customer confusion do not end there. Defendants' first

2

menu was substantially similar to Plaintiff's with respect to layout, daily specials, and sauces.  In addition, Plaintiff's and Defendants' facilities have several features in common: they are all located in strip malls in the Dulles Corridor, they are all casual dining restaurants with sports themes, large televisions, bars, and sit-down dining areas, and they all have similar furniture, color-schemes, and neon signs.

Plaintiff contends that these numerous similarities – adopted willfully and intentionally by Defendants – have caused substantial and continuous customer confusion.  Plaintiff cites several examples of this confusion, including: (1) customer statements to Plaintiff's employees regarding Plaintiff's Herndon restaurant – even though it is Defendants, not Plaintiff, who have a restaurant in Herndon; (2) questions from customers to Plaintiff's restaurants regarding promotions being run by Defendants' restaurant; (3) attempts by customers to use Defendants' coupons at Plaintiff's restaurants; and (4) confusion between Defendants' restaurant and Plaintiff's restaurants on the part of Defendants' vendors and the Miller beer distributor for Fairfax County.  Plaintiff also argues that Defendants themselves have intentionally furthered this confusion by telling Plaintiff's customers, employees, and third party vendors that Defendants' restaurant is the same as Plaintiff's.

Finally, Plaintiff asserts that Defendants have stolen Plaintiff's confidential information and misappropriated it as their own. Defendants have hired several of Plaintiff's former employees, including the former general manager of one of Plaintiff's restaurants, in the hope of acquiring the confidential information those employees possess and to confuse customers. In addition, the creation and ingredients of twenty of Defendants' thirty sauces are Plaintiff's trade secrets that were copied by Saleem and Naeem for use in Defendants' restaurant.

In response to these alleged acts, Plaintiff filed a Complaint against Defendants on June 22, 2007, claiming: (1) false advertising and false designation of origin in violation of the Lanham Act; (2) trademark infringement under Va. Code § 59.1-92.1; (3) misappropriation of trade secrets; (4) tortious breach of fiduciary duty; (5) unfair competition; (6) violation of the Business Conspiracy Act under Va. Code §§ 18.2-500 *et seq.*; and (7) tortious interference with actual and prospective contracts and business relationships. Defendants moved to dismiss the Complaint on July 20, 2007. On October 1, 2007, Judge Gerald Bruce Lee of this Court granted Defendants' Motion to Dismiss as to Count I on the ground that Plaintiff did not plead a set of facts supporting its allegation that Defendants' use of the

"Buffalo Wing House" mark was likely to confuse consumers. Judge Lee then granted Plaintiff leave to amend its Complaint.

On October 15, 2007, Plaintiff filed its First Amended Complaint, bringing the same claims as the original Complaint but adding more factual allegations. Defendants moved to dismiss the First Amended Complaint on October 25, 2007. In an Opinion dated December 12, 2007, this Court denied Defendants' Motion to Dismiss. The Court later set a trial date of March 3, 2008. Instead of proceeding to trial, the parties ostensibly resolved the case by mutual agreement to the terms of a settlement agreement. On March 3 the Court entered a Consent Order that required Defendants to take various actions to ensure that they would no longer infringe upon Plaintiff's legal rights. On April 29, 2008, Defendants filed the instant Motion for Relief from Judgment under Fed. R. Civ. P. 60, seeking to have the Consent Order set aside. An evidentiary hearing on this issue was held on May 9, 2008. This matter is now ripe for resolution by the Court.

## II.  Standard of Review

It is a well-settled principle of law that a Rule 60(b) motion seeking relief from a final judgment is not a substitute for a timely and proper appeal. *See Ackerman v. United States*, 340 U.S. 193, 198 (1950). In order to obtain relief under Rule 60(b), the moving party must first satisfy a four-part threshold test. This test requires the movant to demonstrate: (1)

timeliness; (2) a lack of unfair prejudice to the opposing party; (3) a meritorious defense; and (4) exceptional circumstances. *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 993 F.2d 46, 48 (4th Cir. 1993)(citing *Werner v. Carbo*, 731 F.2d 204, 207 (4th Cir. 1984)). Once a party has made this threshold showing, he must then proceed to satisfy one of the six grounds for relief enumerated in Rule 60(b). *Id.* (citing *Werner*, 731 F.2d at 207). These grounds include:

> (1) mistake, inadvertence, surprise, or excusable neglect; (2) newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b); (3) fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party; (4) the judgment is void; (5) the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or (6) any other reason that justifies relief.

Fed. R. Civ. P. 60(b).

To succeed on a Rule 60(b) motion, the moving party's allegations "must be clearly substantiated by adequate proof" to the satisfaction of the district court. *In re Burnley*, 988 F.2d 1, 3 (4th Cir. 1992)(internal quotations omitted). Precisely what constitutes "adequate proof" is less clear under Fourth Circuit law. It is well-established that a party alleging fraud or misconduct under Rule 60(b)(3) "must prove by clear and convincing evidence [the] fraud or misconduct that prevented him from fully and fairly presenting his claim or defense." *Harris*

6

*v. Mapp*, 719 F. Supp. 1317, 1324 (E.D. Va. 1989); *see also Richardson v. Boddie-Noell Enterprises, Inc.*, 78 Fed. Appx. 883, 889 (4th Cir. 2003). The requisite burden of proof for Rule 60(b) motions under other subsections, however, is murkier. Courts have applied a standard similar to "clear and convincing" for motions brought under Rule 60(b)(6). *See, e.g., Henderson v. U.S. Dept. of Labor*, 2008 WL 191302, at *1 (W.D. Va. Jan. 23, 2008)(finding that a Rule 60(b)(6) movant must provide "highly convincing" evidence to succeed and noting that this standard is "similar" to clear and convincing evidence); *Holland v. Virginia Lee Co., Inc.*, 18 F.R.D. 241, 252 (W.D. Va. 1999)("[F]or a movant's case to succeed, the material offered in support of his Rule 60(b)(6) motion must be 'highly convincing.'"). Where a party moves to modify a consent decree under Rule 60(b)(5), the Fourth Circuit has found that the movant "must satisfy a heavy burden." *Thompson v. United States*, 220 F.3d 241, 248 (4th Cir. 2000)(internal quotations omitted). In addition, courts in other contexts have required that "exceptional circumstances" be proven by clear and convincing evidence. *See, e.g., Knorr-Bremse Systems Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 372 F. Supp. 2d 833, 847-48 (E.D. Va. 2005)(requiring "clear and convincing

evidence" that a case is "exceptional" before attorneys fees may be awarded in a patent infringement action).[1]

More generally, the Fourth Circuit has stated that "[d]istrict courts must rigorously examine the[] four predicate requirements" for relief under Rule 60(b) "because we have characterized Rule 60(b) as 'extraordinary' and to be used only in 'exceptional circumstances.'" *Coomer v. Coomer*, 2000 WL 1005211, at *4 (4th Cir. July 20, 2000)(unpublished).  The Court has described this threshold test as "onerous" and has noted that movants are "unlikely" to clear such a hurdle.  *Id.*  While the Fourth Circuit has yet to apply the "clear and convincing evidence" standard to all Rule 60(b) motions regardless of subsection, this Court now finds that the balance of case law tips in favor of applying this more rigorous standard.  Therefore, to prevail on their Motion Defendants must show by clear and convincing evidence that they are entitled to relief under Rule 60(b).

### III. Analysis

Defendants bring their Rule 60(b) Motion for Relief from Judgment under subsection (1) – "mistake, inadvertence, surprise, or excusable neglect" – arguing that their attorney, Martin Mooradian ("Mr. Mooradian"), lied to them and entered into

---

[1] One court has even found that the clear and convincing evidence standard applies to proof of "exceptional circumstances" in the Rule 60(b) context.  *See Jack Carl/312-Futures, Inc. v. Watson Fin. Servs. of Orlando, Inc.*, 1989 WL 13147, at *1 (N.D. Ill. Feb. 3, 1989).

the Consent Order without Defendants' permission.[2]  The Court will first address whether Defendants have made the Rule 60(b) threshold showing before turning, if necessary, to the question of whether they have demonstrated one of the six grounds for relief.

### A. Rule 60(b) Threshold Showing

#### 1) Timeliness

There is no question that Defendants' Motion is timely.  Motions under Rule 60(b)(1) must be made within a year of the entry of judgment or order.  *See* Fed. R. Civ. P. 60(c)(1).  Here, the Court issued the Consent Order on March 3, 2008, and Defendants filed the instant Motion less than two months later, well within the one year time limit.

#### 2) Lack of Unfair Prejudice to Plaintiff

The Fourth Circuit has found that the kind of prejudice that accompanies any vacated judgment – the protraction of litigation, the time and expense of a new trial, the loss of post-judgment interest, and the loss of leverage in settlement discussions – does not constitute prejudice as contemplated by Rule 60(b).  *Werner*, 731 F.2d at 207.  In this case, the parties

---

[2] While Defendants also assert that they are entitled to relief under Rule 60(b)(3), subsection (3) only applies where there is fraud, misrepresentation, or misconduct by *an opposing party*.  *See* Fed. R. Civ. P. 60(b)(3).  Defendants' "former counsel is not an 'adverse party' within the plain meaning of Rule 60(b)(3)."  *Sherman v. Verizon Virginia, Inc.*, 220 F.R.D. 260, 262 (E.D. Va. 2002).  Because Defendants do not allege that Plaintiff engaged in any fraud or misconduct, they cannot obtain relief under Rule 60(b)(3).

were set to proceed to trial on March 3 before ostensibly deciding to resolve their differences in the form of a settlement agreement and Consent Order.  Granting Defendants' Motion would simply require the parties to resume litigation of this case and to proceed with preparation for trial, burdens which do not meet the Rule 60(b) standard for unfair prejudice.  *See Augusta Fiberglass Coatings, Inc. v. Fodor Contracting Corp.*, 843 F.2d 808, 812 (4th Cir. 1988)(finding no unfair prejudice where granting a Rule 60(b) motion would only cause the non-moving party to suffer the "disadvantage . . . suffered by any party which loses a quick victory").  As such, the Court finds that Defendants have met their burden of showing that Plaintiff would not suffer unfair prejudice were Defendants' Motion granted.

### 3) Meritorious Defense

The purpose of the meritorious defense requirement is to ensure that granting relief from the judgment under Rule 60(b) would not "in the end [be] a futile gesture."  *Boyd v. Bulala*, 905 F.2d 764, 769 (4th Cir. 1990).  In determining whether a moving party has a meritorious defense, "the trial court must have before it more than mere allegations that a defense exists." *Gomes v. Williams*, 420 F.2d 1364, 1366 (10th Cir. 1970); *see also Teamsters, Chauffeurs, Warehousemen and Helpers Union, Local No. 59 v. Superline Transp. Co., Inc.*, 953 F.2d 17, 21 (1st Cir. 1992)("Even an allegation that a meritorious claim exists, if the allegation is purely conclusory, will not suffice to satisfy the

precondition to Rule 60(b) relief."). Even where a party seeks to overturn a default judgment, the movant must present "evidence, which, if believed, would permit either the Court or the jury to find for the defaulting party." *United States v. Moradi*, 673 F.2d 725, 727 (4th Cir. 1982).

Here, Defendants argue that they have a meritorious defense against Plaintiff's allegation of stolen trade secrets, pointing to the fact that by the end of discovery Plaintiff had yet to put forth an expert witness proving that Plaintiff's and Defendants' sauces were identical. Defendants claim that they can prove at trial that their sauces contain different ingredients than Plaintiff's. Defendants also contend they can refute Plaintiff's allegations that the similarities between the restaurants caused customer confusion, noting differences between the menus, uniforms, logos, and color schemes. Finally, Defendants assert that any allegation that they improperly hired several of Plaintiff's employees would fail because there is no law in Virginia prohibiting one company from hiring the employees of another company.

Defendants' assertions come in the form of attorney argument, both in their brief and at the evidentiary hearing. *See* Defs.' Mem. in Support of Mot. for Relief from Judgment, at 3-4; Mot. for Relief from Judgment Hr'g Tr., May 9, 2008, at 128-29. They provide very little in the way of factual or evidentiary support. Instead, Defendants offer mostly conclusory

allegations of meritorious defenses and state that they will provide the necessary proof at trial.  Given the paucity of evidence proffered by Defendants in support of this prong of the threshold test, the Court is inclined to find that they have not met their burden of demonstrating a meritorious defense.  As will be explained in the next part of this Opinion, however, even were the Court to find that Defendants have met their burden, they are unable to show either exceptional circumstances or entitlement to relief under subsection (1).

### (4) Exceptional Circumstances

There are few cases in which Fourth Circuit courts have actually found exceptional circumstances.  *See, e.g., Bonney v. Roelle*, 1997 WL 407831, at *9 (4th Cir. July 21, 1997)(unpublished)(finding foreign defendants' unfamiliarity with the American legal system to be an exceptional circumstance); *Montgomery Ward Comprehensive Health Care Plan v. Layne*, 1996 WL 436561, at *5 (4th Cir. July 23, 1996)(unpublished)(finding exceptional circumstances where pertinent documents were not before the court when it made its final decision); *Vinten v. Jeantot Marine Alliances, S.A.,* 191 F. Supp. 2d 642, 651-52 (D.S.C. 2002)(finding that a judgment void for lack of personal jurisdiction meets the exceptional circumstances requirement); *Dowell v. State Farm Fire & Cas. Auto. Ins. Co.*, 774 F. Supp. 996, 999 (S.D.W.Va. 1991)(finding exceptional circumstances where the state's highest court had addressed an issue relevant to the

lawsuit since the final judgment was entered). Despite the limited number of examples, the Court believes that Defendants' allegation that Mr. Mooradian lied to them and entered into the Consent Order without their permission, if proven, would qualify as an exceptional circumstance.

The Court notes that Defendants' allegation also forms the basis for their request for relief under subsection (1). *See Cacevic v. City of Hazel Park*, 226 F.3d 483, 490 (6th Cir. 2000)(finding that relief under Rule 60(b)(1) is available where an attorney acts without his client's authority); *Yapp v. Excel Corp.*, 186 F.3d 1222, 1231 (10th Cir. 1999)(same); *see also Augusta Fiberglass Coatings*, 843 F.2d at 811 ("[W]hen the party is blameless, an attorney's negligence qualifies as a 'mistake' or as 'excusable neglect' under Rule 60(b)(1)."). Therefore, the Court's determination of whether Defendants have proven their allegation by clear and convincing evidence will be dispositive of both the "exceptional circumstances" question and the issue of whether relief is justified under Rule 60(b)(1).

Bearing in mind Defendants' burden of proof, it is the Court's task to determine "whether or not there was a meeting of the minds between the parties and their counsel." *Wood v. Virginia Hauling Co.*, 528 F.2d 423, 425 (4th Cir. 1975). After examining all of the evidence, the Court finds that Defendants have failed to show that no such meeting of the minds occurred. At bottom, the Court is faced with a "he said/he said" scenario.

During the May 9, 2008 evidentiary hearing, Naeem testified[3] that he never gave Mr. Mooradian the authority to settle the case or to sign any consent order or settlement agreement on Defendants' behalf. *See* Testimony of Naeem Mohd, Mot. for Relief from Judgment Hr'g Tr. at 10-12. While Naeem admitted he was shown a version of the settlement agreement on February 28 or 29, 2008, he claimed he told Mr. Mooradian that there were terms in the agreement to which he objected. *Id.* at 16-17, 37. Specifically, Naeem took issue with the two-year restrictive covenant, the requirement of dropping the state court lawsuit against Plaintiff, and a term that limited Defendants to twenty sauces in all existing and future restaurants. *Id.* at 19-29. Naeem also stated that he never saw the Consent Order until the second or third week of March, at least a week after it was entered by the Court. *Id.* at 30-31, 36. In fact, Naeem claimed that he did not even know what the Consent Order was until his new attorney explained it to him in early April 2008. *Id.* at 33-34, 43-44.

In contrast to Naeem's testimony, Mr. Mooradian testified[4] that he began the process of negotiating settlement

---

[3] The Court notes that Naeem was the only Defendant to testify in this matter.

[4] Mr. Mooradian's testimony regarding his authority to settle the case and enter into the Consent Order is not barred by the attorney-client privilege. "It is well-established that if a client assails his attorney's conduct of the case . . . the privilege as to confidential communications is waived, since the attorney . . . has a right to defend himself under the circumstances." *Pruitt v. Peyton*, 243 F. Supp. 907, 909 (E.D. Va. 1965); *see also United States v. Butler*, 167 F. Supp. 102, 104 (E.D. Va. 1957). Attorney-client privilege is also waived when a client puts communications with his attorney at issue in a judicial proceeding. *Hunt v. Blackburn*, 128

14

terms on Defendants' behalf on December 20, 2007.  Testimony of Martin Mooradian, Mot. for Relief from Judgment Hr'g Tr. at 51-52.  Though Mr. Mooradian advised his clients to try the case, Defendants refused because they did not believe they could afford the downside of losing at trial.  *Id.* at 63, 113.  After negotiating with Plaintiff's counsel for several months, the parties reached an approved settlement agreement on February 19, 2008.  *Id.* at 56.  This agreement limited Defendants to the use of only ten sauces.  Because Naeem objected to this limitation, Mr. Mooradian negotiated and secured a limit of twenty sauces.  *Id.* at 56-57.  Though some details regarding the ingredients of the sauces still needed to be worked out, the parties reached the basic final terms of the agreement on February 21.  *Id.* at 57-58.

During the evidentiary hearing, Mr. Mooradian contested Naeem's contention that Defendants never agreed to certain terms of the settlement agreement.  Mr. Mooradian indicated that he was specifically authorized to enter into the two-year restrictive covenant, which was present in every draft of the settlement agreement from February 4 onwards.  *Id.* at 52-55.  It was not until the middle of March that Defendants mentioned to Mr. Mooradian that they objected to the two-year restrictive covenant.  *Id.* at 56, 64.  In addition, Mr. Mooradian emphasized to Defendants that under the settlement agreement they would be

---

U.S. 464, 470-71 (1888).  There is little doubt that Defendants, by attacking Mr. Mooradian's conduct and communications with them regarding settlement and the Consent Order, have waived the privilege.

required to dismiss their state court suit against Plaintiff. *Id.* at 65-66. And, contrary to Naeem's testimony, Defendants never expressed to Mr. Mooradian a belief that the twenty-sauce restriction was limited only to Defendants' existing restaurant. *Id.* at 64. Indeed, from February 21, when the parties agreed to the basic terms of the agreement, until March 13, Mr. Mooradian did not receive a single objection from Defendants to any term of the settlement agreement. *Id.* 59, 64-65.

Mr. Mooradian presented his clients a final version of the settlement agreement – minus the ingredients of the sauces – on February 28. *Id.* at 68. According to Mr. Mooradian, Naeem did not tell him on that day that Defendants were still debating whether to sign the agreement or to agree to its terms. *Id.* at 69. In fact, between February 21 and March 3 Defendants never indicated that they had yet to make up their minds about whether to sign the settlement agreement. *Id.* at 67. On February 29, Mr. Mooradian and Plaintiff's counsel agreed on the ingredients of the sauces. Mr. Mooradian then called Naeem to secure his approval regarding the ingredients and, after doing so, confirmed with Plaintiff's counsel that the parties had reached an agreement. *Id.* at 86.

Mr. Mooradian repeatedly testified throughout the hearing that he was authorized to agree to and sign the Consent Order on Defendants' behalf. *See id.* at 56, 78, 96.

16

He discussed the meaning of the Consent Order with his clients on numerous occasions, and explained the fact that the terms of the settlement agreement would be incorporated into the Consent Order. *Id.* at 58, 71-72. Mr. Mooradian showed Defendants a draft copy of the Consent Order on February 28, and reviewed the language of the Order with them on that day. *Id.* at 85. Defendants made no objection to the Consent Order until Naeem raised the issue on March 13. *Id.* at 59, 64-65.

The Court highlights two other relevant pieces of evidence. First, Mr. Mooradian noted that Defendants were aware of the March 3 trial date and that he informed them on February 29 that the case was off the docket due to the settlement. *Id.* at 66-67. Defendants offered no objection. *Id.* Naeem himself admitted that he was aware of the March 3 trial date and that he did not show up for trial. Testimony of Naeem Mohd, Mot. for Relief from Judgment Hr'g Tr. at 37-38. Second, Mr. Mooradian offered a theory as to why Defendants might have an incentive to get out from under the Consent Order: Naeem told Mr. Mooradian that he had heard from his uncle that a buffalo wings restaurant needed at least thirty sauces to be competitive. Testimony of Martin Mooradian, Mot. for Relief from Judgment Hr'g Tr. at 59, 114. Naeem denied that he was fed this bit of information from an uncle, but did admit that Defendants believed that they could not survive with just twenty sauces. Testimony of Naeem Mohd, Mot. for Relief from Judgment Hr'g Tr. at 38-39.

This dispute was in many ways made possible by the fact that Mr. Mooradian did not have his clients sign the settlement agreement before the Consent Order was entered, in part because their signature was not necessary to terminate the case, and in part because of time constraints. Testimony of Martin Mooradian, Mot. for Relief from Judgment Hr'g Tr. at 75, 78, 87, 97. A signed version of the settlement agreement would have made it substantially more difficult, if not impossible, for Defendants to claim that they did not consent to the agreement or Consent Order. Nevertheless, given the detail of Mr. Mooradian's testimony and his credibility as a witness, as well as Defendants' potential motivation for trying to have the Consent Order set aside, the Court finds that Defendants have fallen far short of meeting their burden. The evidence as to whether Mr. Mooradian acted with or without his clients' authority is at best in equipoise. Because Defendants must demonstrate exceptional circumstances by clear and convincing evidence, their Motion for Relief from Judgment necessarily fails.[5]

### B. Rule 60(b) Grounds for Relief

Defendants argue that Mr. Mooradian's decision to act without their permission with respect to the settlement agreement and the Consent Order constitutes a "mistake" or "excusable neglect" under Rule 60(b)(1). As explained in Part III.A.4. of

---

[5] Even if Defendants only need to prove their allegations against Mr. Mooradian by a preponderance of the evidence, the Court finds that they have failed to meet this standard as well.

this Opinion, Defendants have not sufficiently proven their allegation against Mr. Mooradian.  Therefore, the Court finds that Defendants are not entitled to obtain relief under Rule 60(b)(1), and will deny Defendants' Motion for Relief from Judgment.

### IV.  Conclusion

For these reasons, the Court will deny Defendants' Motion for Relief from Judgment.

An appropriate Order will issue.


June 23, 2008                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE