```
           IN THE UNITED STATES DISTRICT COURT
          FOR THE EASTERN DISTRICT OF VIRGINIA

                     Alexandria Division


BUFFALO WINGS FACTORY, INC.,   )
                               )
     Plaintiff,                )
                               )
        v.                     )     1:07cv612 (JCC)
                               )
SALEEM MOHD, et al.,           )
                               )
     Defendants.               )
```

### M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff's Motion to Enforce the Consent Order and for Contempt Sanctions, Defendants' Motion to Dismiss, and Plaintiff's Motion to Strike Defendants' Motion.  For the following reasons, the Court will grant Plaintiff's Motion to Enforce and for Contempt Sanctions, deny Defendants' Motion, and deny Plaintiff's Motion to Strike.

### I. Background

The facts as stated in the First Amended Complaint are as follows.  Since 1990, Buffalo Wings Factory, Inc. ("Plaintiff"), a Virginia corporation, has operated four restaurants in Sterling, Ashburn, Chantilly, and Reston, Virginia that specialize in the sale and marketing of "buffalo wings."  Plaintiff has a valid and existing trademark registration for the mark "Buffalo Wings Factory" (the "Factory Mark") and has spent approximately $80,000 per year since 2000 advertising its

1

restaurants and the Factory Mark in local newspapers and print advertising, and on local radio stations.  Plaintiff's restaurants and the Factory Mark have achieved critical acclaim and popularity, helping Plaintiff generate a customer base that extends into West Virginia and Maryland and sales revenues equaling $5-6 million per year.

Defendants Saleem Mohd ("Saleem") and Naeem Mohd ("Naeem") worked for Plaintiff between 1996 and 2004.  On or about September 1, 2005, Saleem and Naeem opened a restaurant in Herndon, Virginia that does business under the name "Buffalo Wing House."  Since its opening, Saleem and Naeem have acted as employees, owners, and operators of this restaurant.  Defendant Charbroil Grill of Worldgate, Inc. ("Charbroil Grill") also co-owns the restaurant, with Sudha Chopra ("Chopra") serving as its president and Saleem as its secretary.

According to Plaintiff, Saleem, Naeem, and Charbroil Grill (collectively, "Defendants") selected "Buffalo Wing House" as the name for their restaurant because it was substantially similar to the name of Plaintiff's restaurants and would cause customer confusion.  Plaintiff further alleges that Defendants have used similar slogans and advertising channels as Plaintiff for the same purpose.  For example, Plaintiff has used the slogan "Buffalo Wing Factory - Home of the Flatliner" in its newspaper and print advertising and on its menus, while Defendants have

used "Buffalo Wings House – House of the Inferno" in the same types of newspaper and print advertising and on their menus.

The alleged similarities and deliberate attempts to cause customer confusion do not end there.  Defendants' first menu was substantially similar to Plaintiff's with respect to layout, daily specials, and sauces.  In addition, Plaintiff's and Defendants' facilities have several features in common: they are all located in strip malls in the Dulles Corridor, they are all casual dining restaurants with sports themes, large televisions, bars, and sit-down dining areas, and they all have similar furniture, color-schemes, and neon signs.

Plaintiff contends that these numerous similarities – adopted willfully and intentionally by Defendants – have caused substantial and continuous customer confusion.  Plaintiff cites several examples of this confusion, including: (1) customer statements to Plaintiff's employees regarding Plaintiff's Herndon restaurant – even though it is Defendants, not Plaintiff, who have a restaurant in Herndon; (2) questions from customers to Plaintiff's restaurants regarding promotions being run by Defendants' restaurant; (3) attempts by customers to use Defendants' coupons at Plaintiff's restaurants; and (4) confusion between Defendants' restaurant and Plaintiff's restaurants on the part of Defendants' vendors and the Miller beer distributor for Fairfax County.  Plaintiff also argues that Defendants themselves

have intentionally furthered this confusion by telling Plaintiff's customers, employees, and third party vendors that Defendants' restaurant is the same as Plaintiff's.

Finally, Plaintiff asserts that Defendants have stolen Plaintiff's confidential information and misappropriated it as their own.  Defendants have hired several of Plaintiff's former employees, including the former general manager of one of Plaintiff's restaurants, in the hope of acquiring the confidential information those employees possess and to confuse customers.  In addition, the creation and ingredients of twenty of Defendants' thirty sauces are Plaintiff's trade secrets that were copied by Saleem and Naeem for use in Defendants' restaurant.

In response to these alleged acts, Plaintiff filed a Complaint against Defendants on June 22, 2007, claiming: (1) false advertising and false designation of origin in violation of the Lanham Act; (2) trademark infringement under Va. Code § 59.1-92.1; (3) misappropriation of trade secrets; (4) tortious breach of fiduciary duty; (5) unfair competition; (6) violation of the Business Conspiracy Act under Va. Code §§ 18.2-500 *et seq.*; and (7) tortious interference with actual and prospective contracts and business relationships.  Defendants moved to dismiss the Complaint on July 20, 2007.  On October 1, 2007, Judge Gerald Bruce Lee of this Court granted Defendants' Motion to Dismiss as

to Count I on the ground that Plaintiff did not plead a set of facts supporting its allegation that Defendants' use of the "Buffalo Wing House" mark was likely to confuse consumers.  Judge Lee then granted Plaintiff leave to amend its Complaint.

On October 15, 2007, Plaintiff filed its First Amended Complaint, bringing the same claims as the original Complaint but adding more factual allegations.  Defendants moved to dismiss the First Amended Complaint on October 25, 2007.  In an Opinion dated December 12, 2007, this Court denied Defendants' Motion to Dismiss.  The Court later set a trial date of March 3, 2008. Instead of proceeding to trial, the parties resolved the case by mutual agreement to the terms of a settlement agreement.  On March 3, pursuant to the parties' wishes, the Court entered a Consent Order ("CO") that included both monetary terms and injunctive provisions requiring Defendants to change their trademarks, tag lines, signs, menu and product offerings, and to drop several of their copycat sauces.  The CO required Defendants to complete those changes by June 1, 2008 (the "Conversion Date"), which was also the date on which Defendants' first installment payment, in the amount of $30,000, was due.  On April 29, 2008, Defendants filed a Motion for Relief from Judgment under Fed. R. Civ. P. 60, seeking to have the CO set aside. After taking evidence on the matter, the Court denied this Motion and confirmed the CO in an Opinion and Order dated June 23, 2008.

On June 13, 2008 – prior to the Court's decision confirming the CO but after the Conversion Date – Plaintiff's counsel sent a letter to Defendants' counsel accusing Defendants of continuing to violate the CO and demanding both compliance and payment of $150,000.  A second letter was sent to defense counsel on June 25, 2008, stating that Plaintiff would file a motion for contempt sanctions and to enforce the CO unless Defendants met their obligations by July 2, 2008.  On July 3, 2008, Plaintiff filed the instant Motion to Enforce the Consent Order and for Contempt Sanctions, accusing Defendants of failing to comply with their obligations under the CO.[1]  Defendants then filed a Motion to Dismiss Plaintiff's Motion on July 17, 2008.  Plaintiff responded on July 25, 2008 with a Motion to Strike Defendants' Motion.  These matters are now before the Court.

## II.  Standard of Review

To hold a party in civil contempt, the following four elements must be established by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
> (2) . . . that the decree was in the movant's "favor";
> (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and
> (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citing *Colonial Williamsburg Found. v. The Kittinger Co.*, 792 F.

---

[1] On July 2, 2008, Defendants filed a Notice of Appeal.  The Appeal Fee was paid the next day.  To the Court's knowledge, Defendants have not yet posted an appeal bond, and the case has not been stayed pending appeal.

Supp. 1397, 1405-06 (E.D. Va. 1992), aff'd, 38 F.3d 133, 136 (4th Cir. 1994)).  A court may "impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988) and citing *United States v. United Mine Workers of America*, 330 U.S. 258, 303-04 (1947)).  Although courts have broad discretion in fashioning remedies for civil contempt, which include "ordering the contemnor to reimburse the complainant for losses sustained and for reasonable attorney's fees," remedies and sanctions must be limited to either a remedial or compensatory purpose.  *Id.* at 259; *see also Carbon Fuel Co. v. United Mine Workers of America*, 517 F.2d 1348, 1349 (4th Cir. 1975)(explaining that "[c]ivil contempt . . . is 'wholly remedial[,]' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance") (internal quotations omitted).  Otherwise, a court, by venturing beyond the realm of compensatory or coercive remedies, i.e., imposing punitive fines or sanctions "intended to vindicate the authority of the court," *Carbon Fuel*, 517 F.2d at 1349, will transform the proceeding into one for criminal rather than civil contempt.  *See id.* at 1350 (giving no weight to fact that "proceedings were begun and designated as a civil contempt

proceeding," and instead holding that "[t]he nature of the fine imposed determines the character of the proceedings without regard to the characterization of the proceedings, either procedurally or substantively, as made by the parties themselves")(citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

## III. Analysis

Plaintiff argues that Defendants have made no significant efforts to comply with their obligations under the CO, either before the Conversion Date or since the Court confirmed the CO by its decision of June 23, 2008.  Plaintiff now seeks an order commanding Defendants to: (1) pay Plaintiff $150,000 in past damages or fees, plus attorneys' fees for collection; (2) comply with the CO; and (3) pay Plaintiff $26,000 per week of violations (or, in the alternative, $9,000 per week) as civil contempt sanctions, plus attorneys' fees.  Before the Court can address these requests, however, it must first contend with Defendants' Motion to Dismiss and Plaintiff's Motion to Strike.

**A. Defendants' Motion to Dismiss and Plaintiff's Motion to Strike**

In their Motion to Dismiss, Defendants – Saleem, Naeem, and Charbroil Grill – argue for the first time that they are not the owners of Buffalo Wing House.  Defendants contend that since 2004 Buffalo Wing House has been owned and operated by SS

8

Herndon, Inc., f/k/a SS, Inc. ("SS Herndon"), whose principals are Jaji Shah and Seema Saleem.  Consequently, Defendants claim that they have no authority to make any changes to Buffalo Wing House and cannot legally comply with the terms of the CO.  To support their contention of lack of ownership, Defendants submit state and federal tax forms, county permits, and annual reports.  *See* Exs. A-F to Defs.' Mot. to Dismiss.

Plaintiff, in its Motion to Strike, objects to Defendants' Motion on both procedural and substantive grounds.  First, Plaintiff notes that the vehicle by which Defendants attack Plaintiff's Motion to Enforce and for Contempt Sanctions – a Motion to Dismiss – is the improper vehicle for opposing Plaintiff's Motion.  The Court agrees: a Fed. R. Civ. P. 12(b) motion to dismiss applies only to a claim for relief in a "pleading," and Fed. R. Civ. P. 7(a) clearly indicates that Plaintiff's Motion is not a pleading.  Second, Plaintiff contends that the only arguable basis recognized by Rule 12(b) on which Defendants may be relying is Rule 12(b)(6), and that Defendants cannot interject materials that fall outside the scope of the pleadings in such a motion.  *See* Fed. R. Civ. P. 12(d).  Here, the exhibits attached to Defendants' Motion fall outside the scope of the pleadings, as well as outside the scope of the Contempt Motion itself.

Moving to more substantive grounds, Plaintiff contends that Defendants' claim that they lack the necessary authority to

9

make any changes to Buffalo Wing House is contradicted by Defendants' own prior pleadings and Charbroil Grill's Rule 30(b)(6) deposition testimony. For example, at the May 9, 2008 hearing on Defendants' Motion for Relief from Judgment, Defendants' former attorney — who was also their corporate attorney for the first three years that Buffalo Wing House operated, and who handled the stock purchase of Charbroil Grill – testified that "Charbroil Grill of Worldgate, Inc., owned the restaurant.  SS, Inc. owned Charbroil Grill of Worldgate, Inc." Mot. for Relief from J. Hr'g Tr. 50, May 9, 2008, Ex. A to Pl.'s Mot. to Strike.  Defendants' answers to interrogatories further contradict their current position.  In these answers, each Defendant identified Charbroil Grill – but never SS Herndon or SS, Inc. – as the company that owned and operated Buffalo Wing House.  *See* Answers to Interrogatory No. 5, Exs. F, G, & H to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss.  All three Defendants also consistently stated that Naeem and Saleem were "employees of Charbroil," with no mention of SS Herndon or SS, Inc.  Answers to Interrogatory No. 6, Exs. F, G, & H to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss.  In addition, Saleem indicated that he was an officer and director of Charbroil Grill, and that he had recently been made "secretary" of the company. Answer to Interrogatory Nos. 3-4, Ex. H to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss.  Naeem stated that he was a manager at the restaurant.  Answer to Interrogatory No. 3, Ex G to Pl.'s

Resp. in Opp'n to Defs.' Mot. to Dismiss. Finally, in their April 29, 2008 memorandum in support of their Motion for Relief from Judgment, Defendants and their present counsel admitted that "Defendants started their own restaurant that also served buffalo wings." Mem. in Support of Defs.' Mot. for Relief from J. [99] at 1.

These facts are consistent with the Rule 30(b)(6) deposition testimony of the president and principal shareholder of Charbroil Grill, Jaji Shah. On December 18, 2007, Mr. Shah testified on behalf of Charbroil Grill that: (1) Charbroil Grill directly owns Buffalo Wing House; (2) Buffalo Wing House is the only business of Charbroil Grill; (3) SS, Inc. owns Charbroil Grill; (4) SS, Inc. has no other investments except Buffalo Wing House through Charbroil Grill; and (5) there was a licensing agreement in place through which SS, Inc. let Charbroil Grill use the Buffalo Wing House trademark. Jaji Shah Dep. 52-53, 75-76, Dec. 18, 2007, Ex. B to Pl.'s Mot. to Strike. Moreover, Mr. Shah stated that Saleem and Naeem still worked for Charbroil Grill, and that Naeem had been its general manager since 2004. Jaji Shah Dep. 12, 40-41, Dec. 18, 2007, Ex. E to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss. Naeem's 30(b)(6) testimony further corroborates these facts. During that deposition, Naeem admitted that he was employed by both SS, Inc. and Charbroil Grill, and that Charbroil was owned by SS, Inc. Naeem Mohd Dep. 4-5, Dec. 18, 2007, Ex. L to Pl.'s Resp. in Opp'n to Defs.' Mot. to

11

Dismiss.  He also stated that he was the general manager of Buffalo Wing House.  *Id.* at 12, 31.

While Plaintiff's argument as to the propriety of filing a Motion to Dismiss a motion is well taken, the Court believes it is better to resolve Defendants' Motion on the merits.  Therefore, the Court will deny Plaintiff's Motion to Strike.  As to the merits of Defendants' claim, Plaintiff presents an abundance of evidence indicating that it in fact sued the proper parties, and that the Court has the power to order all of the Defendants to comply with the CO.  Defendants' arguments strike the Court as a desperate, last-ditch effort to elude its obligations under the CO.[2]  The Court will not sanction those efforts, and therefore will deny Defendants' Motion to Dismiss.

### B. Plaintiff's Motion to Enforce and for Contempt Sanctions

<u>1) Payment of $150,000 in Past Damages or Fees</u>

Under the CO, Defendants were required to pay Plaintiff a first installment payment of $30,000 by the Conversion Date, June 1, 2008.  CO ¶ 12.  Then, Defendants were to make $30,000

---

[2] In its Response in Opposition to Defendant's Motion to Dismiss, Plaintiff argues that Defendants should be judicially estopped from making their present assertion.  Judicial estoppel requires, among other things, that "the party to be estopped [take] inconsistent positions intentionally for the purpose of gaining unfair advantage." *King v. Herbert J. Thomas Memorial Hosp.*, 159 F.3d 192, 196 (4th Cir. 1998); *see also John S. Clark Co. v. Faggert & Frieden, P.C.*, 65 F.3d 26, 29 (4th Cir. 1995)("The 'determinative factor' in the application of judicial estoppel is whether the party who is alleged to be estopped intentionally misled the court to gain unfair advantage.")(internal quotations omitted).  While the Court is skeptical of Defendants' motivation in taking its present position, there is simply insufficient evidence before the Court to make a conclusive determination as to the issue of bad faith.

payments every June 1 through 2012, for a combined total of $150,000.  *Id.*  Paragraph 12 also ordered Defendants to enter into a "promissory note providing for confession of judgment, acceleration of payments, and collection of attorneys' fees" by Plaintiff.  *Id.*  Plaintiff furnished to Defendants a promissory note that included an acceleration clause requiring payment of the entire $150,000 in the event that any installment was not paid within ten calendar days of its due date.  Promissory Note, Ex. A to Pl.'s Mot. to Enforce the Consent Order and for Contempt Sanctions ("Pl.'s Mot. to Enforce") ¶ 2.  The promissory note also called for the payment of any reasonable attorneys' fees that Plaintiff incurred for enforcing Defendants' payment obligations.  *Id.* ¶ 5.

Defendants never made their first installment payment, and never signed the furnished promissory note.  Plaintiff now asks the Court to order Defendants to sign the promissory note and to pay the accelerated amount of $150,000, plus attorneys' fees for collection, pursuant to paragraph 12 of the CO.  The Court, however, will not at this juncture take the step of ordering Defendants to pay the entire $150,000, a penalty that could very well put Defendants out of business.  Instead, the Court will simply order Defendants to sign the promissory note and to pay Plaintiff the $30,000 that came due on June 1, 2008, in accordance with the terms of paragraph 12 of the CO.

### 2) Compliance with the CO

Plaintiff contends that Defendants continue to violate the terms of the CO. These violations include:

(1) continuing to operate their business under the trademark "Buffalo Wings House" in violation of paragraph 1;
(2) continuing to operate under the "Buffalo Wings House" trademark and displaying that trademark on their windows and on the sign over their restaurant in violation of paragraph 2;
(3) continuing to use the "House of the Inferno" slogan and tag line on their menus and shirts in violation of paragraph 3;
(4) continuing to offer more than twenty chicken wing and chicken finger sauce flavors, including the "Peppery Parmesan," "Spicy Crab," and "Spicy Lemon Pepper" sauces specifically, and failing to rename the "Eastern Shore" and "Spicy Honey Garlic" sauces, in violation of paragraph 4;
(5) continuing to offer chicken wings in quantities with names such as "Single," "Double," "Triple," "Tub," and "Bucket" in violation of paragraph 5;
(6) continuing to offer the "Stray Cat," "Wild Wild West," and "Super Club" sandwiches as part of their menu and product offerings in violation of paragraph 6;
(7) failing to rename their one pound hamburger as "the Pounder" in violation of paragraph 6;
(8) failing to remove certain specials from their menus and product offerings, including "25 wings 5 different ways," "Wings and Fingers Combo," and "All You Can Eat Wings and Fingers," in violation of paragraph 7;
(9) continuing to permit employees to wear black or dark colored shirts while working at the restaurant in violation of paragraph 8; and
(10) failing to adopt a menu that is substantially less similar to any menu offered by any of Plaintiff's restaurants, and failing to submit a proposed menu for Plaintiff's approval, in violation of paragraph 9.

*See* Exs. C-H to Pl.'s Mot to Enforce.

Applying the standard set out in *Ashcraft* and *Colonial Williamsburg* for holding a party in civil contempt, the Court finds that Plaintiff has established contempt by clear and

14

convincing evidence. First, the Court has already determined that the CO is a valid order binding on Defendants, and Defendants have actual and constructive knowledge of it due to their attendance at the hearing on its validity and because Plaintiff has written Defendants' counsel to demand compliance with it. Second, the CO was in Plaintiff's favor because it required Defendants to pay Plaintiff money and to discontinue using their confusing copycat names, trademarks, sauces, specials, and menu items. Third, as the Court set out above, Defendants have repeatedly, and in numerous ways, failed to comply with the terms of the CO. Plaintiff proves these violations by offering evidence in the form of menus, websites, and witness declarations. *See* Exs. C-H to Pl.'s Mot. to Enforce. Plaintiff's evidence is corroborated by an additional 30(b)(6) deposition of Jaji Shah, taken on July 22, 2008, and the additional depositions of Naeem and Saleem, taken on July 23, 2008. In these depositions, each Defendant admitted knowledge of the violations and that they had taken no steps to comply with the CO. *See* Jaji Shah Dep. 119-142, July 22, 2008, Ex. A to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss; Naeem Mohd Dep. 31-36, 47, 64, 67, 69-70, July 23, 2008, Ex. B to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss; Saleem Mohd Dep. 97-100, July 23, 2008, Ex. C to Pl.'s Resp. in Opp'n to Defs.' Mot. to Dismiss. Finally, Plaintiff has suffered harm as a result of Defendants' violations because it has been deprived for over two

months of the trademark de-identification rights it specifically bargained and negotiated for under the CO, it has not been paid, and its customers have suffered actual confusion.  Consequently, the Court will hold Defendants in contempt for failing to fulfill their obligations under the CO, and will order them to immediately comply with its terms.

### 3) Civil Contempt Sanctions

As sanctions for Defendants' contempt, Plaintiff seeks to recover Defendants' wrongful revenues derived from their wrongful conduct, as well as attorneys' fees.  Recovery of wrongful revenues or net profits earned from infringing activity are well-settled remedies for trademark infringement and, specifically, a civil contempt remedy for violation of trademark consent orders.  *See, e.g., Colonial Williamsburg*, 792 F. Supp. at 1407-08 (awarding plaintiff one-third of defendant's wrongful revenues as a civil contempt sanction for violation of a trademark consent order); *Manhattan Indus., Inc. v. Sweater Bee by Banff, Ltd.*, 885 F.2d 1, 5-6 (2d Cir. 1989)(awarding plaintiff the net profits derived from defendant's wrongful conduct as a civil contempt sanction for violation of a consent judgment in a trademark infringement suit).  *Cf.* Section 35(a) of the Lanham Act, 15 U.S.C. § 1117(a)(awarding wrongful profits for trademark infringement, measured initially by the infringer's wrongful revenues, which plaintiff must prove).

Plaintiff offers evidence that Defendants' restaurant earns revenues of approximately $105,000 per month, or $26,000 per week. Jaji Shah Dep. 67, Dec. 18, 2007, Ex. I to Pl.'s Mot to Enforce. Plaintiff contends that, since the Conversion Date, all of Defendants' revenues have been derived from wrongful conduct, and therefore it is entitled to all of Defendants' revenues since June 1, 2008. In the alternative, Plaintiff asks for one-third of Defendants' revenues since June 1, or $9,000 per week by Plaintiff's calculations.

The Court reiterates that civil contempt sanctions must be remedial, compensatory, and nonpunitive.[3] *In re General Motors Corp.*, 61 F.3d at 259. Given the facts of this case, and considering the difficulty in calculating precisely which portion of Defendants' revenues have been derived from their wrongful conduct, the Court finds that the appropriate amount of sanctions is one-third of Defendants' revenues since June 1, 2008. Therefore, the Court will grant Plaintiff's alternative request for sanctions of $9,000 per week for each week since June 1 that Defendants have failed to comply with the CO.

Plaintiff also seeks attorneys' fees, which are a warranted remedy for civil contempt. *See In re General Motors Corp.*, 61 F.3d at 259; *Colonial Williamsburg*, 792 F. Supp. at

---

[3] The Court notes that a civil contempt fine, "even when compensatory in nature, need 'not always [be] dependant on a demonstration of "actual pecuniary loss."'" *Colonial Williamsburg*, 792 F. Supp. at 1407 (quoting *Manhattan Indus.*, 885 F.2d at 5). Plaintiff has not attempted to make a showing of actual pecuniary loss in this case.

1409. Here, Defendants have purposefully and continuously ignored their obligations under the CO since June 1, 2008. In addition, paragraph 12 of the CO, in conjunction with paragraph 5 of the promissory note, call for Defendants to pay any reasonable attorneys' fees incurred by Plaintiff for enforcing Defendants' payment obligations.  Thus, the Court finds attorneys' fees to be an appropriate remedy in this case, and will award Plaintiff reasonable attorneys' fees.

### IV. Conclusion

For these reasons, the Court will grant Plaintiff's Motion to Enforce the Consent Order and for Contempt Sanctions, deny Defendants' Motion to Dismiss, and deny Plaintiff's Motion to Strike.

An appropriate Order will issue.


August 4, 2008                    _____/s/_____
Alexandria, Virginia                       James C. Cacheris
                                 UNITED STATES DISTRICT COURT JUDGE