IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

BUFFALO WINGS FACTORY, INC.,    )
                                )
      Plaintiff,                )
                                )
           v.                   )      1:07cv612 (JCC)
                                )
MOHD, et al.,                   )
                                )
      Defendants.               )

**M E M O R A N D U M   O P I N I O N**

This matter is before the Court on Plaintiff's Motion
for Additional Contempt Sanctions, to Close the Infringing
Restaurant, and to Imprison Defendants For Their Continuing
Failure to Comply With the Court's Consent Order and August 4,
2008 Contempt Order ("Pl.'s Mot.").  For the reasons stated
below, the Court will **grant** the Motion in part and **deny** it in
part.

## I.  Background

The facts as stated in the First Amended Complaint are
as follows.  Since 1990, Buffalo Wings Factory, Inc.
("Plaintiff"), a Virginia corporation, has operated four
restaurants in Sterling, Ashburn, Chantilly, and Reston, Virginia
that specialize in the sale and marketing of "buffalo wings."
Plaintiff has a valid and existing trademark registration for the
mark "Buffalo Wings Factory" (the "Factory Mark") and has spent

1

approximately $80,000 per year since 2000 advertising its restaurants and the Factory Mark in local newspapers and print advertising, and on local radio stations.  Plaintiff's restaurants and the Factory Mark have achieved critical acclaim and popularity, helping Plaintiff generate a customer base that extends into West Virginia and Maryland and sales revenues of $5-6 million per year.

Defendants Saleem Mohd ("Saleem") and Naeem Mohd ("Naeem") worked for Plaintiff between 1996 and 2004.  On or about September 1, 2005, Saleem and Naeem opened a restaurant in Herndon, Virginia doing business under the name "Buffalo Wing House."  The Complaint alleged that Saleem and Naeem acted as employees, owners, and operators of this restaurant.  Defendant Charbroil Grill of Worldgate, Inc. ("Charbroil Grill") allegedly co-owns the restaurant, with Sudha Chopra ("Chopra") serving as its president and Saleem as its secretary.

According to Plaintiff, Saleem, Naeem, and Charbroil Grill (collectively, "Defendants") selected "Buffalo Wing House" as the name for their restaurant because it was substantially similar to the name of Plaintiff's restaurants and would cause customer confusion.  Plaintiff further alleges that Defendants have used similar slogans and advertising channels as Plaintiff for the same purpose.  For example, Plaintiff has used the slogan "Buffalo Wing Factory - Home of the Flatliner" in its newspaper

2

and print advertising and on its menus, while Defendants have used "Buffalo Wings House – House of the Inferno" in the same types of newspaper and print advertising and on their menus.

The alleged similarities and deliberate attempts to cause customer confusion do not end there.  Defendants' first menu was substantially similar to Plaintiff's with respect to layout, daily specials, and sauces.  In addition, Plaintiff's and Defendants' facilities have several features in common: they are all located in strip malls in the Dulles Corridor, they are all casual dining restaurants with sports themes, large televisions, bars, and sit-down dining areas, and they all have similar furniture, color-schemes, and neon signs.

Plaintiff contends that these numerous similarities – adopted willfully and intentionally by Defendants – have caused substantial and continuous customer confusion.  Plaintiff cites several examples of this confusion, including: (1) customer statements to Plaintiff's employees regarding Plaintiff's Herndon restaurant – even though it is Defendants, not Plaintiff, who have a restaurant in Herndon; (2) questions from customers at Plaintiff's restaurants regarding promotions run by Defendants' restaurant; (3) attempts by customers to use Defendants' coupons at Plaintiff's restaurants; and (4) confusion between Defendants' restaurant and Plaintiff's restaurants on the part of Defendants' vendors and the Miller beer distributor for Fairfax County.

Plaintiff also argues that Defendants themselves have intentionally furthered this confusion by telling Plaintiff's customers, employees, and third party vendors that Defendants' restaurant is the same as Plaintiff's.

Finally, Plaintiff asserts that Defendants have stolen Plaintiff's confidential information and misappropriated it as their own.  Defendants have hired several of Plaintiff's former employees, including the former general manager of one of Plaintiff's restaurants, in the hope of acquiring the confidential information those employees possess and to confuse customers.  In addition, the creation and ingredients of twenty of Defendants' thirty sauces are Plaintiff's trade secrets that were copied by Saleem and Naeem for use in Defendants' restaurant, Buffalo Wings House.

In response to these alleged acts, Plaintiff filed a Complaint against Defendants on June 22, 2007, claiming: (1) false advertising and false designation of origin in violation of the Lanham Act; (2) trademark infringement under Va. Code § 59.1-92.1; (3) misappropriation of trade secrets; (4) tortious breach of fiduciary duty; (5) unfair competition; (6) violation of the Business Conspiracy Act under Va. Code §§ 18.2-500 *et seq.*; and (7) tortious interference with actual and prospective contracts and business relationships.  Defendants moved to dismiss the Complaint on July 20, 2007.  On October 1, 2007, Judge Gerald

4

Bruce Lee of this Court granted Defendants' Motion to Dismiss as to Count I on the ground that Plaintiff did not plead a set of facts supporting its allegation that Defendants' use of the "Buffalo Wing House" mark was likely to confuse consumers.  Judge Lee then granted Plaintiff leave to amend its Complaint.

On October 15, 2007, Plaintiff filed its First Amended Complaint, bringing the same claims as the original Complaint but adding more factual allegations.  Defendants moved to dismiss the First Amended Complaint on October 25, 2007.  In an Opinion dated December 12, 2007, this Court denied Defendants' Motion to Dismiss.  The Court later set a trial date of March 3, 2008.  Instead of proceeding to trial, the parties resolved the case by mutual agreement to the terms of a settlement agreement.  On March 3, pursuant to the parties' wishes, the Court entered a Consent Order ("CO") that included both monetary terms and injunctive provisions requiring Defendants to change their trademarks, tag lines, signs, menu and product offerings, and to drop several of their copied sauces.  The CO required Defendants to complete those changes by June 1, 2008 (the "Conversion Date"), which was also the date on which Defendants' first installment payment, in the amount of $30,000, was due.  On April 29, 2008, Defendants filed a Motion for Relief from Judgment under Fed. R. Civ. P. 60, seeking to have the CO set aside.

After taking evidence on the matter, the Court denied that Motion and confirmed the CO in an Opinion and Order dated June 23, 2008.

On June 13, 2008 – prior to the Court's decision confirming the CO but after the Conversion Date – Plaintiff's counsel sent a letter to Defendants' counsel accusing Defendants of continuing to violate the CO and demanding both compliance and an accelerated payment of $150,000.  A second letter was sent to defense counsel on June 25, 2008, stating that Plaintiff would file a motion for contempt sanctions and to enforce the CO unless Defendants met their obligations by July 2, 2008.  On July 3, 2008, Plaintiff filed a Motion to Enforce the Consent Order and for Contempt Sanctions, accusing Defendants of failing to comply with their obligations under the CO.  Defendants then filed a Motion to Dismiss Plaintiff's Motion on July 17, 2008.  Plaintiff responded on July 25, 2008 with a Motion to Strike Defendants' Motion.  In an Order dated August 4, 2008, this Court granted Plaintiff's Motion to Enforce and Motion for Contempt Sanctions, denied Defendants' Motion, and denied Plaintiff's Motion to Strike.

Since the entry of the Contempt Order, Plaintiff claims that Defendants still have made no significant efforts to comply with their obligations under the Consent Order.  Plaintiff alleges that Defendants are still violating virtually all of the payment, trademark, and re-naming provisions of the Consent

Order, and that Defendants' paper menus, the products they offer, and their website still include "virtually all of the menu items and infringing marks and slogans the removal of which was required by the Consent Order . . . ." Pl.'s Mot. at 2, ¶¶ 5-7. Moreover, Plaintiff claims that Defendants have not made any payments as required by the CO and have not signed the promissory note as required under the CO and Contempt Order. *Id*. at ¶¶ 8-9.

Plaintiff asks for relief in several forms. Plaintiff requests: (1) judgment in the amount of $150,000 pursuant to an acceleration of the payments required in ¶ 12 of the CO; (2) attorneys' fees, costs and expenses incurred in defending and enforcing the CO; (3) that Defendants abide by the CO's requirements as to trademark, advertising and product offering restrictions; (4) $9,000 per week as a civil sanction for past weeks during which Defendants violated the CO – as granted in the Contempt Order – and continuing into the future for further violations; (5) that the infringing restaurant be closed for at least 60 days and until the Defendants comply with the CO; (6) that defendants Saleem Mohd and Naeem Mohd be enjoined from working or obtaining payment from the restaurant until Defendants comply with the CO; (7) that the Court order the commitment of defendants Saleem Mohd and Naeem Mohd to prison until they have complied with the Court's Orders; and (8) that SS Herndon, Inc. ("SS Herndon"), Jaji Shah, and Seema Saleem (collectively,

7

"Respondents") - who Plaintiff claims are the alter egos of Charbroil Grill - be held jointly and severally liable for past and future contempt sanctions and payments due.  These matters are now before the Court.

## II. Standard of Review

To hold a party in civil contempt, the following four elements must be established by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
> (2) . . . that the decree was in the movant's "favor";
> (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and
> (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citing *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir. 1994)).  A court may "impose sanctions for civil contempt 'to coerce obedience to a court order or to compensate the complainant for losses sustained as a result of the contumacy.'" *In re General Motors Corp.*, 61 F.3d 256, 258 (4th Cir. 1995) (quoting *Connolly v. J.T. Ventures*, 851 F.2d 930, 932 (7th Cir. 1988) and citing *United States v. United Mine Workers of Am.*, 330 U.S. 258, 303-04 (1947)).  Although courts have broad discretion in fashioning remedies for civil contempt, which include "ordering the contemnor to reimburse the complainant for losses

8

sustained and for reasonable attorney's fees," remedies and sanctions must be limited to either a remedial or compensatory purpose. *Id.* at 259; *see also Carbon Fuel Co. v. United Mine Workers of America*, 517 F.2d 1348, 1349 (4th Cir. 1975) (explaining that "[c]ivil contempt . . . is 'wholly remedial[,]' serves only the purpose of a party litigant, and is intended to coerce compliance with an order of the court or to compensate for losses or damages caused by noncompliance") (internal quotations omitted). Otherwise, a court, by venturing beyond the realm of compensatory or coercive remedies, i.e., imposing punitive fines or sanctions "intended to vindicate the authority of the court," *Carbon Fuel*, 517 F.2d at 1349, will transform the proceeding into one for criminal rather than civil contempt. *See id.* at 1350 (giving no weight to fact that "proceedings were begun and designated as a civil contempt proceeding," and instead holding that "[t]he nature of the fine imposed determines the character of the proceedings without regard to the characterization of the proceedings, either procedurally or substantively, as made by the parties themselves") (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

## III. Analysis

Plaintiff states that no Defendant or Rule 65(d) Respondent has taken action to comply with the Consent Order or the August 4 Contempt Order. At the hearing on this Motion,

Defendants and Respondents claimed that they had begun the process of making several changes to the infringing restaurant, including removing their menu from the internet, changing the restaurant's sign, and proposing various changes to the menu.  On the date of the motion hearing, however — more than six months after the entry of the consent order — it was apparent that the infringing restaurant was still violating numerous provisions of the original Consent Order related to menu choices and other food items.[1]  Defendants did not sign the required promissory note.  They did not make all, or even many of, the required changes to the infringing restaurant.  Indeed, until the hearing on the instant motion, no defendant party, including the newly-added Rule 65(d) Respondents, claimed to have taken *any* action regarding the Consent Order ("CO") or this Court's prior finding of contempt.  The Defendants' and Respondents' violations are legion.  *See* Pl.'s Reply Mem. at 3.  As will be explained in greater detail below, the Court has no difficulty finding that Defendants and Respondents are presently violating the CO and the

---

[1] Subsequent to the motion hearing, Defendants submitted a Supplemental Filing purporting to show various changes made to the restaurant and menu in recent weeks, including covering the word "Buffalo" on the sign for the restaurant with plastic sheeting, so that it now reads "Wings House."  As Plaintiff points out in its Response, the new name of the restaurant does not comply with the CO.  This fact alone would be sufficient to justify continuing contempt sanctions.  Plaintiff also alleges that various violations of the injunctions are ongoing and that a number of changes to the menu still violate the terms of the CO.  The Court will not be able to rule on the issue of compliance, and the point at which compliance occurred, until it takes evidence on the issue at a separate hearing.  As of now, Defendants and the Respondent parties remain in contempt.

original Contempt Order.  The major questions before the Court concern what additional contempt sanctions are appropriate for Defendants, and what civil sanctions, if any, can and should be levied on the Rule 65(d) Respondents.

A. <u>Background — Corporate Structure</u>

In response to Plaintiff's Motion for Additional Contempt Sanctions, Defendants Saleem Mohd, Naeem Mohd, and Charbroil Grill continue to claim that Plaintiff sued the wrong parties, because Charbroil Grill never owned Buffalo Wings House. Defs.' Mem. in Opp'n at 3.  Saleem Mohd and Naeem Mohd claim that, because Charbroil Grill has never owned the restaurant at issue, it cannot comply with the provisions of the CO.  In light of Charbroil Grill's purported inability to comply, the Mohds argue that they should not be imprisoned for contempt. Counsel for the Mohds states that if they comply with the portions of the CO they are able to comply with - by ceasing to wear the restaurant's shirts and making the now-forbidden sauces - they will become unemployed.  *Id*. at 5-6.  The crux of the Defendants' argument is that Plaintiff's action should have been directed in the first instance against SS Herndon and its owners.  The officers and directors of SS Herndon (also known at various times as S.S., Inc.) are Jaji Shah and Seema Saleem, who are also the officers and directors of Charbroil Grill.  Jaji Shah is also the

principal shareholder of Charbroil Grill, and Jaji Shah and Seema Saleem jointly own SS Herndon.

To describe the corporate structure used by the Defendants and Rule 65(d) Respondents as confusing would be an understatement.  The following are the parties involved in the infringing restaurant, Buffalo Wings House: (1) Saleem Mohd, one of the original defendants; (2) Naeed Mohd, also one of the original defendants; (3) Charbroil Grill, one of the original defendants and, until at least recently, the holder of the ABC license used at Buffalo Wings House; (4) Jaji Shah, an officer and director of both Charbroil Grill (of which he is the principal shareholder) and SS Herndon (of which he is a part-owner), which now claims to own Buffalo Wings; (5) Seema Saleem, also an officer and director of both Charbroil Grill and SS Herndon (of which she is a part owner); and (6) SS Herndon, also erroneously called S.S., Inc. in various corporate documents; SS Herndon now claims to be the owner of the Buffalo Wings restaurant.  The latter three - Jaji Shah, Seema Saleem, and SS Herndon - were all named as Rule 65(d) Respondents in Plaintiff's Motion for Additional Contempt Sanctions.  Federal Rule of Civil Procedure 65(d)(2) states that an injunction or a restraining order binds the following persons who have received actual notice of the order or injunction: "(A) the parties; (B) the parties' officers, agents, servants, employees, and attorneys; and (C)

12

other persons who are in active concert or participation with anyone described in Rule 65(d)(2)(A) or (B)."

SS Herndon, added to the case as a Rule 65(d) respondent along with Jaji Shah and Seema Saleem, acknowledges that it owns and operates Buffalo Wings House, but states that it has never been a party to this matter until service of Plaintiff's Motion for Additional Contempt Sanctions.  It claims that, while it employs Saleem Mohd as a cook and Naeem Mohd as a manager, neither Mohd defendant owns any equity interest in, or is an officer or director of, SS Herndon.  Rule 65(d) Resp'ts' Mem. in Resp. at 1-2.  It claims that SS Herndon has been the owner of Buffalo Wings House since it purchased the assets of Charbroil Grill in 2004.  Its assertion that neither Mohd defendant has any ownership interest in the restaurant at present may be technically correct, but the Court notes that the Sales Agreement between the two corporations lists Saleem Mohd as a principal of S.S., Inc., the purchaser.  *See id.*, Ex. A.

It appears that in 2004 a business organization properly called SS Herndon, but also improperly calling itself S.S., Inc., bought the assets and goodwill of Charbroil Grill, and then began running the restaurant at issue in this case.  The Court notes that at least part of the confusion arose because the corporation holding the ABC license for the restaurant was, at least until recently, Charbroil Grill.  Moreover, Jaji Shah, an

officer and director of both corporations, appears to have believed that the two were functionally one corporation, or that Charbroil Grill was a subsidiary of SS Herndon.  He and the other defendants did not treat the two corporations as separate entities.  Tax filings and other business filings were made under alternate names.  Corporate formalities, such as the holding of an annual meeting, were rarely respected.  Counsel for Defendants acknowledges that there was confusion about the proper corporate name of S.S., Inc./SS Herndon, for which Defendants blame their previous lawyer, a Mr. Mooradian.  Defs.' Mem. in Opp'n at 2-4. They also acknowledge that the restaurant's ABC license was issued to Charbroil Grill, for which they also blame Mr. Mooradian.  *Id.* at 3-4.  Looking at the deposition transcripts, it seems fair to say that at various times the officers, directors, and employees of both corporations would have been hard-pressed to explain which corporation owned what, and who worked for whom.

It will be helpful to think of Buffalo Wings as the venture of Jaji Shah and Seema Saleem, who run both the Charbroil Grill corporation and SS Herndon.  They claim that since Charbroil Grill, which never owned the restaurant, was the party named in the CO and Contempt Order, Charbroil Grill is not properly a party to the CO or the Contempt Order and so cannot be responsible for compliance.  Additionally, they assert that,

because SS Herndon was not a party to the CO or the Contempt
Order (though it is the actual owner of the infringing
restaurant), SS Herndon also cannot be charged with violating the
CO or the Contempt Order, since it had nothing to do with the
preceding litigation.

Plaintiff responds by claiming that, regardless of the
purported asset sale, both Charbroil Grill and SS Herndon jointly
own and operate the infringing restaurant.  Plaintiff suggests
that Charbroil Grill should still be held to the CO and Contempt
Order, and that the Court should find that the Respondents also
were bound by the CO and Contempt Order under an alter ego theory
or under Rule 65(d).

B. Alter Ego Theory

Plaintiff argues that the Court should employ the alter
ego doctrine to hold the corporations liable for each other's
actions, since they acted jointly in owning and operating the
infringing restaurant.  In Virginia, the burden of proof rests
upon the party seeking to pierce the veil, and a court can pierce
the corporate veil only upon a showing that (1) the corporation
was the "*alter ego*, alias, stooge, or dummy" of the other entity;
and (2) "the corporation was a device or sham used to disguise
wrongs, obscure fraud, or conceal crime."  *Cheatle v. Rudd's
Swimming Pool Supply Co.*, 234 Va. 207, 212 (1987).  Other
Virginia cases have defined the second prong more broadly.

15

"'Just when a corporation will be regarded as the adjunct, creature, instrumentality, device, stooge, or dummy of another corporation is usually held to be a question of fact in each case. . . . courts will disregard the separate legal identities of the corporation only when one is used to defeat public convenience, justify wrongs, protect fraud or crime of the other.'" *Beale v. Kappa Alpha Order*, 192 Va. 392, 399 (1951) (quoting *State v. Swift & Co.*, 187 S.W.2d 127, 133 (Tex. Civ. App. 1945)).  In *O'Hazza v. Executive Credit Corp.*, another traditional – i.e., individual-to-corporation – veil-piercing case, the trial court ignored the corporate form and held several individuals personally liable.  246 Va. 111 (1993).  In overturning the trial court's decision to pierce the veil, the Virginia Supreme Court explained that individuals must be shown to have "used the corporation to evade a personal obligation, to perpetrate a fraud or a crime, or to gain an unfair advantage" in order for the court to pierce the corporate veil.  *O'Hazza*, 246 Va. at 115 (citing *Lewis Trucking Corp. v. Commonwealth*, 207 Va. 23, 31 (1966)).

This is a close case for veil-piercing under *Beale*, *Cheatle*, and *O'Hazza*.  Plaintiff argues that SS Herndon, in running its infringing restaurant, abused the corporate form of Charbroil Grill to defeat the public convenience by using Charbroil Grill's existing ABC license.  There is also some

16

evidence suggesting that SS Herndon may have used the separate entity Charbroil Grill corporation, which its officers repeatedly asserted owned and ran the infringing restaurant, to frustrate the Plaintiff in this litigation.  While claiming that Charbroil Grill owned and operated the infringing restaurant, SS Herndon's officers and directors never filed a fictitious name registration with the State Corporation Commission or the Virginia circuit court alerting the public to the identity of the restaurant's true owners.

The Respondents suggest that veil piercing can only occur vertically, from an individual to a corporation or vice versa, or from a parent to a subsidiary corporation.  Virginia law, however, allows for the possibility that affiliates will be alter egos of each other.  *See C.F. Trust, Inc. v. First Flight Ltd. P'ship*, 111 F. Supp. 2d 734, 741 n. 17 (2000).  Affiliate-to-affiliate veil piercing is, no doubt, a less frequently used species of alter ego theory.  The animating principle behind piercing the corporate veil in a more traditional context, though, also supports affiliate-to-affiliate piercing when the corporate form of affiliate corporations is abused to evade a personal obligation, commit an injustice, gain an unfair advantage, defeat public convenience, disguise wrong, or perpetrate a crime or fraud.

While the issue is close, this case does not present the type of circumstances in which affiliate-to-affiliate veil piercing would be appropriate, especially when the interests of justice can be served by an alternate finding that the injunctions in the CO bind Respondents under Rule 65(b).  *See infra* subsection III.C.  Here, the Defendants and Respondents abused the corporate form, operating their restaurant with a clear disregard of corporate formalities.  However, the abuse appears to have been the result of mistake and oversight rather than a scheme designed to defraud, evade an obligation, defeat public convenience, or disguise a wrong.  Virginia law requires not just the wrongful use of the corporate form, but also that the abuse of form is directed at perpetrating another wrong.  This is not to say that piercing the corporate veil requires a separate element of scienter; given the second prong of the inquiry, however, it would be difficult to pierce the veil in this case without evidence of a knowing misuse of the corporate form.

C. Rule 65(d)

Plaintiff also argues that SS Herndon, Jaji Shah and Seema Saleem should be held jointly and severally liable for past and future contempt sanctions because they are "persons who are in active concert or participation with" the Defendants, and have actual notice of the CO, under Rule 65(d).  The CO contained a

18

number of provisions.  One required a series of payments from the
Defendants.  The other provisions included a series of
injunctions designed to bring the infringing restaurant into
compliance.  Rule 65(d) governs the extent to which these
injunctions apply.

Rule 65(d) sets out two prerequisites for a person or
entity to be bound by an injunction.  First, those potentially
bound must have actual notice of the injunction at issue.  Fed.
R. Civ. P. 65(d)(2).  The Rule then allows a previously issued
injunction to bind parties on notice "who are in active concert
or participation" with the parties originally bound by the
injunction.  *Id*.  A court cannot hold a non-party entity or
person, even one with notice, in contempt until the court
determines that the entity or person is in active concert or
participation with one of the original parties bound by the
injunction.  *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395
U.S. 100, 112 (1969).  The Rule "is derived from the common-law
doctrine that a decree of injunction not only binds the parties
defendant, but also those identified with them in interest, in
'privity' with them, represented by them or subject to their
control."  *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14 (1945).

Here, SS Herndon, Jaji Shah, and Seema Saleem were
properly joined to the contempt proceeding as Rule 65(d)
Respondents.  Plaintiff convincingly demonstrates that Jaji Shah

19

had actual knowledge of the Consent Order since at least April 21, 2008. On that date, Shah signed an affidavit as the "President of SS inc. [sic] owner of Buffalo Wing House and one of the Defendants" [99-2]. *See* Pl.'s Mem. in Supp. at 8. Plaintiff also demonstrates that Seema Saleem had knowledge of the Order confirming the CO by July 25, 2008 at the latest, when counsel discussed the CO and Contempt Order with her during a deposition. *See id.* at 9; Ex. 5. Counsel for SS Herndon contends that Mr. Shah's knowledge does not automatically translate into knowledge on the part of SS Herndon. This is difficult for the Court to credit, seeing as Mr. Shah is President, director, and co-owner of SS Herndon. It is also incorrect under Virginia law, which imputes the knowledge of officers and directors substantially in control of a corporation to that corporation. *See Horne v. Holley*, 167 Va. 234, 240 (1936); *Atl. Trust & Deposit Co. v. Union Trust & Title Corp.*, 69 S.E. 975, 977 (Va. 1911); *see also J.W. Woolard Mech. & Plumbing, Inc. v. Jones Dev. Corp.*, 235 Va. 333, 336-37 (1988); *cf. Phoenix Sav. & Loan, Inc. v. Aetna Cas. & Sur. Co.*, 381 F.2d 245, 250 (4th Cir. 1967); *Poth v. Russey*, 99 Fed. Appx. 446, 457 (4th Cir. 2004). Thus, Plaintiff has shown that SS Herndon and Shah had knowledge of the CO since at least April 21, 2008 – several weeks before the Conversion Date. Seema Saleem had knowledge of the CO and Contempt Order since at least July 25, 2008.

The second inquiry asks whether any of the named
Respondents are "in active concert or participation" with the
parties originally bound by the injunction.  Here, the injunction
explicitly bound all named Defendants.  Even if Charbroil Grill
is correct that it did not have the legal power to effect the all
the changes required by the injunction because it was not the
record owner of Buffalo Wings, it was subject to the injunctions
contained in the CO, as were both Saleem Mohd and Naeem Mohd.
The Mohds made possible the start-up of the infringing
restaurant.  They managed the restaurant and prepared infringing
food items, thus violating paragraph 4 of the CO.  Even if the
Mohds did not have the legal power to make all of the changes
required by the CO, they were bound to comply with any provisions
of the CO with which they could comply.  *See Maness v. Meyers*,
419 U.S. 449, 458-59 (1975) (explaining that persons subject to
court orders that they believe to be wrongful cannot make private
determinations of the law, but rather must comply and appeal).
Defendants' counsel appears to have conceded that the Mohds *could*
comply with portions of the CO, but that doing so would work a
hardship on them.  Defs.' Mem. in Opp'n at 6-7.  The Mohds have
wrongfully refused to comply, and the Respondents actively
participated with them in their flouting of the CO.  Here, Jaji
Shah and SS Herndon (and, later, Seema Saleem) had knowledge of
the CO.  Nonetheless, they continued to employ and pay two

21

parties they knew were legally bound to immediately cease infringing the CO, with the expectation that they would continue to violate it.  Not only did they aid the Mohds in violating the CO, but they have used their own mistakes as to corporate structure to attempt to escape liability.  By continuing to employ and pay the Mohds, they were acting in direct concert with parties they knew to be bound by the CO.

Courts have granted injunctive relief against persons knowingly in complicity with another party in its violation of a contract not to compete, s*ee Day Companies v. Patat*, 440 F.2d 1343 (5th Cir. 1971) (per curiam), and, under Rule 65(d), against an unpaid volunteer who helped a motel manager discriminate in violation of the Civil Rights Act of 1964, *see Lance v. Plummer*, 353 F.2d 585 (5th Cir. 1965).  In *Multi-Channel TV Cable Co. v. Charlottesville Quality Cable Operating Co.*, 22 F.3d 546 (4th Cir. 1994), the Court held that under Rule 65(d) a number of multi-dwelling units ("MDUs") in a cable television dispute could be bound by an injunction even though the complaint in the litigation only named one MDU, when the same company managed all four affected MDUs and the president of that company was also a partner in the MDUs.  Here, Jaji Shah and SS Herndon knew about the CO but continued to employ the Mohds, who they knew would violate provisions of the CO, to the profit of Jaji Shah and SS Herndon.

SS Herndon claims that the mere fact of an ownership relationship between two corporations is not enough to permit the application of an injunction, citing *Int'l Controls & Measurements Corp. v. Watsco, Inc.*, 853 F. Supp. 585 (N.D.N.Y. 1994). The corporate structure in *Int'l Controls* is significantly different from that in place here. In that case, one company owned 80% of another, but allowed its subsidiaries to essentially run themselves. Here, SS Herndon paid the Mohds directly, knowing they would violate the CO and employing them to run a restaurant in a manner they knew would violate the CO. Moreover, *Int'l Controls* deals with the test for agency under 65(d), not the test for "active concert and participation." Here, the parties were acting in concert in an activity directly counter to the injunction, and continued to do so after the injunction was in place. *See G&C Merriam Co. v. Webster Dictionary Co.*, 639 F.2d 29, 35 (1st Cir. 1980) (citing *Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 14-15 (1945)).

The Court will grant Plaintiff's request to hold SS Herndon in contempt under Rule 65(d). Clear and convincing evidence demonstrates that SS Herndon knew of the CO in favor of Plaintiff and continued to actively participate with Naeed Mohd and Saleem Mohd in violating the CO. SS Herndon knew of its violation of the terms of the CO, and Plaintiff has suffered harm as a result. *See Ashcraft*, 218 F.3d at 301 (4th Cir. 2000).

23

The Court will also find Jaji Shah and Seema Saleem, both of them officers, directors, and co-owners of SS Herndon, in contempt. *See Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d 133, 137 (4th Cir. 1994). The court in *Kittinger* quotes *Wilson v. United States*, 221 U.S. 361, 376 (1911) for the proposition that corporate officers who fail to take appropriate action in performing a corporate duty may also be punished for contempt. As in *Kittinger*, neither Shah nor Saleem, both of whom had knowledge of the CO and the power to force the infringing restaurant to comply with the CO, took appropriate action to ensure compliance with the CO. 38 F.3d at 137. Indeed, the Court heard testimony showing that Jaji Shah actively flouted the CO by telling one employee who raised concerns about the continuing violations that they were "none of his business." Mot. Hearing Trans. at 95 (testimony of Naeem Mohd). Clear and convincing evidence shows that both Shah and Saleem had knowledge of the CO in favor of Plaintiff and its terms, and that they knowingly violated the CO by refusing to take action to stop the infringing activities. Both Shah and Saleem furthered those activities by allowing their corporation to pay the Mohds for their infringing behavior, all the while knowing that such action injured the Plaintiff. *Id.*

Respondents SS Herndon and Jaji Shah have been in contempt of the CO since the Conversion Date of June 1, 2008.

24

Seema Saleem has been in contempt of the CO since July 25, 2008. All three will be required to comply immediately with the injunctory terms of the CO.  SS Herndon and Jaji Shah will be jointly and severally liable for civil contempt sanctions in the amount of $9,000 per week dating from the Conversion Date of June 1, 2008.  Seema Saleem will be jointly and severally liable for the $9,000 weekly payments dating from July 25, 2008.  The payments will continue until Respondents meet their obligations under the CO.  In addition, the Respondents will also be jointly and severally liable, along with the Defendants, for any reasonable attorneys' fees Plaintiff has incurred in bringing this motion for additional contempt sanctions.  Jaji Shah and SS Herndon will also be jointly and severally liable for any reasonable attorneys' fees Plaintiff incurred in bringing its original Motion for Contempt.

D. <u>Additional Contempt Sanctions - Defendants</u>

Plaintiff asks the Court to impose additional and more severe civil contempt sanctions on the Defendants and Respondents for their continuing refusal to comply with the Contempt Order and the CO.  As part of these additional sanctions, they request the imprisonment of the Mohds until they have complied with both previous Orders, and they request the closing of the infringing restaurant for at least sixty days and until Defendants and

Respondents have complied with both previous Orders, among other requests.

   1. Finding of Contempt

        A district court has the inherent authority to hold a party in civil contempt to either enforce compliance with a court order or to compensate another party for damages or loss. *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949).  Thus, the purpose of civil contempt is remedial and compensatory.  *Id*.  To hold a party in civil contempt, *Ashcraft* requires that the following four elements be established by clear and convincing evidence:

> (1) the existence of a valid decree of which the alleged contemnor had actual or constructive knowledge;
> (2) . . . that the decree was in the movant's "favor";
> (3) . . . that the alleged contemnor by its conduct violated the terms of the decree, and had knowledge (at least constructive knowledge) of such violation; and
> (4) . . . that [the] movant suffered harm as a result.

*Ashcraft v. Conoco, Inc.*, 218 F.3d 288, 301 (4th Cir. 2000) (citing *Colonial Williamsburg Found. v. Kittinger Co.*, 792 F. Supp. 1397, 1405-06 (E.D. Va. 1992), *aff'd*, 38 F.3d 133, 136 (4th Cir. 1994)).

        We have no difficulty finding all four elements established by clear and convincing evidence in this case.  In short, little has changed since this Court's previous finding that Plaintiff established the Defendants' contempt by clear and convincing evidence.  *See* Mem. Op. at 14-16.  Defendants continue

to violate numerous provisions of the CO.  Their attempts to comply have been, thus far, late, half-hearted, and insufficient. While the Defendants and Respondents claim to have suggested to the Plaintiff menu changes to bring the menu into compliance, by the date of the hearing on the instant motion, Defendants and Respondents were still serving most of the offending menu items at Buffalo Wings House.

    2. <u>Sanctions for Civil Contempt</u>

      For the reasons stated in this Court's earlier Memorandum Opinion on Contempt, Defendants will be subject to the prior civil contempt sanctions outlined in this Court's Order dated August 4, 2008.  Defendants will be required to (1) sign the promissory note furnished by the Plaintiff, in accordance with paragraph 12 of the CO; (2) pay Plaintiff the sum of $30,000, due on June 1, 2008, in accordance with paragraph 12 of the CO; and (3) immediately stop infringing the terms of the CO. Defendants agreed to pay these sums in return for Plaintiff dropping its lawsuit accusing them of infringing Plaintiff's trademarks and stealing Plaintiff's trade secrets.  The Mohds were instrumental in setting up the infringing restaurant. Regardless of whether Charbroil Grill was the record owner of Buffalo Wings House at the time the CO was entered into, the Mohds were both properly subject to the CO and agreed to pay for the damage they caused to the Plaintiff.  The corporate structure

27

arguments advanced by Charbroil Grill and Respondents do not vitiate the CO as it applies to the Mohds, who are jointly and severally liable for the promissory note and payments in paragraph 12 of the CO.

Likewise, Charbroil Grill is also liable for the promissory note and payments outlined in paragraph 12 of the CO. Whether or not Charbroil Grill was the record owner of the infringing restaurant at the time the CO was entered into, clear and convincing evidence shows that Charbroil Grill was actively working with the restaurant, its owners, and the Mohds to operate the infringing restaurant. Charbroil Grill wrongfully held an ABC license used by the infringing restaurant. In exchange for the withdrawal of the Plaintiff's lawsuit, Charbroil Grill agreed to pay for the damage it and the Mohds caused to the Plaintiff. That agreement is binding regardless of whether Charbroil Grill could legally force the infringing restaurant to comply with every injunction ordered by the Court.

At this time, the Court will not unilaterally accelerate the payments due under the CO, as outlined in the promissory note. Defendants will be required to sign the promissory note immediately. The promissory note contains the terms of the payment agreements; further action may be necessary if the terms of the note are ignored.

3. Imprisonment

In addition, Plaintiff asks for the imprisonment of Saleem and Naeem Mohd as an appropriate sanction for civil contempt. *See* Pl.'s Mot. at 4, subsection F. A fine or imprisonment may be imposed on the contemnor in order to coerce him to do what he has refused to do. *See Penfield Co. of Cal. v. SEC*, 330 U.S. 585, 590 (1947). Imprisonment is considered a civil contempt remedy where it serves a remedial purpose. Imprisonment is considered criminal contempt where it is used punitively, to vindicate the authority of the court. *See United Mine Workers of Am v. Bagwell*, 512 U.S. 821, 826-28 (1994). Criminal contempt requires a criminal conviction and the constitutional protections afforded to criminal defendants. *Id*. So long as it is used civilly — to coerce the Defendants to comply with their obligations — the Court could order the imprisonment of defendants Mohd and Mohd.

The Court finds that it has the power to imprison the Mohds. While it may consider imprisonment as a future remedy should Defendants and Respondents not bring the infringing restaurant into compliance, though, the Court also finds that imprisonment is not proper at this time, in light of the specific injunction the Court will enter against the Mohds' continued employment (see below at subsection III.D.4). The record owner of the infringing restaurant is a party to the injunctions

29

contained in the CO, and has been found in contempt for violating them.  Before approving the more drastic remedy of imprisonment, the Court will give Respondents the opportunity to cure the numerous violations identified in the CO.  Future violations may result in the imprisonment of all or any of the Mohds, Jaji Shah, or Seema Saleem.

    4. <u>Injunction as to the Mohds</u>

       Plaintiff also seeks to have the Mohds enjoined from working or obtaining payment from the infringing restaurant until the Defendants and Respondents comply with the CO.  The Court will grant this request in light of the Mohd's continuing, knowing violations of the CO.  Enjoining the Mohds from working at, or receiving payments from, the infringing restaurant will not serve as a punishment such that it could be deemed a criminal contempt measure.  Instead, it will ensure at least partial compliance with the CO, since the Mohds will no longer be creating the banned chicken wing sauces and will no longer be able to prepare any other food items that violate the CO. Counsel for the Mohds argues that enjoining them from working at the restaurant will cause hardship to them as the infringing restaurant provides their livelihood.  This plea is deficient in light of the circumstances of this case.  The Mohds have been proper parties to the CO from the date of its execution, are fully subject to both the CO and the Contempt Order, and have

been working in violation of this Court's explicit orders for
months.

    5. <u>Closing the Restaurant</u>

        The Plaintiff also asks that the infringing restaurant
be shut down for at least 60 days and until the Defendants and
Respondents comply with the CO.  Pl.'s Mot. at 4, subsection E.
Rule 65(d) Respondent SS Herndon correctly points out that
shutting the restaurant down for a determinate amount of time,
without giving the Defendants or the Respondents the opportunity
to re-open the restaurant as soon as the contempt is purged,
constitutes a criminal sanction, not a civil sanction.  *See*
*Bagwell*, 512 U.S. at 833-34.  As such the remedy is
inappropriate.

        Whether the Court can order the restaurant to shut down
until the Defendants comply with the CO presents another
contested issue.  In support of their argument to shutter the
infringing restaurant, Plaintiff cites *Jakes, Ltd., Inc. v. City
of Coates*, 356 F.3d 896, 898-99 (8th Cir. 2004), in which the
District Court ordered the defendant, who operated a nude dancing
hall, to shut the business down and reopen it only when the
business complied with the relevant order.  SS Herndon notes that
the appellate court in *Jakes* did not address whether the closure
of the restaurant was permissible, instead reversing part of the
contempt decision on other grounds.  The *Jakes* court, however,

31

did not suggest that the district court's order to close the offending business was in any way improper.  Counsel for SS Herndon has pointed to no authority suggesting that a district court cannot order the closure of a business as civil contempt sanctions.

Absent contrary authority, it appears this Court has the ability to order Defendants and Respondents to shut down the restaurant until they comply with the CO and the Contempt Order. Given that the Respondents now have a very real incentive to bring their restaurant into compliance with the CO, the Court finds that shutting down the restaurant is not warranted at this time.

### IV. Conclusion

For the reasons stated above, the Court will **grant in part** and **deny in part** Plaintiff's Motion For Additional Contempt Sanctions.

An appropriate Order will issue.


October 15, 2008                    _____/s/_____
Alexandria, Virginia                James C. Cacheris
                            UNITED STATES DISTRICT COURT JUDGE