IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| BUFFALO WING FACTORY, INC. ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 1:07-cv612 |
| ) | |
| SALEEM MOHD, et al. ) | |
| ) | |
| Defendants; and, ) | |
| ) | |
| SS HERNDON, INC. ) | |
| JAJI SHAH, and ) | |
| SEEMA SALEEM, ) | |
| ) | |
| <u>Additional Rule 65(d) Respondents</u> ) | |

MEMORANDUM IN SUPPORT OF
PLAINTIFF'S EMERGENCY MOTION FOR TRO TO FREEZE THE STOCK
AND ASSETS OF THE DEFENDANTS AND RULE 65(d) RESPONDENTS

COMES NOW, the Plaintiff, Buffalo Wings Factory, Inc. ("Factory" or "Plaintiff"), by and through counsel, pursuant to Rules 65 and 69 of the Federal Rules of Civil Procedure, and respectfully submits this memorandum in support of its motion for a temporary restraining order to freeze the assets and stock of the defendant and respondent corporations, any proceeds from any past or pending sale of their stock or assets, and all assets of the defendants and respondents.

I.  **FACTS AND PROCEDURAL HISTORY**

A.  **Defendants' and Respondents' Substantial Debts To Factory**

Defendants owe Plaintiffs well over $321,000, consisting of the $150,000 settlement debt under the March 3, 2008 Consent Order (Docket No. 97) and an additional $171,000 in contempt sanctions pursuant to this Court's Contempt Orders dated August 4, 2008 (Docket Nos. 141 and 142) and October 15, 2008 (Docket Nos. 194 and 195). Defendants also owe Plaintiffs a large but undetermined amount of additional money for still-to-be-determined amounts of contempt attorneys' fees and litigation costs pursuant to this Court's Contempt Orders dated August 4, 2008 and October 15, 2008 (Docket Nos. 141, 142, 194, and 195).

Respondents Jaji Shah and SS Herndon, Inc. also owe Plaintiff well over $321,000, consisting of $171,000 in contempt sanctions pursuant to this Court's October 15, 2008 Contempt Order (Docket Nos. 194 and 195), plus an additional $150,000 pursuant to the February 2008 Settlement Agreement (Docket No. 104, at ¶¶ 19-20 and Ex. E), which was memorialized in a signed writing through the March 3, 2008 Consent Order (Docket No. 97). Jaji Shah and SS Herndon also owe Plaintiff a large but undetermined amount of additional money for still-to-be-determined amounts of contempt attorneys' fees and litigation costs pursuant to the Contempt Order dated October 15, 2008 (Docket Nos. 194 and 195).

Respondent Seema Saleem owes Plaintiff well over $249,000, consisting of $99,000 in contempt sanctions pursuant to this Court's October 15, 2008 Contempt Order (Docket Nos. 194 and 195), plus an additional $150,000 pursuant to the February 2008 Settlement Agreement (Docket No. 104, at ¶¶ 19-20 and Ex. E; Docket No. 97). Seema Saleem also owes Plaintiff a large but undetermined amount of additional money for still-

to-be-determined amounts of contempt attorneys' fees and litigation costs pursuant to the Contempt Order dated October 15, 2008 (Docket Nos. 194 and 195).

B. **Defendants' and Respondents' Attempts To Evade The Judgments Against Them**

Defendants and Respondents have not paid Factory a single penny of the money that they have been ordered to pay or of the money that they have promised to pay. Rather, Respondents have requested permission to transfer the lease on their most valuable asset, the Buffalo Wings House restaurant (the "Infringing Restaurant"), to a Mr. Vinod Chopra. (Exs. A and B).[1] The potential buyer, Vinod Chopra, is the brother of respondent Seema Saleem, the uncle of Defendant Naeem Mohd and the brother-in-law of Defendant Saleem Mohd. (Exs. C and D). Notice of a new ABC license application posted on the door or window of the Infringing Restaurant names Vinod Chopra and "House of Wing" as the applicants for the new ABC license for the same premises. (Ex. E).

Counsel for respondent SS Herndon, in response to a question about whether the Defendants and Respondents are attempting to sell the Infringing Restaurant, confirmed that the owners of SS Herndon "have investigated what they can get for the restaurant" by selling it. (Ex. B). Respondents Jaji Shah and Seema Saleem are the two shareholders of SS Herndon. (Exs. F1, F2, and F3).

---

[1] Rappaport Companies, the lessor of the property, has declined to volunteer testimony regarding the pending lease assignment request. The declarations of Sean Duffy and Michael Whitticar (Exs. A and B), although hearsay evidence, may properly be considered at a hearing on a preliminary injunction or temporary restraining order. *American Angus Ass'n v. Sysco Corp.*, 829 F. Supp. 807, 816 (W.D.N.C. 1992) ("Hearsay evidence may be considered in a preliminary injunction hearing"). *Accord Lockhart v. Home-Grown Indus. of Ga., Inc.*, No. 3:07-CV-297, 2007 WL 2688551, at *4 n.7 (W.D.N.C. 2007) (citing *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *Commodity Futures Trading Comm'n v. IBS, Inc.*, 113 F. Supp. 2d 830, 850 (W.D.N.C. 2000) (rejecting defendant's argument that affidavits presented as evidence in support of plaintiff's motion for preliminary injunction were insufficient), *aff'd by Commodity Futures Trading Comm'n v. Kimberlynn Creek Ranch, Inc.*, 276 F.3d 187 (4th Cir. 2000)).

Despite requests from Plaintiff's counsel, Defendants and Respondents have not agreed to Factory's request for a voluntary Consent Order requiring Court approval of any transfer, sale or dissipation of the stock or assets of SS Herndon. (Ex. B).

C. **Permitting Defendants and Respondents To Transfer And Dissipate Their Most Valuable Assets Would Cause Factory Irreparable Harm For Which It Has No Adequate Remedy At Law.**

Although the Infringing Restaurant has revenues of approximately $1.2 million per year, according to their own prior testimony and the representations of their counsel, the Defendants and Respondents collectively lack the resources to pay Factory even the $300,000 which they currently owe it over time, much less the over $400,000 that they are likely to owe Factory after an award of attorneys' fees. (Exs. B, G1-G4). The Infringing Restaurant has never generated a profit, and no dividends have ever been paid. (Exs. H1 and H2). Naeem Mohd earns only about $40,000 per year from the Infringing Restaurant, has only $6,000-$10,000 in his bank accounts, and has no personal property with a value of over $100 dollars. (Ex. I1-I3). Saleem Mohd earns only about $30,000 per year from the Infringing Restaurant and has only $10,000-$13,000 in the bank accounts he shares with Seema Saleem. (Exs. J1-J3). Charbroil Grill of Worldgate, Inc. is an empty shell corporation which the Defendants and Respondents claim has no assets other than its illegal ABC liquor license. (Ex. K).

Thus, Factory will suffer irreparable harm for which there is no adequate remedy at law if the Defendants or Respondents are permitted to sell or transfer the stock or assets of SS Herndon or the Infringing Restaurant, or the proceeds thereof. Permitting such a transfer would severely impair if not effectively preclude Plaintiff from collecting on its judgments against and agreements with Defendants and Respondents.

4

D. **Defendants and Respondents Are Likely To Use Any Sale Or Transfer To Continue To Try To Evade Their Debts and Obligations To Factory.**

The previous conduct of Defendants and Respondents shows that they cannot be trusted not to dissipate, transfer or conceal the stock or assets of SS Herndon, any proceeds from the sale or transfer thereof, or their own assets. Rather, based on their established past pattern in this case of violating Court orders and reneging on their promises to and agreements with Factory, Defendants and Respondents are likely to use any sale or transfer as a mechanism to evade their debts and obligations to Factory.

All of the Defendants and Respondents have been held in contempt for repeated, material, fundamental violations of prior agreements and orders of this Court (*see* Docket Nos. 141, 142, 194, and 195), particularly the March 3, 2008 Consent Order (Docket No. 97). The Infringing Restaurant is still being operated in violation of the Consent Order. (Docket No. 190). In fact, even the new menu which Defendants and Respondents allegedly plan to implement at some unspecified future time still would violate the Consent Order. (Docket No. 190). None of the Defendants or Respondents has paid Factory any of the money that it is owed or which they promised to pay through the Settlement Agreement and Consent Order. Defendants still refuse to sign promissory notes in favor of Factory, even though Defendants twice were ordered to sign them, continuing to violate both of this Court's Contempt Orders (Docket Nos. 141, 142, 194, and 195). In addition, the individual Defendants continue to violate the Court's latest October 15, 2008 Contempt Order (Docket Nos. 194 and 195) by working at the Infringing Restaurant. (Ex. E).

SS Herndon, the company seeking to assign its lease, has not paid any money over to Factory in response to the garnishment summonses that were issued in early

September 2008 to collect the earnings of Saleem Mohd and Naeem Mohd. SS Herndon still has not paid out any of their earnings despite having a Rule to Show Cause entered against it a week ago for failing to answer or comply with the same garnishment summonses. (Docket No. 193).

Defendants have failed and refused, despite a prior Court Order seven weeks ago (Docket Nos. 155, 156), and despite several follow-up requests from Factory, to provide complete, sufficient, adequate or verified interrogatory answers or adequate productions of documents and things in response to Factory's July 2008 post-judgment discovery requests. For example, Defendants still refuse to provide bank account numbers or bank balances, verified interrogatory answers, or photographs or documentation of tangible personal property which can be levied upon. (Ex. K) Defendants have evaded answering many collections interrogatories and requests for production by asserting that Defendant Charbroil Grill of Worldgate does not own or operate the Infringing Restaurant. (Id.) That is an incorrect assertion which this Court, well prior to Defendants serving their interrogatory answers, already had rejected as a "desperate, last-ditch effort to elude [Defendants'] obligations under the [Consent Order]." (Docket No. 141, August 4, 2008 Memorandum Decision, at 12).

Indeed, the post-judgment round of this litigation started because all Defendants and Respondents have refused to comply with the Settlement Agreement that was negotiated in February 2008, including terms requiring them to pay money to Factory and/or to guarantee those payments. (*See, e.g.*, Docket Nos. 102-104, 112, and 113).

Defendants still are stubbornly continuing to defy both prior Contempt Orders requiring them to sign a confessed judgment promissory note in favor of Factory

6

providing for acceleration of judgment and recovery of Factory's attorneys' fees. (Docket Nos. 141, 142, 194, and 195).

## II. **DISCUSSION OF AUTHORITY**

In determining whether to issue a TRO or preliminary injunction, Fourth Circuit courts consider: "(1) the likelihood of irreparable harm to the plaintiff if the preliminary injunction is denied, (2) the likelihood of harm to the defendant if the requested relief is granted, (3) the likelihood that the plaintiff will succeed on the merits, and (4) the public interest." *Newsom v. Albemarle County Sch. Bd.*, 354 F.3d 249, 254 (4th Cir. 2003); *see also Blackwelder Furniture Co. v. Seilig Mfg. Co., Inc.*, 550 F.2d 189, 195-96 (4th Cir. 1977); *Direx Israel, Ltd. v. Breakthrough Med. Corp.*, 952 F.2d 802, 812 (4th Cir. 1991). Of the foregoing factors, the most important determination is weighing the irreparable harms to the plaintiff and the defendant. *Al-Abood v. El-Shamari*, 71 F. Supp. 2d 511, 514 (E.D. Va. 1999) (citing *Hughes Network Sys., Inc. v. InterDigital Comms. Corp.*, 17 F.3d 691, 693 (4th Cir. 1994)).

Harm caused by a defendant or respondent who is not financially capable of answering for his conduct in damages is irreparable. *Hughes Network*, 17 F.3d at 694 ("irreparable harm may still exist where . . . '[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected'"). In light of these factors, Plaintiff's request for temporary injunctive relief should be granted to prevent Defendants and Respondents from thwarting the interests of justice by transferring and dissipating their assets.

Courts have granted preliminary injunctions in order to preserve assets in similar circumstances on numerous occasions. *See U.S. v. First Nat'l City Bank*, 379 U.S. 378,

385 (1965) (temporary injunction issued by district court was appropriate to prevent further dissipation of assets); *Deckert v. Independence Shares Corp.*, 311 U.S. 282, 290 (1940) (injunction is "reasonable measure to preserve the status quo"); *U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489, 492 (4th Cir. 1999) (district court's entry of preliminary injunction freezing defendants' assets was proper); *U.S. v. Runnells*, 335 F. Supp. 2d 724, 726 (E.D. Va. 2004) (order appropriate to prevent defendants from secreting assets).[2] For instance, in *Meyers v. Moody*, 723 F.2d 388, 389 (5th Cir. 1984), the court affirmed the trial court's issuance of preliminary injunction restraining the defendant from "secreting, moving, disposing of, hypothecating, wasting, dissipating, or transferring" any assets pending the plaintiff's efforts to satisfy its judgment. In reaching its decision, the court noted that the defendant's activities since the institution of the lawsuit, like Defendants' and Respondents' post-judgment activities in this case, "must engender some suspicion that he is attempting to place assets beyond the reach of his judgment creditor." *Id.*

Post-judgment injunctions have been entered to prevent dissipation or secreting of assets in similar cases. *See, e.g., Thomas, Head & Greisen Employees Trust v. Buster*, 95 F.3d 1449, 1456-57 (9th Cir. 1996) (injunction to preserve assets found to be product of fraudulent conveyances was proper in order to protect court's earlier judgment against defendant); *Addiego v. Hill*, 268 Cal. App. 2d 280, 289 (1968) (post-judgment injunction restraining defendants from activities in connection with corporation was proper because "trial court had authority to take whatever steps were necessary to preserve the corporation and its assets during the pendency of this appeal"); *Sommer v. Monga*, 626

---

[2] The law applying to pre-judgment cases likewise applies in cases in which a post-judgment injunction is sought. *Al-Abood*, 71 F. Supp. 2d at 516.

N.E.2d 16, 17 (Mass. Ct. App. 1994) (injunction had issued prohibiting defendant and his corporations from post-judgment transfer of assets).

Because there is a pending request to assign the Infringing Restaurant's lease to a family member of the Defendants and Respondents, and that relative is seeking an ABC license for the same premises as the Infringing Restaurant, the threatened harm to Factory is both actual and immediate, making it proper for this Court to grant an injunction preventing transfer or dissipation of the Defendants' and Respondents' assets. *See, e.g., Dan River, Inc. v. Icahn*, 701 F.2d 278, 284 (4th Cir. 1983) (actual and immediate threat of irreparable harm warrants TRO or preliminary injunction).

In contrast, Defendants and Respondents will suffer no legally cognizable harm by postponing their proposed distribution of assets to a family member until after they have paid their previously adjudicated judgment debts to Plaintiff. *See, e.g., USACO Coal Co. v. Carbomin Energy, Inc.*, 689 F.2d 94, 98-100 (6th Cir. 1982). Furthermore, the public interest will not be disserved by an injunction prohibiting the Defendants and Respondents from dissipating and concealing their assets to evade their previously adjudicated judgment debts to Plaintiff. *Id.* In fact, the public interest will be served by preventing the Defendants and Respondents from continuing their campaign of violating and evading this Court's orders and their agreements with Factory.

Fraudulent conveyances occur when the party transferring property has the intent to hinder, delay, or defraud creditors. *In re Coleman*, 299 B.R. 780, 795 (W.D. Va. 2003), *rev'd in part on other grounds*, 426 F.3d 719 (4th Cir. 2005). Such intention does not need to be the primary, active, controlling purpose behind the debtor's transfer of the property. *Id.* It is sufficient if it is one of the purposes which the debtor entertained. *Id.*

(citing *Bank of Commerce v. Rosemary & Thyme, Inc.*, 218 Va 781, 784, 239 S.E.2d 909, 912 (1978)). The entitlement of someone alleging a fraudulent conveyance does not even need to be judicially established or reduced to judgment at the time of the challenged conveyance. *Buchanan v. Buchanan*, 266 Va. 207, 212, 585 S.E.2d 533, 535 (2003).

The timing of the proposed lease assignment request in relation to Factory's collection efforts and the hearing and decision on the second contempt motion is a badge of fraud indicating that the transaction is a fraudulent conveyance. *Armstrong v. United States*, 7 F. Supp. 2d 758, 764 (W.D. Va. 1998); *Hyman v. Porter*, 37 Bankr. 56, 63 (Bankr. E.D. Va. 1984).

The fact that the proposed transferee is a relative of the Defendants and Respondents is another factor indicating that the transaction should be closely scrutinized by the Court. *Tavenner v. Smoot*, 257 F.3d 401, 408 (4th Cir. 2001); *Moore v. Manson*, 145 B.R. 520, 534 (Bankr. E.D. Va. 1992) ("a suspicious transaction between related parties must be 'closely scrutinized'"). *See also In re Sunsport, Inc.*, 260 B.R. 88, 116 (Bankr. E.D. Va. 2000) (court can infer fraudulent intent from suspicious circumstances).

Given the suspect timing and circumstances of this transaction, and the facts showing that the Defendants and Respondents are continuing their efforts to evade the judgment and orders of this Court, an asset freeze is appropriate in this case. Courts may issue TROs or preliminary injunctions to freeze a party's assets to preserve their availability for future collection. *See U.S. Dept. of Hous. & Urban Dev. v. Cost Control Mkt. & Sales Mgmt. of Va., Inc.*, 64 F.3d 920, 927 (4th Cir. 1995) (asset freeze was justified because district court made sufficient findings that corporate officers could not be trusted to conserve their assets); *Kemp v. Peterson*, 940 F.2d 110, 114 (4th Cir. 1991)

(district court has authority to issue freeze order); *SEC v. Elfindespan, S.A.*, No. 1:00CV00742, 2002 WL 31165146, at *1 (M.D.N.C. Aug. 30, 2002) (SEC secured preliminary injunction freezing funds in Defendants' possession); *SEC v. Dowdell*, No. 3:01CV00116, 2002 WL 424595, at *1 (W.D. Va. Mar. 14, 2002) (same). Among other circumstances, courts can issue TROs and preliminary injunctions freezing the assets of a debtor in cases in which a party seeks to void or prevent fraudulent transfers. *See, e.g., U.S. ex rel. Rahman v. Oncology Associates, P.C.*, 198 F.3d 489, 498 (4th Cir. 1999).

### III.  CONCLUSION

Defendants and Respondents have shown by their past conduct in this case that they will stop at nothing to evade and circumvent not only this Court's orders and judgments but also their agreements with Factory. The pending transfer of their business and primary asset to their relative while collection efforts are underway, combined with their total lack of compliance with garnishments and court orders, gives rise to grave doubts about the *bona fides* of the pending asset transfer and whether it is being undertaken to evade their obligations to the Court and to Factory. Under these circumstances, a TRO or preliminary injunction freezing the assets of the Defendants and Respondents is warranted.

Dated This 22nd Day of October, 2008

Respectfully Submitted,

BUFFALO WINGS FACTORY, INC.
By Counsel:

/s/ Michael C. Whitticar

Thomas M. Dunlap (VSB #44016)
Michael C. Whitticar (VSB# 32968)
DUNLAP, GRUBB & WEAVER, PLLC
199 Liberty Street, SW
Leesburg, Virginia 20175
703-777-7319
703-777-3656 (fax)
mwhitticar@dglegal.com
Counsel for the Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on this 22nd Day of October, 2008, a true and correct copy of the foregoing memorandum was filed and served through the Clerk of Court pursuant to the Court's electronic filing procedures using the Court's CM/ECF system, which will then send a notice of electronic filing (NEF) to the following counsel of record for the defendants and respondents:

Ashraf Nubani VSB No. 43595
Nubani & Ahmad
1568 Spring Hill Road, No. 222
McLean, VA 22102
Voice: 703-658-5151
Facsimile: 703-997-8556
anubani@nubaniahmad.com
Counsel For Defendants

Faisal Gill, DC Bar No. 028294
Pro Hac Vice
The Gill Law Firm
1101 30th Street Suite 500
Washington, DC 20007
fgill@thegilllawfirm.com
Counsel For Defendants

Kenneth T. Cuccinelli
Cuccinelli & Day, PLLC
10560 Main Street, Suite LL17
Fairfax, VA 22030
Voice: 703-268-5600
Fax: 703-268-5602
ktc@cuccinelliday.com
Counsel For Respondent SS Herndon, Inc.

I hereby further certify that I caused a copy of the foregoing motion to be sent by first-class mail, properly addressed and postage prepaid, to the following individual respondents:

Jaji Shah
23043 Potomac Hill Square
Sterling, VA 20166

Seema Saleem
1324 April Way
Herndon, VA 20170

/s/ Michael C. Whitticar
Thomas M. Dunlap (VSB #44016)
Michael C. Whitticar (VSB# 32968)
DUNLAP, GRUBB & WEAVER, PLLC
199 Liberty Street, SW
Leesburg, Virginia 20175
703-777-7319
703-777-3656 (fax)
mwhitticar@dglegal.com
Counsel for the Plaintiff