IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

```
BUFFALO WINGS FACTORY, INC.,    )
                                )
      Plaintiff,                )
                                )
            v.                  )      1:07cv612 (JCC)
                                )
MOHD, et al.,                   )
                                )
      Defendants; and           )
                                )
SS HERNDON, INC., et al.,       )
                                )
      Rule 65(d) Respondents    )
```

## M E M O R A N D U M   O P I N I O N

This matter is before the Court on Plaintiff's Motion
to Establish the Amount of Attorneys' Fees Awarded Pursuant to
this Court's Order and Memorandum Opinion dated October 15, 2008
("Pl.'s Mot."). For the reasons stated below, the Court will
**grant** this Motion.

### I.  Background

The facts as stated in the First Amended Complaint are
as follows. Since 1990, Buffalo Wings Factory, Inc.
("Plaintiff"), a Virginia corporation, has operated four
restaurants in Sterling, Ashburn, Chantilly, and Reston, Virginia
that specialize in the sale and marketing of "buffalo wings."
Plaintiff has a valid and existing trademark registration for the
mark "Buffalo Wings Factory" (the "Factory Mark") and has spent

1

approximately $80,000 per year since 2000 advertising its restaurants and the Factory Mark in local newspapers and print advertising, and on local radio stations.  Plaintiff's restaurants and the Factory Mark have achieved critical acclaim and popularity, helping Plaintiff generate a customer base that extends into West Virginia and Maryland and sales revenues equaling $5-6 million per year.

Defendants Saleem Mohd ("Saleem") and Naeem Mohd ("Naeem") worked for Plaintiff between 1996 and 2004.  On or about September 1, 2005, Saleem and Naeem opened a restaurant in Herndon, Virginia doing business under the name "Buffalo Wing House."  The Complaint alleged that Saleem and Naeem acted as employees, owners, and operators of this restaurant.  Defendant Charbroil Grill of Worldgate, Inc. ("Charbroil Grill") allegedly co-owned the restaurant, with Sudha Chopra ("Chopra") serving as its president and Saleem as its secretary.

According to Plaintiff, Saleem, Naeem, and Charbroil Grill (collectively, "Defendants") selected "Buffalo Wing House" as the name for their restaurant because it was substantially similar to the name of Plaintiff's restaurants and would cause customer confusion.  Plaintiff further alleges that Defendants have used similar slogans and advertising channels as Plaintiff for the same purpose.  For example, Plaintiff has used the slogan "Buffalo Wing Factory - Home of the Flatliner" in its newspaper

2

and print advertising and on its menus, while Defendants have
used "Buffalo Wings House – House of the Inferno" in the same
types of newspaper and print advertising and on their menus.

The alleged similarities and deliberate attempts to
cause customer confusion do not end there.  Defendants' first
menu was substantially similar to Plaintiff's with respect to
layout, daily specials, and sauces.  In addition, Plaintiff's and
Defendants' facilities have several features in common: they are
all located in strip malls in the Dulles Corridor, they are all
casual dining restaurants with sports themes, large televisions,
bars, and sit-down dining areas, and they all have similar
furniture, color-schemes, and neon signs.

Plaintiff contends that these numerous similarities –
adopted willfully and intentionally by Defendants – have caused
substantial and continuous customer confusion.  Plaintiff cites
several examples of this confusion, including: (1) customer
statements to Plaintiff's employees regarding Plaintiff's Herndon
restaurant – even though it is Defendants, not Plaintiff, who
have a restaurant in Herndon; (2) questions from customers to
Plaintiff's restaurants regarding promotions being run by
Defendants' restaurant; (3) attempts by customers to use
Defendants' coupons at Plaintiff's restaurants; and (4) confusion
between Defendants' restaurant and Plaintiff's restaurants on the
part of Defendants' vendors and the Miller beer distributor for

Fairfax County.  Plaintiff also argues that Defendants themselves have intentionally furthered this confusion by telling Plaintiff's customers, employees, and third party vendors that Defendants' restaurant is the same as Plaintiff's.

Finally, Plaintiff asserts that Defendants have stolen Plaintiff's confidential information and misappropriated it as their own.  Defendants hired several of Plaintiff's former employees, including the former general manager of one of Plaintiff's restaurants, in the hope of acquiring the confidential information those employees possess and to confuse customers.  In addition, the creation and ingredients of twenty of Defendants' thirty sauces are Plaintiff's trade secrets that were copied by Saleem and Naeem for use in Defendants' restaurant.

In response to these alleged acts, Plaintiff filed a Complaint against Defendants on June 22, 2007, claiming: (1) false advertising and false designation of origin in violation of the Lanham Act; (2) trademark infringement under Va. Code § 59.1-92.1; (3) misappropriation of trade secrets; (4) tortious breach of fiduciary duty; (5) unfair competition; (6) violation of the Business Conspiracy Act under Va. Code §§ 18.2-500 *et seq.*; and (7) tortious interference with actual and prospective contracts and business relationships.  Defendants moved to dismiss the Complaint on July 20, 2007.  On October 1, 2007, Judge Gerald

4

Bruce Lee of this Court granted Defendants' Motion to Dismiss as to Count I on the ground that Plaintiff did not plead a set of facts supporting its allegation that Defendants' use of the "Buffalo Wing House" mark was likely to confuse consumers.  Judge Lee then granted Plaintiff leave to amend its Complaint.

On October 15, 2007, Plaintiff filed its First Amended Complaint, bringing the same claims as the original Complaint but adding more factual allegations.  Defendants moved to dismiss the First Amended Complaint on October 25, 2007.  In an Opinion dated December 12, 2007, this Court denied Defendants' Motion to Dismiss.  The Court later set a trial date of March 3, 2008. Instead of proceeding to trial, the parties resolved the case by mutual agreement to the terms of a settlement agreement.  On March 3, pursuant to the parties' wishes, the Court entered a Consent Order ("CO") that included both monetary terms and injunctive provisions requiring Defendants to change their trademarks, tag lines, signs, menu and product offerings, and to drop several of their copied sauces.  The CO required Defendants to complete those changes by June 1, 2008 (the "Conversion Date"), which was also the date on which Defendants' first installment payment, in the amount of $30,000, was due.  On April 29, 2008, Defendants filed a Motion for Relief from Judgment under Fed. R. Civ. P. 60, seeking to have the CO set aside. After taking evidence on the matter, the Court denied this Motion

and confirmed the CO in an Opinion and Order dated June 23, 2008.

On June 13, 2008 – prior to the Court's decision confirming the CO but after the Conversion Date – Plaintiff's counsel sent a letter to Defendants' counsel accusing Defendants of continuing to violate the CO and demanding both compliance and an accelerated payment of the $150,000 Defendants agreed to pay in the CO.  A second letter was sent to defense counsel on June 25, 2008, stating that Plaintiff would file a motion for contempt sanctions and to enforce the CO unless Defendants met their obligations by July 2, 2008.

On July 3, 2008, Plaintiff filed a Motion to Enforce the Consent Order and for Contempt Sanctions (the "First Contempt Motion"), accusing Defendants of failing to comply with their obligations under the CO.  Defendants then filed a Motion to Dismiss Plaintiff's Motion on July 17, 2008.  Plaintiff responded on July 25, 2008 with a Motion to Strike Defendants' Motion.  In an Order dated August 4, 2008, this Court issued an order (the "First Contempt Order") granting Plaintiff's Motion to Enforce and Motion for Contempt Sanctions, denying Defendants' Motion, and denying Plaintiff's Motion to Strike.

After the entry of the First Contempt order, Plaintiff claimed that Defendants still had made no significant effort to comply with their obligations under the CO.  After Plaintiff filed a second motion for contempt sanctions (the "Second

Contempt Motion") and a hearing was held on whether to levy additional sanctions, the Court reiterated its First Contempt Order and the CO in a Order dated October 15, 2008 (the "Second Contempt Order").  In addition, the Court held three Rule 65(d) Respondents – SS Herndon, Inc. ("SS Herndon"), Jaji Shah, and Seema Saleem (collectively, the "Respondents") in contempt and enjoined the Mohds from working at or receiving money from the infringing restaurant.  (SS Herndon appears to have been, at least until recently, the record owner of the infringing restaurant.)

As a result of their violations of the CO and the two Contempt Orders, Defendants and two of the Respondents owed, at the time the second Contempt Order was entered, $171,000 in contempt sanctions as well as reasonable attorneys' fees.[1] Plaintiff submitted its proposed attorneys' fees in a motion submitted on October 29, 2008.[2]  Neither Defendants nor Respondents filed any opposition to Plaintiff's Motion.  The attorneys' fees Motion is now before the Court.

---

[1] Respondent Seema Saleem, who was not shown to know about her obligations under the CO until a later date than Respondents Jaji Shah or SS Herndon, was held jointly and severally liable for $99,000 of the contempt sanctions.

[2] The Second Contempt Order dated October 15, 2008 gave Plaintiff 10 days to submit its proposed attorneys' fees.  Its filing was four days late. Between October 15 and the date it filed a motion for attorneys' fees, however, Plaintiff briefed and argued an emergency motion for a temporary restraining order and a motion for expedited discovery.  The Court will allow the untimely filing.

## II. Standard of Review

Federal Rule of Civil Procedure 54(d)(2) provides that a "claim for attorney's fees and related nontaxable expenses must be made by motion unless the substantive law requires those fees to be proved at trial as an element of damages."  The Rule also sets out timing and content requirements for a motion for attorney's fees, all of which Plaintiff has fulfilled.  Fed. R. Civ. P. 54(d)(2)(B).

The party requesting fees bears the burden of demonstrating the reasonableness of what it seeks to recover.  *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990); *Cook v. Andrews*, 7 F. Supp. 2d 733, 736 (E.D. Va. 1998).  "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 174 (4th Cir. 1994).  The product of the reasonable fee and reasonable rate is referred to as the lodestar amount.  *See Daly v. Hill*, 790 F.2d 1071, 1076 n.2 (4th Cir. 1986).

Attorneys' fee award decisions are within the discretion of the district court.  *See McDonnell v. Miller Oil Co.*, 134 F.3d 638, 640 (1998).  A court abuses its discretion when it makes an error of law.  *Id*.

8

### III. Analysis

This Court's Memorandum Opinion of October 15, 2008 stated that Plaintiff's motion for additional contempt sanctions stated that Respondents would be jointly and severally liable for the reasonable attorneys' fees that Plaintiff incurred in bringing its Second Contempt Motion. Mem. Op. of Oct. 15 at 25. The Court also found that Respondents Jaji Shah and SS Herndon were jointly and severally liable for reasonable attorneys' fees related to Plaintiff's First Contempt Motion. *Id*. Plaintiff seeks $29,276.50 in fees for its Second Contempt Motion and $39,525.00 in fees for its First Contempt Motion and related motion for attorneys' fees ($29,940 for the First Contempt Motion and $9,585 for time spent in connection with Plaintiff's first attorneys' fees petition). Plaintiff also requests a 20% upward adjustment of its award because its fees are set below the market rate for comparable attorneys.

In determining the reasonable hourly rate and reasonable number of hours spent working on the litigation, the Court uses the 12-factor test first set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974). The *Johnson* factors are:

> (1) The time and labor required . . . .
> (2) The novelty and difficulty of the questions . . . .
> (3) The skill requisite to perform the legal service properly . . . .
> (4) The preclusion of other employment by the attorney due to the acceptance of the case . . . .

(5) The customary fee . . . .
(6) Whether the fee is fixed or contingent . . . .
(7) Time limitations imposed by the client or the circumstances . . . .
(8) The amount involved and the results obtained . . . .
(9) The experience, reputation, and ability of the attorneys . . . .
(10) The "undesirability" of the case . . . .
(11) The nature and length of the professional relationship with the client . . . [and]
(12) Awards in similar cases.

488 F.2d at 717-19; *see Daly v. Hill*, 790 F.2d 1071, 1077-78 (4th Cir. 1986) (noting that the Fourth Circuit considers the use of the *Johnson* factors appropriate in setting a reasonable fee).

1. *Factors (2)-(12)*

When determining the appropriateness of a fee request, the Court must look to whether Plaintiff has put forward specific evidence, other than its own statements, showing that the rates requested are consistent with the prevailing market rate in the relevant community. *See Plyler v. Evatt,* 902 F.2d 273, 277 (4th Cir. 1990). The proper measure for fees is the prevailing rate in the local market. *See Trimper v. City of Norfolk*, 58 F.3d 68, 76 (4th Cir. 1995), *cert. denied*, 516 U.S. 997 (1995).

Here, Plaintiff showed that under the *Laffey* matrix promulgated by the United States Attorney's Office for the District of Columbia, which provides a measuring rod for the amounts lawyers charge in federal court cases in this geographic area, the rates charged by Plaintiff's lawyers at Dunlap, Grubb & Weaver ("DGW") were reasonable. Ex. C to Pl.'s Mot.; *see Laffey*

10

*v. Nw. Airlines*, 746 F.2d 4, 24-25 (D.C. Cir. 1985), *overruled in part on other grounds by Save Our Cumberland Mountains, Inc. v. Hodel*, 857 F.2d 1516, 1524 (D.C. Cir. 1988); *see also Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. E. Sign Tech, LLC*, 2006 U.S. Dist. LEXIS 72345 at *7 (E.D. Va., October 4, 2006) (using the *Laffey* matrix as evidence of reasonableness). The rates charged by DGW are below the rates for attorneys with comparable experience under the *Laffey* matrix – in fact, the rates charged by the DGW partners working on the case were less than 65% of the comparable *Laffey* rate.  *See* Pl.'s Mem. at 7; Ex. C at 1.  The rates charged for the two associates who worked on the case were either at or below the comparable *Laffey* rate.  *See* Ex. A1 at 1; Ex. C at 1.

Neither Defendants nor Respondents contest Plaintiff's showing on the reasonableness of its rate or the time DGW expended.  The three partners working on the case billed at a discounted rate that, given their experience in intellectual property litigation and expertise in handling such matters at the federal level, is eminently reasonable.  The Court finds that Plaintiff has demonstrated the reasonableness of its attorneys' rate as well as its attorneys' possession of the requisite skill and ability necessary to perform the legal services in question.

Plaintiff requests a reasonable fee set at the rate actually charged by DGW, plus 20% to account for DGW's

11

significantly discounted work.  The Court finds that the rate charged by DGW to Plaintiff is "reasonable" without any upward adjustment.  The evidence submitted to the Court does not show that DGW set its rates unreasonably low for the benefit of Plaintiff.

Other *Johnson* factors support the reasonableness of DGW's hourly rate and the time DGW spent enforcing the Consent Order.  DGW briefed and argued relatively complex issues related to the violation of trademark consent orders, the appropriate scope of contempt sanctions, and the liability of non-party respondents.  The briefing required legal research on several difficult issues related to the scope of the Court's contempt power.

The reasonableness of the fee request is also supported by DGW's relationship with Plaintiff and the opportunity cost of enforcing a settlement agreement that DGW and Plaintiff believed would end the litigation.  DGW has worked with Plaintiff for more than three years.  That long-term relationship led DGW to discount its hourly rates on the case.  As a result, the opportunity cost of continuing to work on the case for Plaintiff, past the date on which Defendants agreed to the CO, is not insubstantial.

Additionally, the Court finds that the desirability of legal work enforcing a settlement agreement against parties

attempting to evade their Court-ordered obligations is generally low.  Enforcing the CO has required DGW to prepare numerous and often tedious motions and other court filings.  Defendants and Respondents significantly lengthened the amount of time and increased the resources Plaintiff has been forced to devote to this litigation by their repeated indifference to Orders issued by this Court, the confusion caused by their mismanagement of corporate formalities, and their last-minute shifting of assets between entities owned by related parties.  In addition, Plaintiff has achieved favorable results by defending the CO. Defendants and Respondents have been sanctioned for contempt of court on two occasions, and Plaintiff has successfully upheld an injunction forbidding Defendants and Respondents from infringing on its intellectual property. *Johnson* factors (2), (3), (4), (5), (8), (9), (10), and (11) all support the reasonableness of DGW's fees.  No party discussed factor (6), on whether the fee was fixed or contingent, or factor (7), on the time limits imposed by the litigation.  The Court finds that neither factor weighs for or against the reasonableness of the fee request in this case.  Finally, Plaintiff has showed that in a separate case in which the lead DGW partner in this enforcement action participated, a court awarded more than $350,000 in attorneys' fees for enforcing a consent order related to a settled trademark claim.  *Colonial Williamsburg Found. v. Kittinger Co.*, 38 F.3d

13

133, 138-39 & n.4 (4th Cir. 1994).

      2. *Factor (1): Time and Labor Required*

      Plaintiff's success in defending the CO can be attributed to the necessarily vigorous litigation efforts of DGW. Even so, Plaintiff has shown that DGW closely monitored the time it spent on this matter and made downward efficiency adjustments to monthly bills where appropriate.  The Court finds that, with the exception of the time spent on the first attorneys' fee petition, discussed below, the hours spent by DGW defending the Consent Order were reasonable.

      Plaintiff prepared and filed the initial petition for attorneys' fees after the success of its First Contempt Motion. It now requests $9,585 for the 47.3 hours its attorneys spent preparing the first fee petition.  Before the Court could act on that petition, the circumstances required Plaintiff to file a second motion for contempt sanctions.  Any reasonable expense borne by Plaintiff in preparing the first fee petition is properly charged to Defendants and Respondents Jaji Shah and SS Herndon.  Had they complied with the CO, Plaintiff would not have incurred additional legal expenses, including the charges related to its initial effort to prove attorneys' fees.  The Court will award Plaintiff attorneys' fees for the first fee petition, but it finds the amount requested excessive.

      In the context of a § 1988 claim, the Fourth Circuit

has approved an award of attorneys' fees for the preparation of a fee petition. *Daly v. Hill*, 790 F.2d 1071, 1080 (4th Cir. 1986); *see Xiao-Yue Gu v. Hughes STX Corp.*, 127 F. Supp. 2d 751, 769-70 (D. Md. 2001) (citing *Daly* and finding 107.9 hours spent in connection with a fee petition excessive). The *Daly* court did not find an abuse of discretion when the district judge disapproved as unreasonable the expenditure of 37.9 hours for preparing a relatively straightforward fee petition. *Daly*, 790 F.2d at 1080. In *E.E.O.C. v. Service News Co.*, the Fourth Circuit found that, in a relatively easy case, it would be unreasonable to spend more than 20% of the time claimed for a given representation on the related fee petition. 898 F.2d 958, 966 (4th Cir. 1990).

Applying the 20% guideline in *Service News Co.* to the present case, it would be reasonable for DGW to expend approximately 34 hours on the fee petition, or about 73% of the time for which it billed. Reducing the hours of each lawyer who worked on the case by 27% and then multiplying by the reasonable hourly rates leads to a base reasonable fee of slightly less than $7,000. The Court is familiar with the complexity of the motions for contempt sanctions filed by Plaintiff and is confident that both motions were more difficult than that filed in *Service News Co*. Using the 20% ceiling in that case as a baseline for reasonableness in a simple fee petition, the Court finds that

$7,000 is a reasonable fee for DGW's preparation of the first fee petition.

## IV. Conclusion

For the foregoing reasons, Plaintiff's Motion to Establish the Amount of Attorneys' Fees will be **granted.**

To summarize, the Court finds that, with the exception of $2,585 requested for the first attorneys' fee petition, the fees requested by Plaintiff are reasonable; however, no upward adjustment to the lodestar amount is warranted.  The Court will award Plaintiff attorneys' fees in the amount of $36,940 against Defendants and Respondents SS Herndon and Jaji Shah for the first motion for contempt sanctions and $29,276.50 against Defendants and all three Respondents for the second motion for contempt sanctions.

An appropriate Order will issue.


November 28, 2008                    _____/s/_____
Alexandria, Virginia                      James C. Cacheris
                                   UNITED STATES DISTRICT COURT JUDGE